UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MONA MOAZZAZ, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| - against - | : | |
| | : | No. 19-cv-10531 (JPO)(OTW) |
| METLIFE, INC.; MICHEL KHALAF, in his | : | |
| individual and professional capacities; STEVEN | : | **ECF CASE** |
| KANDARIAN, in his individual and professional | : | |
| capacities; FRANS HIJKOOP, in his individual | : | |
| and professional capacities; SUSAN | : | |
| PODLOGAR, in her individual and professional | : | |
| capacities; and GARY HEDIGER, in his | : | |
| individual and professional capacities; | | |
| | | |
| Defendants. | | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

PROSKAUER ROSE LLP

Joseph Baumgarten
Joseph C. O'Keefe
Eleven Times Square
New York, New York 10036
(T) 212-969-3000
(F) 212-969-2900
*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL SUMMARY ..........................................................................................2

ARGUMENT .......................................................................................................4

I.      Dismissal Under Fed. R. Civ. P. 12(b)(6)....................................................5

II.     This Court Should Dismiss The First Claim For Relief (Federal EPA) And Sixth
        Claim For Relief (NY EPA). .....................................................................6

III.    This Court Should Dismiss Moazzaz's Claims Of Discrimination Under The
        NYSHRL (Second Claim For Relief) And NYCHRL (Fourth Claim For Relief). ............8

        A.      Legal Standards.......................................................................... 9

                1.      Hostile Work Environment .......................................... 9

                2.      Claims of Disparate Treatment ................................... 10

                3.      The NYSHRL And NYCHRL Statutes Of Limitations........................... 11

        B.      Moazzaz Has Not Pled A Claim Of Hostile Work Environment. ....................... 11

        C.      Moazzaz Has Not Pled A Plausible Claim Of Pay Discrimination. .................... 14

        D.      Moazzaz Has Not Alleged Facts To Show That She Was Terminated
                Because Of Her Gender. .............................................................. 15

        E.      Moazzaz Has Not Pled a Plausible Claim Of Discriminatory Failure To
                Promote. .............................................................................. 16

IV.     The Court Should Dismiss the Third Claim For Relief (NYSHRL Retaliation)
        And Fifth Claim For Relief (NYCHRL Retaliation). .......................................16

        A.      Standard of Law. ...................................................................... 16

        B.      The Complaint Fails To Plead A Plausible Claim Of Retaliation. ..................... 18

V.      The Claims Against The Individual Defendants Should Be Dismissed In Any
        Event. ...............................................................................................21

        A.      Standard of Law. ...................................................................... 21

        B.      The Complaint Fails To State a Claim Against The Individual Defendants. ....... 22

CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alvarado v. Nordstrom, Inc.*,
   685 F. App'x 4 (2d Cir. 2017) ...............................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................5

*Augustine v. Cornell Univ.*,
   No. 14-cv-7807, 2015 WL 3740077 (S.D.N.Y. June 15, 2015) ...............................................9

*Avery v. DiFiore*,
   No. 18-cv-9150, 2019 WL 3564570 (S.D.N.Y. Aug. 6, 2019).................................................18

*Belfi v. Prendergast*,
   191 F.3d 129 (2d Cir. 1999)) ...................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................5

*Benjamin v. Metro. Transp. Auth.*,
   No. 07 Civ. 3561 (DAB), 2012 WL 3188764 (S.D.N.Y. Aug. 2, 2012) ................................22

*Bermudez v. City of New York*,
   783 F. Supp. 2d 560 (S.D.N.Y. 2011) ....................................................................................10

*Boonmalert v. City of New York*,
   721 F. App'x 29 (2d Cir. 2018) .........................................................................................9, 22

*Carter v. Verizon*,
   No. 13-cv-7579, 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015) ..........................................12, 13

*Charych v. Siriusware, Inc.*,
   No. 18-cv-3191, 2019 WL 5688209 (2d Cir. Nov. 4, 2019) ....................................................5

*Chiaramonte v. Animal Med. Ctr.*,
   677 F. App'x 689 (2d Cir. 2017) ..............................................................................................6

*Colon v. City of New York*,
   No. 16-cv-4540, 2019 WL 1315877 (S.D.N.Y. Mar. 22, 2019).............................................22

*Curto v. Edmundson*,
   392 F.3d 502 (2d Cir. 2004).....................................................................................................11

*Czerwinski v. New York State Dep't of Corr. & Cmty. Supervision,*
    394 F. Supp. 3d 210 (N.D.N.Y. 2019) ...................................................................13

*Dawson v. Bumble & Bumble,*
    398 F.3d 211 (2d Cir. 2005)......................................................................10, 11

*Delaney v. Farley,*
    623 F. App'x 14 (2d Cir. 2015) ..............................................................11

*DeWitt v. Lieberman,*
    48 F. Supp. 2d 280 (S.D.N.Y. 1999)....................................................22

*Dillon v. Ned Mgmt., Inc.,*
    85 F. Supp. 3d 639 (E.D.N.Y. 2015) .....................................................21

*Doe v. Bloomberg, L.P.,*
    178 A.D.3d 44 (N.Y. App. Div. 2019) ................................................21, 22

*E.E.O.C. v. Bloomberg L.P.,*
    967 F. Supp. 2d 816 (S.D.N.Y. 2013).....................................................19

*E.E.O.C. v. Port Auth. of New York & New Jersey,*
    768 F.3d 247 (2d Cir. 2014)....................................................................7, 8

*Eng v. City of New York,*
    715 F. App'x 49 (2d Cir. 2017) ..........................................................7, 8, 15

*Erasmus v. Deutsche Bank Americas Holding Corp.,*
    No. 15-cv-1398, 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015).......................10, 17

*Fattoruso v. Hilton Grand Vacations Co.,*
    873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).....................10

*Feingold v. New York,*
    366 F.3d 138 (2d Cir. 2004)....................................................................11

*Fenner v. News Corp.,*
    No. 09-cv-9832, 2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) .........................18, 20

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013)....................................................................5

*Forrest v. Jewish Guild for the Blind,*
    819 N.E.2d 998 (N.Y. 2004).............................................................17, 22, 23

*Gordon v. City of New York,*
    No. 14-cv-6115, 2015 WL 3473500 (S.D.N.Y. June 2, 2015) ..............................17

*Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*,
   No. 16-cv-4897, 2017 WL 2258374 (S.D.N.Y. May 22, 2017) ............................................11

*Grovesteen v. New York State Pub. Emps. Fed'n, AFL-CIO*,
   83 A.D.3d 1332 (N.Y. App. Div. 2011) ...........................................................................9, 16

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1995)...............................................................................................................9

*Hood v. Pfizer*,
   322 F. App'x 124 (3d Cir. 2009) .........................................................................................20

*Hughes v. Xerox Corp.*,
   37 F. Supp. 3d 629 (W.D.N.Y. 2014).................................................................................15

*Isbell v. City of New York*,
   316 F. Supp. 3d 571 (S.D.N.Y. 2018).................................................................................10

*Johnson v. Strive E. Harlem Emp't Grp.*,
   990 F. Supp. 2d 435 (S.D.N.Y. 2014).................................................................................11

*Kairam v. W. Side GI, LLC*,
   No. 19-cv-447, 2019 WL 6691512 (2d Cir. Dec. 9, 2019)................................................7, 8

*Kearney v. ABN AMRO, Inc.*,
   738 F. Supp. 2d 419 (S.D.N.Y. 2010).................................................................................14

*Lebowitz v. New York City Dep't of Educ.*,
   407 F. Supp. 3d 158 (E.D.N.Y. 2017) ...............................................................................12

*Lenzi v. Systemax, Inc.*,
   944 F.3d 97 (2d Cir. 2019)...............................................................................................9, 14

*Leshinsky v. Telvent GIT, S.A.*,
   942 F. Supp. 2d 432 (S.D.N.Y. 2013).................................................................................19

*Lioi v. New York City Dep't of Health & Mental Hygiene*,
   914 F. Supp. 2d 567 (S.D.N.Y. 2012)...................................................................................9

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)..................................................................................................9

*Llanos v. City of New York*,
   129 A.D.3d 620 (N.Y. App. Div. 2015) ..............................................................................13

*Marchuk v. Faruqi & Faruqi, LLP*,
   100 F. Supp. 3d 302 (S.D.N.Y. 2015).................................................................................22

*Mi-Kyung Cho v. Young Bin Café*,
   42 F. Supp. 3d 495 (S.D.N.Y. 2013)................................................................17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)...........................................................................13

*Miller v. News American*,
   162 A.D.3d 422 (N.Y. App. Div. 2018) .........................................................18

*Nicastro v. Runyon*,
   60 F. Supp. 2d 181 (S.D.N.Y.1999)..........................................................19, 20

*Nieblas-Love v. New York City Hous. Auth.*,
   165 F. Supp. 3d 51 (S.D.N.Y. 2016)..............................................................17

*Olaechea v. City of New York*,
   No. 17-cv-4797, 2019 WL 4805846 (S.D.N.Y. Sept. 30, 2019) ......................9

*Oncale v. Sundowner Offshore Servs.*,
   523 U.S. 75 (1998)........................................................................................10

*Pacheco v. Park South Hotel*,
   No. 12-cv-9127, 2014 WL 292348 (S.D.N.Y. Jan. 27, 2014) ........................20

*Parada v. Banco Indus. de Venezuela, C.A.*,
   No. 10-cv-883, 2011 WL 519295 (S.D.N.Y. Feb. 15, 2011) ........................20

*Pena v. Bd. of Elections*,
   No. 16-cv-427, 2017 WL 722505 (S.D.N.Y. Feb. 6, 2017) ......................14, 15

*Romanello v. Intesa Sanpaola S.p.A.*,
   97 A.D.3d 449 (N.Y. App. Div. 2012) ...........................................................18

*Selmanovic v. NYSE Grp., Inc.*,
   No. 06-cv-3046, 2007 WL 4563431 (S.D.N.Y. Dec. 21, 2007)......................10

*Shein v. New York City Dep't of Educ.*,
   No. 15-cv-4236, 2016 WL 676458 (S.D.N.Y. Feb. 18, 2016) ..................14, 15

*Simon v. City of New York*,
   No. 17-cv-9575, 2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) ........................11

*Sosa v. Local Staff, LLC*,
   618 F. App'x 19 (2d Cir. 2015) .....................................................................10

*Sosa v. New York City Dep't of Educ.*,
   368 F. Supp. 3d 489 (E.D.N.Y. 2019) ...........................................................14

*Summa v. Hofstra Univ.*,
    708 F.3d 115 (2d Cir. 2013)...............................................................................9

*Taylor v. City of New York*,
    207 F. Supp. 3d 293 (S.D.N.Y. 2016)..............................................................16

*Tolbert v. Smith*,
    790 F.3d 427 (2d Cir. 2015)...............................................................................9

*Totem Taxi v. New York State Human Rights Appeal Bd.*,
    480 N.E.2d 1075 (1985)...................................................................................21

*Vasquez v. Empress Ambulance Serv., Inc.*,
    835 F.3d 267 (2d Cir. 2016)...............................................................................9

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)...............................................................................17

*Whipple v. Reed Eye Assocs.*,
    213 F. Supp. 3d 492 (W.D.N.Y. 2016).............................................................18

*Williams v. New York City Hous. Auth.*,
    61 A.D.3d 62 (N.Y. App. Div. 2009).................................................................10

## STATUTES

42 U.S.C. § 2000e-2(a)(1)...............................................................................14

29 U.S.C. § 206(d)(1) ...............................................................................1, 6

NYC Admin. Code § 8-107 ................................................................... passim

NYC Admin. Code § 8-502(d).............................................................................11

N.Y. Lab. Law § 194 ...............................................................................1, 6

N.Y. Exec. Law § 296(6) ..................................................................... passim

## RULES

C.P.L.R. § 214(2)...............................................................................11

29 C.F.R. § 1620.9(a)...............................................................................8

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 5, 8

## PRELIMINARY STATEMENT

Plaintiff Mona Moazzaz ("Moazzaz" or "Plaintiff") filed this action naming as defendants MetLife, Inc. ("MetLife") and several individuals, including Chief Executive Officer ("CEO") Michel Khalaf ("Khalaf"), former CEO Steven Kandarian ("Kandarian"), former Chief Human Resources Officer ("CHRO") Frans Hijkoop ("Hijkoop"), CHRO Susan Podlogar ("Podlogar"), and Head of HR support for Global Technology and Operations  ("GTO") Gary Hediger ("Hediger") (collectively, the "Individual Defendants," and together with MetLife, "Defendants").

Defendants now move to dismiss Plaintiff's claims in their entirety pursuant to Fed. R. Civ. P. 12(b)(6).  As discussed below:

1.   Moazzaz has failed to state a claim under the federal Equal Pay Act, 29 U.S.C.A. § 206(d)(1) (the "federal EPA") or the New York Equal Pay Act, N.Y. Lab. Law § 194 (the "NYEPA"), as she has failed to allege facts to show that she was not paid commensurately with male employees who had jobs requiring equal skill, effort, and responsibility, performed under similar working conditions at the same establishment.

2.   Moazzaz's claims for gender discrimination and retaliation in violation of the New York State Human Rights Law, Exec Law § 296(6) (the "NYSHRL") and New York City Human Rights Law, NYC Admin. Code § 8-107(6) (the "NYCHRL") fail against all Defendants because she has failed to allege facts that would establish a hostile work environment (as opposed to trivial and petty slights) or facts that would establish that the Defendants underpaid her, failed to promote her or terminated her employment due to discriminatory or retaliatory animus.

3.   Finally, Moazzaz's claims against the various Individual Defendants fail in any event because she has not shown and cannot show facts in support of her assertion that any of them are

an "employer" under each statute, nor has she alleged conduct that constitutes "aiding and abetting" under the NYSHRL or NYCHRL.

## FACTUAL SUMMARY[1]

Moazzaz was hired by MetLife in February 2012, as a Vice President in the GTO division.  (Compl., Dkt. 1, ¶ 31).  In September 2014, Moazzaz was promoted to Senior Vice President ("SVP"), with the functional title of Chief Administrative Officer ("CAO").  (*Id.* ¶ 38).

The Complaint summarily alleges that nine men were paid more than Moazzaz in 2017, including MetLife's Chief Digital Officer ("CDO"), Head of Operations ("HO"), Head of Asia IT ("HOAIT"), Head of Japan Operations ("HOJO"), Head of M&A ("HM&A"), EMEA Chief Financial Officer ("EMEA CFO"), U.S. Marketing Head ("USMH"), Head of Investor Relations ("HIR"), and Head of Compliance ("HOC").  (*Id.* at 50).  Moazzaz asserts that her job was "more substantial and complex" than those held by these males but the Complaint provides no facts regarding their jobs.  (*Id.*)

In addition, Moazzaz alleges:

- In 2014, Hediger, the Head of HR support for GTO, called Moazzaz "bitch" and "commander."  (*Id.* ¶¶ 30, 53).

- In 2015, Hijkoop, who was MetLife's Chief Human Resources Officer ("CHRO") at the time, supposedly told Moazzaz to "be nicer," and to "be more like the woman that he had researched on the internet [referring to internet research he conducted on Moazzaz] that

---

[1] For purposes of this motion only, Defendants assume the truth of the facts alleged in the Complaint.  Defendants' recitation of the facts set forth in the Complaint, including the comments attributed to various individuals, should not be viewed as an admission that any of the facts are true, or that any of the comments were made; Defendants deny the material allegations of discrimination and retaliation.

participates in community service activities and supports not-for-profit organizations."
(*Id.* ¶¶ 59-60).

- Hijkoop and Christopher Townsend, Head of Asia, on separate occasions, described
  Moazzaz as having "sharp elbows."  (*Id.* ¶ 61).

- By email dated November 19, 2017, Moazzaz complained to Martin Lippert ("Lippert"),
  then Global Head of GTO, that she had not been promoted to Executive Vice President
  ("EVP").  (*Id.* ¶ 63).  In February 2018, Lippert told Moazzaz that Podlogar had denied
  Moazzaz's promotion to EVP, because Moazzaz was "too mean, condescending, and
  shouts," and that Podlogar would reconsider a promotion the following year if Moazzaz
  were "nicer."  (*Id.* ¶¶ 63-66).

- In 2017 or 2018 (the Complaint does not specify), Podlogar initiated an investigation into
  Moazzaz.  As a result of that investigation, Moazzaz's performance rating and bonus
  were reduced, and Moazzaz was directed to "undergo" six months of leadership training.
  (*Id.* ¶¶ 67-68).  In addition, MetLife hired a leadership coach from Merrick & Company
  to work with Moazzaz, and Moazzaz alleges that the coach made inappropriate comments
  to her.  (*Id.* ¶¶ 70, 72-73).

- In 2018, Hediger began referring to Moazzaz as the "little one."  (*Id.* ¶ 74).

- In June 2018, Moazzaz's subordinate, Tim O'Brien, complained to Human Resources
  about Moazzaz, prompting an investigation.  (*Id.* ¶ 77).  Moazzaz was interviewed in
  connection with O'Brien's complaint by Employee Relations Lead Tracey Tate-Gowins
  ("Tate-Gowins").  (*Id.* ¶ 78).  During this meeting, Moazzaz reiterated her previous
  complaints about being called a "bitch," "commander" and "the little one," and the
  "sharp elbows" comment.  (*Id.* ¶ 80, 81-85).

3

- In September 2018, Moazzaz drafted a CEO candidate strategy document on behalf of Lippert that referred to MetLife's diversity results and performance under Kandarian's leadership as CEO, and suggested plans to improve the results.  (*Id.* ¶¶ 94-97). Kandarian saw the document and thereafter did not speak to Moazzaz.  (*Id.* ¶ 99-100).

- In December 2018, Elizabeth Nieto, then Global Chief Diversity and Inclusion Officer, relayed critical feedback about a mural Moazzaz had installed to support women's advancement at MetLife.  (*Id.* ¶¶ 88-92).

- In 2019, incoming CEO Khalaf spoke directly to Moazzaz's team members instead of going through her.  He also held a strategy session with some of MetLife's leaders, and did not invite Moazzaz to this meeting.  (*Id.* ¶¶ 103-104).

- On May 14, 2019, eight business days after Khalaf succeeded Kandarian as CEO, Moazzaz was terminated.  (*Id.* ¶ 105).

## ARGUMENT

The Complaint purports to set forth six claims for relief.  The first and sixth claims for relief allege that MetLife, Khalaf, Kandarian and Podlogar violated the federal and New York State Equal Pay Acts.  The second and fourth claims for relief allege that the Defendants discriminated against Moazzaz on account of her gender in violation of the New York State and New York City Human Rights Laws with respect to her compensation, by failing to promote her and by terminating her employment.  Moazzaz also alleges that the Defendants are liable based on the creation of a "hostile work environment."  The third and fifth claims for relief allege that the Defendants retaliated against Moazzaz for engaging in protected activity under the NYSHRL and NYCHRL by failing to promote her and subsequently terminating her employment.

For the reasons discussed below, Moazzaz's claims are all deficient and the Complaint should be dismissed in its entirety.

## I.     Dismissal Under Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Charych v. Siriusware, Inc.*, No. 18-cv-3191, 2019 WL 5688209, at *2 (2d Cir. Nov. 4, 2019). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citation omitted). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

**II.     This Court Should Dismiss The First Claim For Relief (Federal EPA) And Sixth Claim For Relief (NY EPA).**

The federal and New York Equal Pay Acts contain very similar language.  Under 29

U.S.C.A. § 206(d)(1):

> No employer having employees subject to any provisions of this section shall discriminate, **within any establishment in which such employees are employed,** between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for **equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions**, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.  (emphasis added.)

Under N.Y. Lab. Law § 194:

> No employee with status within one or more protected class or classes[including sex]  shall be paid a wage at a rate less than the rate at which an employee without status within the same protected class or classes **in the same establishment** is paid for: (a) **equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions**, or (b) **substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions**; except where payment is made pursuant to a differential based on: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a bona fide factor other than status within one or more protected class or classes, such as education, training, or experience.  (emphasis added.)

Equal pay claims brought pursuant to New York Labor Law § 194 are analyzed under the

same standards as the federal Equal Pay Act.  *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x

689, 689 n.1 (2d Cir. 2017) (summary order).  To survive a motion to dismiss an EPA claim, a

plaintiff must plead facts to support the following elements: "i) the employer pays different

wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring

equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Eng v. City of New York*, 715 F. App'x 49, 51 (2d Cir. 2017) (summary order) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (abrogated on other grounds); *see also E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 255 (2d Cir. 2014) (affirming dismissal, noting that "[a]t the pleading stage, then, a plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job content was 'substantially equal.'")

Legal conclusions are not sufficient to meet the pleading standard for an EPA claim; specific factual allegations regarding the comparators' job duties are required. *See E.E.O.C.*, 768 F.3d at 258 (dismissal affirmed because the plaintiff had not "alleged a single nonconclusory fact supporting its assertion that the claimants' and comparators' jobs required 'substantially equal' skill and effort"); *Kairam v. W. Side GI, LLC*, No. 19-cv-447, 2019 WL 6691512, at *1 (2d Cir. Dec. 9, 2019) (affirming dismissal of EPA claim where plaintiff failed to allege facts about the comparator's job duties); *Eng*, 715 F. App'x at 52 (affirming dismissal because "[p]laintiff at no point provides factual allegations about her or the comparators' job duties, skills, efforts, or responsibilities to demonstrate that their respective jobs were substantially equal.")  "[B]road generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice." *E.E.O.C.*, 768 F.3d at 256.

In *Kairam*, a female doctor brought EPA claims against the medical center where she worked.  2019 WL 6691512, at *1.  The plaintiff pled that both she and another male doctor performed "administrative duties," and that they were unequally paid.  *Id*.  She supplied some details about her own duties, but no further details about the comparator's job.  *Id*.  The Second Circuit affirmed dismissal of the plaintiff's EPA claim, noting that a "single allegation" that her

alleged comparator performed administrative duties "does not allow for even a reasonable inference that the content of the two positions was substantially equal." *Id.*

Here, the Complaint is patently insufficient.  The sum total of facts that Moazzaz supplies in support of her EPA claims are that in 2017, the CDO, HO, HOAIT, HOJO, HM&A, EMEA CFO, USMH, HIR, and HOC were all men who were paid more than her.  While she characterizes her own job as "more substantial and complex" than those jobs, she pleads no facts concerning skill, effort, responsibility, working conditions or location.[2]  (Compl*., Dkt. 1, ¶ 50). Like the EPA claims in *Kairam*, *Eng*, and *E.E.O.C.*, which were all dismissed under Fed. R. Civ. P. 12(b)(6), Moazzaz's EPA claim should be dismissed because she has not plausibly alleged an EPA violation.  *Kairam*, 2019 WL 6691512, at *1; *Eng*, 715 F. App'x at 52; *E.E.O.C.*, 768 F.3d at 258.

## III.   This Court Should Dismiss Moazzaz's Claims Of Discrimination Under The NYSHRL (Second Claim For Relief) And NYCHRL (Fourth Claim For Relief).

Moazzaz makes claims of gender/sex discrimination under the NYSHRL and NYCHRL, including claims that she was subjected to a hostile work environment on account of her sex, disparate treatment in pay (in 2017), discriminatory failure to promote (in 2018), and termination (in 2019) because of her sex.  (Compl., Dkt. 1, ¶¶ 117, 125).  However, Moazzaz has not plausibly pled viable claims.  We summarize below the applicable legal standards before discussing the particular deficiencies in her claims.

---

[2] Under 29 C.F.R. § 1620.9(a), the term "establishment" is defined as "a distinct physical place of business rather than an entire business or 'enterprise' which may include several separate places of business."  Moazzaz has not supplied sufficient information regarding her alleged comparators for this Court to determine if they are in the "same establishment."  As is apparent from the some of the titles themselves, however (Head of Asia IT and Head of Japan Operations), they are geographically separate.

A.    **Legal Standards.**

1.    **Hostile Work Environment.**

To state a claim for hostile work environment under the NYSHRL,[3] a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1995)). The conduct complained of "must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Olaechea v. City of New York*, No. 17-cv-4797, 2019 WL 4805846, at *6 (S.D.N.Y. Sept. 30, 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015)) (citation omitted). "As a general rule, incidents must be more than 'episodic'; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). The conduct alleged must be extreme enough that it "permeated the workplace and altered the conditions of [] employment." *Grovesteen v. New York State Pub. Emps. Fed'n, AFL-CIO*, 83 A.D.3d 1332, 1334 (N.Y. App. Div. 2011); *see also Lioi v. New York City Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 590 (S.D.N.Y. 2012) (citing cases dismissing hostile work environment claims alleging severe conduct including, for example, multiple requests for dates, sexual comments, and instances of unwanted touching).

---

[3] Discrimination claims under Title VII and the NYSHRL (including hostile environment claims), as well as retaliation claims, are governed by the same standard. *Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019); *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016); *Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013); *Augustine v. Cornell Univ.*, No. 14-cv-7807, 2015 WL 3740077, at *4 (S.D.N.Y. June 15, 2015). We note that the NYSHRL was amended in certain respects effective October 11, 2019. Those amendments are not applicable here.

Under the NYCHRL a plaintiff need not necessarily "show that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," *Selmanovic v. NYSE Grp., Inc.*, No. 06-cv-3046, 2007 WL 4563431, at *4 (S.D.N.Y. Dec. 21, 2007), but instead must show only "unwanted gender-based conduct." *Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15-cv-1398, 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (citation omitted).  However, even under the NYCHRL, a defendant is not liable for conduct that amounts to nothing more than "petty slights or trivial inconveniences." *Williams v. New York City Hous. Auth.,* 61 A.D.3d 62, 79-80 (N.Y. App. Div. 2009).  The NYSHRL and NYCHRL are not meant to enforce "a general civility code."  *Williams*, 61 A.D.3d at 79-80 (citing *Oncale v. Sundowner Offshore Servs*., 523 U.S. 75, 81 (1998)). Courts have repeatedly recognized that neither the NYSHRL nor the NYCHRL are "intended to promote or enforce civility, gentility or even decency."  *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citing *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579, 04 (S.D.N.Y. 2011)); *see also Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 576 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (citation omitted); *Sosa v. Local Staff, LLC*, 618 F. App'x 19, 20 (2d Cir. 2015) (summary order).

## 2.  Claims of Disparate Treatment.

Under the NYSHRL, it is unlawful "[f]or an employer or licensing agency, because of an individual's . . .  sex . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  The elements of a discrimination claim under the NYSHRL are that the plaintiff: (1) was a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent.  *Dawson v.*

*Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (overruled on other grounds); *Feingold v.*

*New York*, 366 F.3d 138, 149 (2d Cir. 2004).

"Courts . . . have recognized that '[u]nder the NYCHRL, there are not separate standards

for "discrimination" and "harassment" claims.'" *Grimes-Jenkins v. Consol. Edison Co. of N.Y.,*

*Inc.*, No. 16-cv-4897, 2017 WL 2258374, at *8 n.12 (S.D.N.Y. May 22, 2017) (quoting *Johnson*

*v. Strive E. Harlem Emp't Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)).  To successfully

plead a claim under the NYCHRL, a plaintiff must establish that she was treated "less well" as a

result of the protected characteristic.  *Simon v. City of New York*, No. 17-cv-9575, 2019 WL

916767, at *4 (S.D.N.Y. Feb. 14, 2019).

### 3.   The NYSHRL And NYCHRL Statutes Of Limitations.

Claims under the NYSHRL and the NYCHRL are subject to a three-year statute of

limitations calculated from the date the action is commenced as compared to the date of the

discriminatory act.  N.Y. C.P.L.R. § 214(2); N.Y.C. Admin Code § 8-502(d); *Curto v.*

*Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004); *Delaney v. Farley*, 623 F. App'x 14, 16 (2d Cir.

2015).

### B.      Moazzaz Has Not Pled A Claim Of Hostile Work Environment.

Moazzaz's allegations that Hediger called her a "bitch" in 2014 (Compl., Dkt. 1, ¶ 53)

and that Hijkoop told her to be "nicer" in 2015 (*id.* ¶ 59) fall outside the three-year statute of

limitations and cannot support her claims.[4]

---

[4] Even if they were timely, these alleged comments would fall well short of the standard for a hostile work environment, under either the NYSHRL or the NYCHRL, as they involved trivial and isolated comments.  *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017) (affirming dismissal of hostile work environment claims under the NYSHRL and NYCHRL because three isolated comments over the course of the year were too trivial to state a claim).

The remaining comments and interactions that Moazzaz describes are, at most, the types of "petty slights" and "trivial inconveniences" courts find insufficient to withstand a motion to dismiss. *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 181-82 (E.D.N.Y. 2017). As summarized above (at p. 2-4, *supra*), Moazzaz alleges the following comments and interactions: that two individuals described her as having "sharp elbows" in 2017 (Compl. Dkt. 1, ¶ 61); Podlogar said that Moazzaz was "too mean, condescending, and shouts" (*id.* ¶¶ 64-66); Hediger allegedly called Moazzaz "little one" in 2018 (*id.* ¶ 74); Elizabeth Nieto (the Global Head of Diversity) criticized Moazzaz's mural design in 2018 (*id.* ¶¶ 88-92); Kandarian would not speak to her or acknowledge her when they passed each other in the office; and Khalaf reached out to speak directly to her subordinates and did not invite her to a meeting in February 2019. (*Id.* ¶¶ 94-97, 99-100, 103-104). These allegations fall far short of satisfying the minimum pleading requirements for a hostile work environment claim under the NYSHRL. *See Lebowitz,* 2017 WL 1232472, at *15 (NYSHRL); *Carter v. Verizon*, No. 13-cv-7579, 2015 WL 247344, at *12 (S.D.N.Y. Jan. 20, 2015) (mere frustrations and annoyances with workplace and with supervisors with whom plaintiff did not get along were not sufficient to state a claim for hostile work environment under the NYCHRL, and only Plaintiff's "barely sufficient" allegation that a female supervisor pressed her breasts into his back was enough to state a claim at the pleading stage.)

Even under the more lenient NYCHRL standard, Moazzaz's claim fails because she alleges nothing more than a handful of innocuous comments and encounters, with no link to her gender, spanning a three year period. None of the conduct alleged uses terms referring to her gender and although the standard for pleading and proving discrimination under the NYCHRL is more permissive, a plaintiff still must still assert sufficient factual allegations to suggest that "the

conduct is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am.,
Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also Llanos v. City of New York*, 129 A.D.3d 620
(N.Y. App. Div. 2015) (a "plaintiff's failure to adequately plead discriminatory animus is fatal to
her claim of  [discrimination under the NYCHRL].").  Without a link to discriminatory animus,
none of the conduct Moazzaz alleged is unlawful.

Moazzaz's allegations concerning investigations of her (Compl., Dkt. 1, ¶¶ 67-71; 77-85)
are similarly deficient.  Moazzaz does not plead any specific facts about what prompted Podlogar
to engage in the first investigation, noting only that Podlogar initiated it after saying that
Moazzaz was "mean, condescending, and shouts," and that Podlogar subsequently had her
performance rating and bonus reduced and arranged for additional training.[5]  (*Id.* ¶¶ 67-68).  The
comment that Moazzaz is "mean, condescending, and shouts," even if taken as true for the
purposes of this motion, has no relationship whatsoever to Moazzaz's sex or gender, and does
not raise an inference of unlawful discrimination.  *Carter*, 2015 WL 247344, at *10
("'[Im]proper office decorum,' without more, is simply not actionable under [federal, state or
city] discrimination laws, however uncomfortable it may make someone.  Plaintiff's conclusory
allegation that a comment devoid of any reference to his sex or apparent discriminatory animus
was 'emasculating' is simply not enough to give rise to any reasonable inference of a hostile
work environment based on sex."); *see also Czerwinski v. New York State Dep't of Corr. &
Cmty. Supervision*, 394 F. Supp. 3d 210, 220 (N.D.N.Y. 2019) (dismissing Title VII claims on
grounds that the complaint lacked sufficient factual allegations to show a link between conduct
and a protected characteristic).

---

[5] Moazzaz has not pled any facts to show that MetLife encouraged or endorsed the allegedly inappropriate
comments made by the third party trainer during her leadership training, and therefore those assertions are irrelevant
to her claims.

As to the second investigation, Moazzaz alleges that a subordinate submitted a complaint, which was investigated by Employee Relations.  (*Id.* ¶¶ 77-85).  Moazzaz has made absolutely no allegation that any Defendant engaged in sex-based discrimination in connection with this investigation.  Absent any allegation—beyond conclusory statements—"that the conduct is caused at least in part by discriminatory motive," Moazzaz's claims arising out of the second investigation also fail.  *Shein v. New York City Dep't of Educ.*, No. 15-cv-4236, 2016 WL 676458, at *9 (S.D.N.Y. Feb. 18, 2016).

### C.    Moazzaz Has Not Pled A Plausible Claim Of Pay Discrimination.

Unlike the Equal Pay Act (which imposes strict liability where the plaintiff receives unequal pay for equal work), a plaintiff suing under Title VII and the NYSHRL (as well as the NYCHRL) must prove discriminatory animus.  A plaintiff who does so may prevail on a disparate pay claim even in the absence of proof that she was underpaid relative to a male performing equal work as defined by the EPA—but the plaintiff must show discriminatory animus in some other way.  *Lenzi*, 944 F.3d at 110 (citing 42 U.S.C. §2000e-2(a)(1)).

Moazzaz's disparate pay claims are deficient under the NYSHRL and the NYCHRL because her claims <u>do</u> rest on the same allegations as her EPA claims – *i.e.*, that she was paid less than the nine men in entirely different jobs referred to in the Complaint – and thus suffer from the same infirmities as her EPA claim.  It is axiomatic that an essential element of a disparate treatment claim is that the plaintiff was similarly situated to the persons alleged to have been her comparators.  *Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d 419, 428 (S.D.N.Y. 2010) ("While it is true that the responsibilities and duties of similarly situated employees need not be identical, they must be similar in all material respects"); *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 499 (E.D.N.Y. 2019); *Pena v. Bd. of Elections*, No. 16-cv-427, 2017 WL 722505, at *10 (S.D.N.Y. Feb. 6, 2017), *report and recommendation adopted*, 2017 WL 713561

14

(S.D.N.Y. Feb. 22, 2017).  Because Moazzaz alleges no facts showing that she was similarly situated to the alleged comparators referred to in the Complaint, she has failed to plead a plausible claim of pay discrimination under the NYSHRL or NYCHRL.  *Eng*, 715 F. App'x at 52 (denying pay discrimination claims brought under the NYSHRL and NYCHRL because plaintiff merely alleged "that she is a 58-year old woman who is paid less than a 57-year old man, a 54-year old man, and a 41-year old woman" and did not supply any allegations suggesting discriminatory animus, noting "we cannot infer discrimination from thin air"); *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 645 (W.D.N.Y. 2014) (dismissing NYSHRL pay discrimination claim, holding that "to withstand a motion to dismiss, the plaintiff must allege how her position and the comparison positions were substantially similar").

### D.     Moazzaz Has Not Alleged Facts To Show That She Was Terminated Because Of Her Gender.

Moazzaz has alleged no facts to link her May 2019 termination to unlawful discriminatory animus.  Moazzaz simply alleges that eight business days after Khalaf was promoted to CEO, she was "unceremoniously terminated without notice."  (Compl., Dkt. 1, ¶ 105).  Because she does not allege any fact from which a reasonable jury could infer discriminatory animus, her claims of unlawful termination should be dismissed.  *Shein,* 2016 WL 676458, at *5.[6] (In order for disparate treatment claim to survive pleading stage, plaintiff must "give plausible support to a minimal inference of discriminatory motivation.")

---

[6] Moazzaz asserts that Kandarian's Chief of Staff, Michael Zarcone, lost his Chief of Staff role when Kandarian left and that a portion of her former job responsibilities—her "real estate responsibilities" were delegated to Zarcone to "ensure that Zarcone had enough work to do." (Compl., Dkt. 1, ¶ 109).  She does not allege that these were Zarcone's only duties or that she was terminated so that he could replace her. This allegation, without more, cannot give rise to any inference of discriminatory animus.  *Shein*, 2016 WL 676458, at *3 (Jewish plaintiff's allegations that Christian colleagues were treated more favorably than her during investigations into their job performance was insufficient to state a claim for disparate treatment, as the plaintiff failed to allege sufficient facts to show that they were similarly situated.)

### E.     Moazzaz Has Not Pled a Plausible Claim Of Discriminatory Failure To Promote.

In order to state a "failure to promote" claim, Moazzaz must plausibly allege facts to show that she was qualified for the position she sought, but was denied due to her gender. *Taylor v. City of New York*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016).  Under the NYCHRL, Moazzaz must show that she was treated "less well than other employees because of her gender." *Id.* at 306.

For the same reasons discussed at length above, Moazzaz has pled no facts to show an inference of discrimination on the basis of her sex/gender.  Moazzaz alleges that in February 2018, she learned that her request for promotion was denied by Podlogar because Moazzaz was "too mean, condescending, and shouts."  (Compl., Dkt. 1, ¶¶ 63-66).  As discussed above, these comments do not imply unlawful discrimination on the basis of Moazzaz's gender.  At best, they describe the type of "personality conflicts and disagreements with the management's style" that courts do not find actionable.  *Grovesteen*, 83 A.D.3d at 1334.  Further, she has not shown that she was treated "less well" than other employees because of her gender.  *Taylor*, 207 F. Supp. 3d at 303.  Moazzaz's assertions, without more, are insufficient to state a claim for failure to promote.

## IV.    The Court Should Dismiss the Third Claim For Relief (NYSHRL Retaliation) And Fifth Claim For Relief (NYCHRL Retaliation).

### A.     Standard of Law.

A *prima facie* claim for retaliation under the NYSHRL requires a showing that:  (i) the plaintiff engaged in protected activity; (ii) the defendants knew of that protected activity; (iii) the defendant took adverse employment action against the plaintiff; and (iv) there is a causal connection between the protected activity and the adverse action.  *Gordon v. City of New York*, No. 14-cv-6115, 2015 WL 3473500 at *11 (S.D.N.Y. June 2, 2015).  Thus, to survive a motion

16

to dismiss, "the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (describing protected activity in the context of a Title VII case); *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1011-12 (N.Y. 2004).

An employee engages in "[p]rotected activity" when she "oppos[es] or complain[s] about unlawful discrimination."  *Mi-Kyung Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013) (citing to *Forrest*, 819 N.E.2d at 1012).  An adverse employment action under the NYSHRL in the retaliation context constitutes a "materially adverse change in the terms and conditions of employment" that would dissuade the plaintiff from making or supporting a charge of discrimination.  *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15-cv- 1398, 2015 WL 7736554, at *11 (S.D.N.Y. Nov. 30, 2015) (citations omitted) (Title VII claim).

The elements of a *prima facie* case of retaliation under the NYCHRL are identical "except that the plaintiff need not prove any 'adverse' employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity."  *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016) (citation omitted).

To survive a motion to dismiss alleging retaliation under the NYSHRL, Moazzaz must "plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Avery v. DiFiore*, No. 18-cv-9150, 2019 WL 3564570, at *3, 5 (S.D.N.Y. Aug. 6, 2019) (granting motion to dismiss NYSHRL retaliation claim due to the plaintiff's failure "to allege sufficient facts to 'provide at least minimal support for the proposition that Defendants were motivated by' retaliatory intent"); *see also Miller v. News American*, 162 A.D.3d 422, 422-3

(N.Y. App. Div. 2018) (plaintiff failed to raise an inference of a causal connection linking

protected activity to alleged retaliation).  Under the NYCHRL Moazzaz must demonstrate that

retaliation "played a role" in the adverse action.  *Fenner v. News Corp.*, No. 09-cv-9832, 2013

WL 6244156, at *28 (S.D.N.Y. Dec. 2, 2013) (failure to plead facts in support of an inference of

causation is fatal to a claim at the pleading stage); *Romanello v. Intesa Sanpaola S.p.A.*, 97

A.D.3d 449, 454 (N.Y. App. Div. 2012) (affirming dismissal of retaliation claims under

NYSHRL and NYCHRL for failure to allege facts to show link to protected activity) (modified

on other grounds).

> **B.** **The Complaint Fails To Plead A Plausible Claim Of Retaliation.**

Moazzaz's claims for retaliation fail because she has not pled any facts to suggest a

causal link between protected activity and any allegedly retaliatory conduct.  Assuming,

*arguendo*, that Moazzaz engaged in protected activity in her November 19, 2017 email

complaint to Lippert about not having been promoted (Compl., Dkt. 1, ¶ 63) and/or her

discussion with Tate-Gowins on June 19, 2018 (*id.* ¶¶ 78-85), she has shown no link to any

alleged actionable retaliation.

First, for the reasons discussed above, Moazzaz's allegations directed at Khalaf (*i.e.*, that

he "bypassed" her by speaking directly to members of her team and did not invite her to a

meeting) and Kandarian (that he "would not speak to" or "acknowledge" her in meetings or

when passing her in the office) are not sufficient to state a claim for retaliation under either the

NYSHRL or NYCHRL.  *Whipple v. Reed Eye Assocs.*, 213 F. Supp. 3d 492, 496 (W.D.N.Y.

2016) (rejecting NYSHRL retaliation claim based on plaintiff's assertion that supervisor refused

to work with her, as it did not constitute an "adverse employment action"); *E.E.O.C. v.

Bloomberg L.P.*, 967 F. Supp. 2d 816, 847, 851 n. 25 (S.D.N.Y. 2013) (holding that the assertion

that plaintiff "was completely ostracized by senior management" and ignored in hallways in

retaliation for filing a charge of discrimination amounted to nothing more than "petty slights, minor annoyances, and simple lack of good manners," and was not actionable).  Therefore, even if Moazzaz could show a link between these actions and any protected activity (which she cannot), she could not state a plausible claim for relief.

Additionally, Moazzaz has shown no link whatsoever between any protected activity and the failure to promote her.  (Compl., Dkt. 1, ¶¶ 67-71, 77-85).  Moazzaz alleges that she was informed that Podlogar had denied her request for promotion three months after her November 2017 complaint to Lippert. Her claim, however, mixes up the analysis of causal connection.  The email itself recites that Moazzaz had already gone four months without the promotion she thought was due her.  In these circumstances, the fact that MetLife did not promote her after the email (and that she was advised three months later that she was still not promoted) creates no inference of retaliation.

Moazzaz has not pled any facts to link her termination (in May 2019) to the November 2017 Lippert email or to her comments to Tate-Gowins in June 2018.  Moazzaz was terminated eighteen months after the November 2017 email, and nearly one year after the comments to Tate-Gowins.  This length of time between complaint and action precludes any finding of a causal connection that would link the alleged retaliatory conduct to the alleged protected activity. *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 450 (S.D.N.Y. 2013) ("in this circuit, '[c]laims of retaliation are routinely dismissed when as few as three months elapse between the protected [ ] activity and the alleged act of retaliation.'") (citing *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y.1999)); *Pacheco v. Park South Hotel*, No. 12-cv-9127, 2014 WL 292348 (S.D.N.Y. Jan. 27, 2014); *Parada v. Banco Indus. de Venezuela, C.A.*, No. 10-cv-883, 2011 WL 519295, at *8 (S.D.N.Y. Feb. 15, 2011) (vacated in part on other grounds).

Moazzaz also contends that she terminated in retaliation for her alleged authorship of a September 2018 "CEO candidate strategy" memorandum on behalf of Lippert.  (Compl., Dkt. 1, ¶¶ 12-13, 97-99).  That claim fails because the memorandum did not constitute protected activity.  The text quoted at paragraph 97 of the Complaint did not assert that MetLife had engaged in unlawful discrimination.  Rather, in the context of Lippert's campaign to become the next CEO of MetLife, the memo asserted that the Company should improve the diversity of its work force.  Criticizing an employer's lack of diversity, however, is not the same as opposing unlawful discrimination—and, therefore, such criticism is not protected activity.  In *Hood v. Pfizer*, 322 F. App'x 124 (3d Cir. 2009), the Third Circuit affirmed the dismissal of a state law retaliation claim that had been premised on an allegation that the plaintiff had been retaliated against for having asked at a meeting "why more wasn't being done to promote diversity within [his department]."  *Id*. at 131.  The court concluded that "a reasonable factfinder could not conclude that [plaintiff] accused [the supervisor] of discrimination in violation of [state law]," reasoning that the statement "is worlds apart from the kinds of particularized statement targeting discrete past events that this Court has held allows an employment discrimination plaintiff's retaliation claim to survive summary judgment."  *Id.* at 131; *see also Fenner*, 2013 WL 6244156, at *25 (finding that an article that referenced a lack of diversity in the defendant's office was not protected activity—"lack of diversity alone is not actionable").

Moazzaz's claim would fail (even if the "candidate strategy" memo were considered protected activity) for two additional reasons: (1) Moazzaz does not allege that Kandarian knew that she was the author of the document; and (2) the memo (which was authored in September 2018) was, as discussed above, far too remote in time from the termination decision to establish a causal connection.

**V.      The Claims Against The Individual Defendants Should Be Dismissed In Any Event.**

Even assuming the Complaint adequately stated claims for relief against MetLife, the

claims against the Individual Defendants—who are alleged to have been her "employer" or to

have "aided and abetted" MetLife's unlawful actions—should be dismissed as a matter of law.

**A.      Standard of Law.**

The NYSHRL "only imposes liability on an employer for an employee's discriminatory

acts if the employer encouraged, condoned or approved the discriminatory conduct."  *Doe v.*

*Bloomberg, L.P.*, 178 A.D.3d 44, 56, n.2 (N.Y. App. Div. 2019).  Individual liability under the

NYSHRL extends to those "who actually participate[d] in the conduct giving rise to plaintiff's

claim." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015).  "[T]he Court of

Appeals has clearly held that in order for an individual to be held liable as an employer pursuant

to the State HRL, it is not enough to show that the individual has an ownership interest in the

company or the power to do more than carry out personnel decisions made by others . . . . To the

contrary, to hold an individual liable as an employer under the State HRL, a plaintiff must also

show that the individual encouraged, condoned or approved the alleged discriminatory conduct."

*Doe*, 178 A.D.3d at n.3 (citing *Totem Taxi v. New York State Human Rights Appeal Bd.*, 480

N.E.2d 1075 (1985)).

The NYCHRL imposes strict liability on an "employer" for the discriminatory acts of the

employer's managers and supervisors.  *See* Administrative Code of City of NY § 8-107 [13] [b]

[1].  However, "in order to hold an individual owner or officer of a corporate employer, in

addition to the separately charged corporate employer, strictly liable under section 8-

107(13)(b)(1) of the Administrative Code, a plaintiff must allege that the individual has an

ownership interest or has the power to do more than carry out personnel decisions made by

others and must allege that the individual encouraged, condoned or approved the specific

conduct which gave rise to the claim." *Doe*, 178 A.D.3d at 48, *see also Marchuk v. Faruqi &*
*Faruqi, LLP*, 100 F. Supp. 3d 302, 309 (S.D.N.Y. 2015) (a plaintiff must establish "at least some
minimal culpability on the part of [the company's individual shareholders]" in order to hold them
liable as employers under the NYCHRL).

 The NYSHRL and NYCHRL both make it "an unlawful discriminatory practice for any
person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this
article, or attempt to do so." (Exec Law § 296(6); NYC Admin. Code § 8–107(6)).  In order to
be liable as an aider and abettor, the individual must have "actually participate[d]" in the alleged
discriminatory acts.  *Forrest*, 819 N.E.2d at 1023.  "It is the employer's participation in the
discriminatory practice which serves as the predicate for the imposition of liability on others for
aiding and abetting."  *Colon v. City of New York*, No. 16-cv-4540, 2019 WL 1315877, at *2
(S.D.N.Y. Mar. 22, 2019) (citing *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y.
1999)).  An individual cannot be liable for aiding and abetting discrimination or retaliation where
plaintiff has failed to establish that the corporate employer discriminated or retaliated against
him in the first instance.  *See Benjamin v. Metro. Transp. Auth.*, No. 07 Civ. 3561 (DAB), 2012
WL 3188764, at *20 (S.D.N.Y. Aug. 2, 2012); *Boonmalert*, 721 F. App'x at 34 ("Since there is
no underlying NYSHRL or NYCHRL violation, there was no aiding or abetting of acts forbidden
by the NYSHRL and NYCHRL.")

 **B.** **The Complaint Fails To State a Claim Against The Individual Defendants.**

 The Complaint alleges that MetLife announced on January 8, 2019 that Khalaf would
become CEO effective May 1, 2019.  As to Khalaf himself, it alleges that he "regularly
bypassed" Moazzaz by reaching out directly to members of her team and that he hosted a
corporate strategy session in February 2019 without inviting her.  (Compl., Dkt. 1, ¶¶ 16, 17,
103, 104).  For the reasons discussed above, those allegations cannot support a claim of

discrimination or retaliation against Khalaf based on his own actions.  Moreover, the Complaint does not allege that he encouraged, condoned or approved in anyone else's discriminatory or retaliatory conduct.  Moazzaz has thus failed to plead a plausible claim against Khalaf as either an "employer" or "aider and abettor."  *Forrest*, 819 N.E.2d at 1023-24.

The same is true with respect to the claims against Kandarian.  Moazzaz alleges only that Kandarian was told that she could bring a lawsuit and took no remedial action, and that Kandarian later would not speak to or acknowledge her because of what was contained in Lippert's CEO strategy memo.  (Compl., Dkt. 1, ¶¶ 69, 100).  As there are no allegations that Kandarian himself engaged in any actionable conduct, or that he encouraged, condoned or approved such conduct, the claims against him must be dismissed.

The "aider and abettor" claims against the remaining defendants should also be dismissed.  The allegations concerning comments supposedly made by Hediger and Hijkoop in 2014 and 2015, respectively (*id.* ¶¶ 53, 58-60) are time-barred on their face.  The remaining allegations (that Hediger began referring to Moazzaz in 2018 as "the little one" (*id.* ¶ 74) and that Hijkoop stated (at some uncertain point in time) that she had "sharp elbows" (*id.* ¶ 61)) are insufficient to state a claim for relief.  Again, there are no allegations that either Hijkoop or Hediger encouraged, condoned or approved anyone else's unlawful conduct.

Finally, the aider and abettor claim asserted against Podlogar must also be dismissed.  Assuming, *arguendo*, that the Complaint pleads that Podlogar discriminated against Moazzaz by denying her request for a promotion, the claim fails for the simple reason that it fails to plead facts that would create a reasonable inference that Podlogar's actions were motivated by discriminatory or retaliatory animus.

23

## <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully request that the Complaint be dismissed in its entirety.

Dated:   January 21, 2020
         New York, New York

                                        Respectfully submitted,

                                        PROSKAUER ROSE LLP

                                        */s/  Joseph Baumgarten*
                                        Joseph Baumgarten
                                        Joseph C. O'Keefe
                                        Eleven Times Square
                                        New York, NY 10036-8299
                                        (T) 212-969-3000
                                        (F) 212-969-2900
                                        jbaumgarten@proskauer.com
                                        jokeefe@proskauer.com
                                        *Attorneys for Defendants*