UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONA MOAZZAZ, | : |
| | : |
|                Plaintiffs, | : |
| | : |
|   - against - | : |
| | : |
| METLIFE, INC.; MICHEL KHALAF, in his | : |
| individual and professional capacities; STEVEN | : |
| KANDARIAN, in his individual and professional | : |
| capacities; FRANS HIJKOOP, in his individual | : |
| and professional capacities; SUSAN | : |
| PODLOGAR, in her individual and professional | : |
| capacities; and GARY HEDIGER, in his | : |
| individual and professional capacities; | |
| | |
|                Defendants. | |

No. 19-cv-10531 (JPO)(OTW)

**ECF CASE**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

PROSKAUER ROSE LLP

Joseph Baumgarten
Joseph C. O'Keefe
Eleven Times Square
New York, NY 10036-8299
(T) 212-969-3000
(F) 212-969-2900
jbaumgarten@proskauer.com
jokeefe@proskauer.com
*Attorneys for Defendants*

Dated: April 3, 2020
New York, New York

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL SUMMARY ........................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

I.     Dismissal Under Fed. R. Civ. P. 12(b)(6)............................................................................ 5

II.    The Court Should Dismiss The First Claim (Federal EPA) And Sixth Claim (NY EPA) Because Plaintiff Failed To Identify A Comparator Paid More For Equal Work. ...................................................................................................................................... 6

     A.     Governing Legal Standard for Plaintiff's EPA Claims............................................ 6

     B.     The Amended Complaint Does Not Plead Facts To Show That Plaintiff Was Paid Less Than Others Whose Jobs Were "Substantially Equal" To Hers. ................................................................................................................ 7

III.   The Court Should Dismiss Plaintiff's Claims Of Discrimination Under The NYSHRL (Second Claim For Relief) And NYCHRL (Fourth Claim For Relief). .......... 10

     A.     Governing Legal Standards for Plaintiff's Discrimination Claims Asserted Under NYSHRL and NYCHRL. ........................................................... 10

          1.     Hostile Work Environment. .................................................................... 10

          2.     Claims of Disparate Treatment. .............................................................. 12

          3.     The NYSHRL And NYCHRL Statutes Of Limitations............................ 12

     B.     Plaintiff Has Not Pled A Claim Of Hostile Work Environment........................... 13

     C.     Plaintiff Has Not Pled A Plausible Claim Of Pay Discrimination........................ 15

     D.     Plaintiff Has Not Alleged Facts To Show That She Was Terminated Because Of Her Gender. ....................................................................................... 16

     E.     Plaintiff Has Not Pled a Plausible Claim Of Discriminatory Failure To Promote. ......................................................................................................... 17

IV.   The Court Should Dismiss The Third Claim (NYSHRL Retaliation) And Fifth Claim (NYCHRL Retaliation) Because The Complaint Does Not Allege Facts Sufficient To Establish A Causal Link Between Protected Activity And Adverse Action. .................................................................................................................................. 18

     A.     Standard of Law. .................................................................................................. 18

     B.     The Amended Complaint Fails To Plead A Plausible Claim Of Retaliation........ 19

V.     The Claims Against The Individual Defendants Should Be Dismissed. .......................... 22

       A.     Governing Standard of Law for Individual Liability. ........................................... 22

       B.     The Amended Complaint Fails To State Claims Against The Individual
              Defendants. ....................................................................................................... 24

CONCLUSION ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abdullajeva v. Club Quarters, Inc.*,
   No. 96 Civ. 0383 (LMM), 1996 WL 497029 (S.D.N.Y. 1996)................................7

*Alexander v. Marriot Int'l, Inc.*,
   No. RWT 09cv2402, 2011 WL 1231029 (D. Md. Mar. 29, 2011)...........................9

*Alvarado v. Nordstrom, Inc.*,
   685 F. App'x 4 (2d Cir. 2017) ................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................5

*Avery v. DiFiore*,
   No. 18-cv-9150, 2019 WL 3564570 (S.D.N.Y. Aug. 6, 2019).............................19

*Barret v. Forest Labs., Inc.*,
   39 F. Supp. 3d 407 (S.D.N.Y. Aug. 14, 2014).............................................9

*Belfi v. Prendergast*,
   191 F.3d 129 (2d Cir. 1999)....................................................................6

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007)................................................................................5

*Benjamin v. Metro. Transp. Auth.*,
   No. 07 Civ 3561 (DAB), 2012 WL 3188764 (S.D.N.Y. Aug. 2, 2012) ................24

*Bermudez v. City of New York*,
   783 F. Supp. 2d 560 (S.D.N.Y. 2011)......................................................11

*Boonmalert v. City of New York*,
   721 F. App'x 29 (2d Cir. 2018) ..........................................................10, 24

*Brands-Kousaros v. Banco Di Napoli S.P.A.*,
   No. 97 Civ. 1673, 1997 WL 790748 (S.D.N.Y. Dec. 23, 1997)............................9

*Carter v. Verizon*,
   No. 13 Civ. 7579 (KPF), 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015)..................14

*Chiaramonte v. Animal Med. Ctr.*,
   677 F. App'x 689 (2d Cir. 2017) ...............................................................6

*Cho v. Young Bin Café*,
   42 F. Supp. 3d 495 (S.D.N.Y. 2013)...................................................................18

*Colon v. City of New York*,
   No. 16-cv-4540 (VSB), 2019 WL 1315877 (S.D.N.Y. Mar. 22, 2019) ..................................23

*Curto v. Edmundson*,
   392 F.3d 502 (2d Cir. 2004)...................................................................13

*Czerwinski v. New York State Dep't of Corr. & Cmty. Supervision*,
   394 F. Supp. 3d 210 (N.D.N.Y. 2019) ...................................................................15

*DeCintio v. Westchester Cty. Med. Ctr.*,
   821 F.2d 111 (2d Cir.1987)...................................................................19

*Delaney v. Farley*,
   623 F. App'x 14 (2d Cir. 2015) ...................................................................13

*DeWitt v. Lieberman*,
   48 F. Supp. 2d 280 (S.D.N.Y. 1999)...................................................................23

*Doe v. Bloomberg, L.P.*,
   178 A.D.3d 44 (N.Y. App. Div. 2019) ...................................................................22, 23

*Drew v. Plaza Const. Corp.*,
   688 F. Supp. 2d 270 (S.D.N.Y. 2010)...................................................................24

*E.E.O.C. v. Bloomberg L.P.*,
   967 F. Supp. 2d 816 (S.D.N.Y. 2013)...................................................................19

*E.E.O.C. v. Port Auth. of New York & New Jersey*,
   768 F.3d 247 (2d Cir. 2014)...................................................................6, 7

*Eng v. City of New York*,
   715 F. App'x 49 (2d Cir. 2017) ...................................................................6, 7, 16

*Erasmus v. Deutsche Bank Americas Holding Corp.*,
   No. 15 Civ. 1398 (PAE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) .........................11, 18

*Estate of Hamilton v. City of New York*,
   627 F.3d 50 (2d Cir. 2010)...................................................................12

*Fattoruso v. Hilton Grand Vacations Co.*,
   873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).......................12

*Fenner v. News Corp.*,
   2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ...................................................................22

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)..................................................................................5

*Forrest v. Jewish Guild for the Blind*,
    819 N.E.2d 998 (N.Y. 2004)...................................................................18, 23, 24

*Frasier v. Gen. Elec. Co.*,
    930 F.2d 1004 (2d Cir. 1991)...............................................................................7

*Gordon v. City of New York*,
    No. 14-cv-6115 (JPO), 2015 WL 3473500 (S.D.N.Y. June 2, 2015)....................18

*Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*,
    No. 16 Civ. 4897, 2017 WL 2258374 (S.D.N.Y. May 22, 2017)..........................12

*Grovesteen v. New York State Pub. Emps. Fed'n, AFL-CIO*,
    83 A.D.3d 1332 (N.Y. App. Div. 2011) ...........................................................11, 17

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993).............................................................................................10

*Harris v. NYU Langone Medical Center*,
    No. 12 Civ. 0454(RA)(JLC), 2013 WL 3487032 (S.D.N.Y. July 9, 2013)...........12

*Hood v. Pfizer, Inc.*,
    322 F. App'x 124 (3d Cir. 2009) ...................................................................21, 22

*Hughes v. Xerox Corp.*,
    37 F. Supp. 3d 629 (W.D.N.Y. 2014) ..................................................................16

*Isbell v. City of New York*,
    316 F. Supp. 3d 571 (S.D.N.Y. 2018)..................................................................11

*Johnson v. Cty. of Nassau*,
    82 F. Supp. 3d 533 (E.D.N.Y. 2015) ..............................................................22, 25

*Johnson v. Strive E. Harlem Emp't Grp.*,
    990 F. Supp. 2d 435 (S.D.N.Y. 2014)..................................................................12

*Kairam v. W. Side GI, LLC*,
    793 F. App'x 23 (2d Cir. 2019) ............................................................................7

*Kearney v. ABN AMRO, Inc.*,
    738 F. Supp. 2d 419 (S.D.N.Y. 2010)..................................................................15

*Koster v. Chase Manhattan Bank, N.A.*,
    609 F. Supp. 1191 (S.D.N.Y.1985).................................................................7, 10

*Lebowitz v. New York City Dep't of Educ.*,
   407 F. Supp. 3d 158 (E.D.N.Y. 2017) ...................................................................13

*Lenzi v. Systemax, Inc.*,
   944 F.3d 97 (2d Cir. 2019)...........................................................................10, 15

*Leshinsky v. Telvent GIT, S.A.*,
   942 F. Supp. 2d 432 (S.D.N.Y. 2013)....................................................................20

*Lioi v. New York City Dep't of Health & Mental Hygiene*,
   914 F. Supp. 2d 567 (S.D.N.Y. 2012)....................................................................11

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015).................................................................................11

*Llanos v. City of New York*,
   129 A.D.3d 620 (N.Y. App. Div. 2015) ..................................................................14

*Marchuk v. Faruqi & Faruqi, LLP*,
   100 F. Supp. 3d 302 (S.D.N.Y. 2015)....................................................................23

*Mauze v. CBS Corp.*,
   340 F. Supp. 3d 186 (E.D.N.Y. 2018) .............................................................9, 16

*McNair v. NYC Health & Hosp. Co.*,
   160 F. Supp. 2d 601 (S.D.N.Y. Apr. 9, 2001) .......................................................19

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*
   715 F.3d 102 (2d Cir. 2013).............................................................................12, 14

*Nicastro v. Runyon*,
   60 F. Supp. 2d 181 (S.D.N.Y.1999)......................................................................20

*Nieblas-Love v. New York City Hous. Auth.*,
   165 F. Supp. 3d 51 (S.D.N.Y. 2016).....................................................................18

*Olaechea v. City of New York*,
   No. 17-cv-4797 (RA), 2019 WL 4805846 (S.D.N.Y. Sept. 30, 2019) ...................10

*Oncale v. Sundowner Offshore Servs. Inc.*,
   523 U.S. 75 (1998)................................................................................................12

*Pajic v. CIGNA Corp.*,
   No. Civ. A. No. 89-2404, 1990 WL 127797 (E.D. Pa. Aug. 31, 1990)....................9

*Parada v. Banco Indus. de Venezuela, C.A.*,
   No. 10-cv-883 (SHS), 2011 WL 519295 (S.D.N.Y. Feb. 15, 2011) .......................20

*Pena v. Bd. of Elections*,
 No. 16-CV-427 (VEC) (BCM), 2017 WL 722505 (S.D.N.Y. Feb. 6, 2017) .........................16

*Romanello v. Intesa Sanpaola S.p.A.*,
 97 A.D.3d 449 (1st Dep't 2012) ...........................................................................................19

*Rose v. Goldman, Sachs & Co., Inc.*,
 163 F. Supp. 2d 238 (S.D.N.Y. 2001)....................................................................................16

*Servello v. New York Office of Children & Family Servs.*,
 No. 118CV0777LEKDJS, 2019 WL 974972 ...........................................................................8

*Shah v. N.Y. State Office of Mental Health*,
 523 Fed. App'x 828 (2d Cir.2013)..........................................................................................20

*Shein v. New York City Dep't of Educ.*,
 No. 15 cv 4236 (DLC), 2016 WL 676458 (S.D.N.Y. Feb. 18, 2016) ..............................15, 17

*Simon v. City of New York*,
 No. 17 Civ. 9575 (DAB), 2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) ..................................12

*Sosa v. Local Staff, LLC*,
 618 F. App'x 19 (2d Cir. 2015) ..............................................................................................12

*Sosa v. New York City Dep't of Educ.*,
 368 F. Supp. 3d 489 (E.D.N.Y. 2019) ...................................................................................16

*Taylor v. City of New York*,
 207 F. Supp. 3d 293 (S.D.N.Y. 2016).....................................................................................17

*Tolbert v. Smith*,
 790 F.3d 427 (2d Cir. 2015)...................................................................................................11

*Tomka v. Seiler Corp.*,
 66 F.3d 1295 (2d Cir.1995)....................................................................................................10

*Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*,
 480 N.E.2d 1075 (1985).........................................................................................................23

*Vasquez v. Empress Ambulance Serv., Inc.*,
 835 F.3d 267 (2d Cir. 2016)...................................................................................................10

*Vega v. Hempstead Union Free Sch. Dist.*,
 801 F.3d 72 (2d Cir. 2015).....................................................................................................18

*Wang v. Palmisano*,
 51 F.Supp.3d 521 (S.D.N.Y. Sep. 30, 2014)...........................................................................20

*Washington Cty. v. Gunther*,
    452 U.S. 161 (1981).......................................................................................9

*Whipple v. Reed Eye Assocs.*,
    213 F. Supp. 3d 492 (W.D.N.Y. 2016) ...................................................19

*Williams v. New York City Hous. Auth.*,
    61 A.D.3d 62 (N.Y. App. Div. 2009) ..............................................11, 12

*Woodard v. TWC Media Sols., Inc.*,
    No. 09 Civ. 3000 (BSJ) (AJP), 2011 WL 70386 (S.D.N.Y. Jan. 4, 2011) ..............................11

## STATUTES

29 U.S.C.A. § 206(d)(1)...................................................................................6, 7

N.Y.C. Admin. Code § 8-107(6).........................................................................23

N.Y.C. Admin Code § 8-502(d)...........................................................................13

N.Y.C. Admin. Code § 8-107(13)(b)(1) ..............................................................23

N.Y. Exec Law § 296(6) .....................................................................................23

N.Y. Lab. Law § 194 .......................................................................................6, 7

## RULES

29 C.F.R. § 1620.9(a).......................................................................................10

Fed. R. Civ. P. 12(b)(6)......................................................................................5

N.Y. C.P.L.R. § 214(2) .....................................................................................13

## PRELIMINARY STATEMENT

Plaintiff Mona Moazzaz's Amended Complaint fails to set forth facts sufficient to state a claim for relief and is subject to dismissal under Rule 12(b)(6), for the following reasons:

1. Plaintiff has failed to state a claim under the federal Equal Pay Act (the "federal EPA") or the New York Equal Pay Act (the "NYEPA"), as she defeats her own claims by pleading facts that establish that the male employees she identifies as comparators <u>did not</u> have jobs requiring "substantially equal" skill, effort, and responsibility, performed under similar working conditions at the same establishment.

2. Plaintiff's claims for gender discrimination and retaliation in violation of the New York State Human Rights Law (the "NYSHRL") and New York City Human Rights Law (the "NYCHRL") fail against all Defendants because she has failed to allege facts that would establish a hostile work environment (as opposed to trivial and petty slights) or facts that would establish that the Defendants underpaid her, failed to promote her or terminated her employment due to discriminatory or retaliatory animus.

3. Finally, Plaintiff's claims against MetLife's Chief Executive Officer ("CEO"), Michel Khalaf ("Khalaf"), former CEO, Steven Kandarian ("Kandarian"), former Chief Human Resources Officer ("CHRO"), Frans Hijkoop ("Hijkoop"), CHRO, Susan Podlogar ("Podlogar"), and Head of HR support for Global Technology and Operations ("GTO"), Gary Hediger ("Hediger") (collectively, the "Individual Defendants") fail because she has not shown and cannot show facts in support of her assertion that Khalaf or Kandarian is an "employer," nor has she sufficiently alleged that any of the Individual Defendants engaged in conduct that constitutes "aiding and abetting" under the NYSHRL or NYCHRL.

# FACTUAL SUMMARY[1]

Plaintiff was hired by MetLife Group, Inc. ("MetLife")[2] in February 2012 as a Vice President in the GTO division. (Amended Complaint, Dkt. 20 ("Am. Compl."), ¶ 31). In September 2014, Plaintiff was promoted to Senior Vice President ("SVP"), with the functional title of Chief Administrative Officer ("CAO"). (*Id.* ¶ 38). In addition to her CAO duties, Plaintiff also served as Interim Global Head of Digital Strategy between September 2014 and June 2017. (*Id.* ¶ 39).

Plaintiff asserts that nine (9) men were paid more than her in 2017 including Greg Baxter (Chief Digital Officer), Chris Smith (Head of Operations), Steve Weinreb (Head of Asia IT), Toby Brown (Head of Japan Operations), Adam Hodes (Head of M&A), Ed Spehar (Europe, Middle East, and African Chief Financial Officer), Hugh Dineen (U.S. Marketing Head), John Hall (Head of Investor Relations), and Doug Rayvid (Head of Compliance). Plaintiff further asserts that her job as CAO and Interim Global Head of Digital Strategy was "equally or more complex and substantial" than <u>all</u> nine (9) of the different positions. (*Id.* ¶¶ 6, 49-83).

Plaintiff further alleges the following:

- In 2014, Hediger called Plaintiff "bitch" and "commander." (*Id.* ¶¶ 6, 86, 125).

- In 2014, Hijkoop stated that women were "too emotional" during a panel discussion at a MetLife women-only conference. (*Id.* ¶¶ 117-118).

- In 2015, Hijkoop, who was MetLife's CHRO at the time, supposedly told Plaintiff to "be nicer," and to "be more like the woman that he had researched on the internet [referring to internet research he conducted on Moazzaz] that participates in community service

---

[1] For purposes of this motion only, Defendants assume the truth of the facts alleged in the Complaint. Defendants' recitation of the facts set forth in the Complaint, including the comments attributed to various individuals, should not be viewed as an admission that any of the facts are true, or that any of the comments were made.

[2] MetLife, Inc. is improperly named in the Amended Complaint. MetLife Group, Inc. was, at all relevant times, Plaintiff's employer.

activities and supports not-for-profit organizations." (*Id.* ¶¶ 91-93).

- Hijkoop and Christopher Townsend (Head of Asia), on separate occasions, described Plaintiff as having "sharp elbows." (*Id.* ¶ 94).

- By email dated November 19, 2017, Plaintiff complained to Martin Lippert ("Lippert"), then Global Head of GTO, that she had not been promoted to Executive Vice President ("EVP"). (*Id.* ¶ 96). In February 2018, Lippert told Plaintiff that Podlogar had denied Plaintiff's promotion because she was "too mean, condescending, and shouts," and that Podlogar would reconsider a promotion if were Plaintiff "nicer." (*Id.* ¶¶ 97-99).

- In 2017 or 2018 (the Amended Complaint does not specify), Podlogar initiated an investigation into Plaintiff. (*Id.* ¶ 100). As a result of that investigation, Plaintiff's performance rating and bonus were reduced, and Plaintiff was directed to "undergo" six months of leadership training. (*Id.* ¶¶ 100-101). In addition, MetLife hired a leadership coach from Merrick & Company to work with Plaintiff, and she alleges that the coach made inappropriate comments to her. (*Id.* ¶¶ 101, 104, 111-112).

- In 2018, Hediger began referring to Plaintiff as the "little one." (*Id.* ¶ 113).

- In 2018, Plaintiff complained to Hediger about diversity issues related to the hiring of African American officers and MetLife's measurement of its recruitment of African-American employees. (*Id.* ¶ 121).

- In June 2018, Plaintiff's subordinate, Tim O'Brien, complained to Human Resources about Plaintiff, prompting an investigation. (*Id.* ¶ 119). Plaintiff was interviewed by Employee Relations Lead Tracey Tate-Gowins ("Tate-Gowins"). (*Id.* ¶ 120). During this meeting, Plaintiff reiterated her previous complaints about being called a "bitch," "commander" and "the little one," and the "sharp elbows" comment. (*Id.* ¶ 122, 124-125).

- In September 2018, Plaintiff drafted a CEO candidate strategy memo on behalf of Lippert that referred to MetLife's diversity results and performance under Kandarian's leadership as CEO, and suggested plans to improve the results. (*Id.* ¶¶ 136-139). After receiving a copy of the candidate strategy, Kandarian did not speak to Plaintiff. (*Id*. ¶¶ 142-143).

- In December 2018, Elizabeth Nieto, then Global Chief Diversity and Inclusion Officer, relayed critical feedback about a mural Plaintiff had installed to support women's advancement at MetLife. (*Id.* ¶¶ 130-134).

- In 2019, incoming CEO Khalaf spoke directly to Plaintiff's team members instead of going through her. (*Id.* ¶¶ 144, 146). He also held a strategy session with some of MetLife's leaders, and did not invite Plaintiff to this meeting. (*Id.* ¶ 147).

- On May 14, 2019, eight (8) business days after Khalaf succeeded Kandarian as CEO, Plaintiff was terminated. (*Id.* ¶ 148).

## <u>ARGUMENT</u>

The Amended Complaint purports to set forth six (6) claims for relief. Plaintiff alleges that MetLife, Khalaf, Kandarian and Podlogar violated the federal and New York State Equal Pay Acts; however, the Amended Complaint is devoid of any factual allegations to support Plaintiff's contention that her purported comparators held jobs that were "substantially equal" to hers.

Moazzaz further alleges that Defendants discriminated against her under the New York State ("NYSHRL") and New York City Human Rights Laws ("NYCHRL") with respect to her compensation, by failing to promote her, by terminating her employment, and by subjecting her to a hostile work environment (Second and Fourth Causes of Action); yet, Plaintiff's allegations do not rise to the level of actionable discrimination under NYSHRL and NYCHRL.

Plaintiff further alleges that Defendants retaliated against her for engaging in protected

activity under the NYSHRL and NYCHRL by failing to promote her and subsequently terminating her (Third and Fifth Causes of Action); however, Plaintiff failed to plausibly allege that she was subjected to an adverse employment action *because* of her engagement in a protected activity.

Finally, Plaintiff's claims against the Individual Defendants should be dismissed in their entirety because neither Khalaf nor Kandarian were Moazzaz's "employer" and she has not alleged facts that would establish that any of the individual defendants engaged in any conduct that constitutes "aiding and abetting" unlawful actions.

## I.     Dismissal Under Fed. R. Civ. P. 12(b)(6).

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citation omitted). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 680.

Although the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

II.     **The Court Should Dismiss The First Claim (Federal EPA) And Sixth Claim (NY EPA)
Because Plaintiff Failed To Identify A Comparator Paid More For Equal Work.**

A.     **Governing Legal Standard for Plaintiff's EPA Claims.**

The federal and New York Equal Pay Acts contain very similar language. Under 29

U.S.C.A. § 206(d)(1):

> No employer having employees subject to any provisions of this section shall
> discriminate, **within any establishment in which such employees are employed,**
> between employees on the basis of sex by paying wages to employees in such
> establishment at a rate less than the rate at which he pays wages to employees of
> the opposite sex in such establishment for **equal work on jobs the performance
> of which requires equal skill, effort, and responsibility, and which are
> performed under similar working conditions**. . .

Under N.Y. Lab. Law § 194:

> No employee with status within one or more protected class or classes [including
> sex] shall be paid a wage at a rate less than the rate at which an employee without
> status within the same protected class or classes **in the same establishment** is paid
> for: (a) **equal work on a job the performance of which requires equal skill,
> effort and responsibility, and which is performed under similar working
> conditions**, or (b) **substantially similar work, when viewed as a composite of
> skill, effort, and responsibility, and performed under similar working
> conditions** . . .

To survive a motion to dismiss an EPA claim,[3] a plaintiff must plead facts sufficient to

support the following: "i) the employer pays different wages to employees of the opposite sex; ii)

the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii)

the jobs are performed under similar working conditions." *Eng v. City of New York*, 715 F. App'x

49, 51 (2d Cir. 2017) (summary order) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.

1999) (abrogated on other grounds); *see also E.E.O.C. v. Port Auth. of New York & New Jersey*,

768 F.3d 247, 255 (2d Cir. 2014) (affirming dismissal, noting that "[a]t the pleading stage, then, a

plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the

---

[3] Equal pay claims brought pursuant to New York Labor Law § 194 are analyzed under the same standards as the
federal Equal Pay Act. *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 689 n.1 (2d Cir. 2017) (summary order).

reasonable inference' that the relevant employees' job content was 'substantially equal.'").

This standard requires that a plaintiff identify a comparator who has a job that is "*substantially* equal in skill, effort, and responsibility" to the *plaintiff's overall job*. *Eng,* 715 F. App'x at 51-52; *Abdullajeva v. Club Quarters, Inc.*, No. 96 Civ. 0383 (LMM), 1996 WL 497029, at *4 (S.D.N.Y. 1996) (citing *Koster v. Chase Manhattan Bank, N.A.*, 609 F. Supp. 1191, 1193–94 (S.D.N.Y.1985) ("[p]laintiffs must demonstrate that the overall job they perform is substantially equal to a male employee's job, and not merely that certain component parts are the same"). The comparator must also work in the same "establishment." *See* 29 U.S.C.A. § 206(d)(1); *see also* N.Y. Lab. Law § 194; *see also Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

Legal conclusions are not sufficient to meet the pleading standard for an EPA claim; rather, specific factual allegations regarding the comparators' job duties are required. *See E.E.O.C.*, 768 F.3d at 258 (dismissal affirmed, plaintiff had not "alleged a single nonconclusory fact supporting its assertion that the claimants' and comparators' jobs required 'substantially equal' skill and effort"); *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 26 (2d Cir. 2019) (affirming dismissal of EPA claim where plaintiff failed to allege facts about the comparator's job duties); *Eng*, 715 F. App'x at 52 ( "[p]laintiff at no point provides factual allegations about her or the comparators' job duties, skills, efforts, or responsibilities to demonstrate that their respective jobs were substantially equal"). "[B]road generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice." *E.E.O.C.*, 768 F.3d at 256.

### B.   The Amended Complaint Does Not Plead Facts To Show That Plaintiff Was Paid Less Than Others Whose Jobs Were "Substantially Equal" To Hers.

The Amended Complaint alleges that Plaintiff's job was substantially equal to the jobs of nine (9) other executives, an assertion which (if true) would make all ten (10) jobs substantially equal to each other. In fact, the jobs identified involved vastly different functions, responsibilities and even

geographic locations. Plaintiff does not plead that her job involved the same duties, skills, efforts or responsibilities. Rather, she relies largely on the fact that she interfaced with the individuals holding those jobs, and reviewed, collaborated and reported on certain projects or budgets for which they were responsible. Her allegations are insufficient to state an Equal Pay Act claim.

The Amended Complaint alleges no facts whatsoever concerning the duties and responsibilities of Greg Baxter. Rather, Plaintiff simply alleges that Baxter was hired as Chief Digital Officer after Plaintiff had functioned as Interim Global Head of Digital Strategy (which allegedly encompassed the CDO role) for three years. (Am. Compl., ¶ 52) As noted above, however, similarities or differences in title are not determinative. Although Plaintiff alleges that the CDO role "was part of the GHDS role" (*id*), she alleges nothing whatsoever about the duties and responsibilities that Baxter actually had after his hire or how those responsibilities compared to hers when she functioned as GHDS (or about his digital experience and expertise compared to hers).

The Amended Complaint provides a superficial description of the job duties of the other alleged comparators. Taken together, those comparators held positions that made them responsible for vastly different functions: Global Operations (Chris Smith); Asia Information Technology (Weinreb); Japanese Operations (Brown); Mergers and Acquisitions (Hodes); Europe, Middle East and Africa Finance (Spehar); U.S. Marketing (Dineen); Investor Relations (Hall) and Compliance (Rayvid). It is hardly surprising – and not at all legally relevant – that Plaintiff had occasion to interact with the incumbents in those roles, as she repeatedly alleges. But the fact that Plaintiff "reviewed" or "approved" data or proposals (*id.* ¶¶ 54, 57, 69, 73), "met [or worked] with" the various incumbents or their teams (*id.* ¶¶ 54, 65, 81) and reported on the progress of certain of their projects (*id.* ¶¶ 57, 65, 69), does not make her job equal in skill, effort or responsibility to those jobs. *See Servello v. New York Office of Children & Family Servs.*, No. 118CV0777LEKDJS,

2019 WL 974972, at *5 (citing *Chepak v. N.Y.C. Health & Hosps. Corp.*, No. 11-cv-9698, 2015 WL 509279, at *11 (S.D.N.Y. Feb. 5, 2015) ("It is not uncommon that two employees perform certain tasks together but only one is held accountable for the results…the employees may perform the same duties, but their jobs are not substantially equal in responsibility.").

In fact, Plaintiff's overly ambitious Amended Complaint pleads too much to sustain an EPA claim. Moazzaz asserts that she actually had greater responsibilities than her comparators.[4] Assuming the truth of the allegations, the compensation paid to those comparators cannot form the basis for an EPA claim. *See Mauze v. CBS Corp.*, 340 F. Supp. 3d 186, 206-207 (E.D.N.Y. 2018) (dismissing EPA claim where the plaintiff alleged that she took on responsibilities greater than her comparator); *see also Alexander v. Marriot Int'l, Inc.*, No. RWT 09cv2402, 2011 WL 1231029, at *4-5 (D. Md. Mar. 29, 2011) (dismissing EPA claim because the plaintiff maintained more "managerial" duties than her comparator); *Pajic v. CIGNA Corp.*, No. Civ. A. No. 89-2404, 1990 WL 127797, at *4 (E.D. Pa. Aug. 31, 1990) (noting that plaintiffs' argument that they "did much more than" her male comparators precludes recovery because the statute only covers pay differentials between like jobs); *see Barret v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 452 (S.D.N.Y. Aug. 14, 2014) (citing to *Gibson v. Jacob K. Javits Convention Ctr. of N.Y.,* No. 95 CIV. 9728 (LAP), 1998 WL 132796, at *4 (S.D.N.Y. Mar. 23, 1998), Cecily Fuhr, 58 Causes of Action 2d 335 § 3 (2013); *Washington Cty. v. Gunther*, 452 U.S. 161 (1981)) (emphasizing that an EPA claim, unlike a Title VII claim, does not permit relief "no matter how egregious the discrimination might be - unless [the plaintiff's] employer also employ[s] a man in an equal job in the same establishment, at a higher rate of pay); *see also Brands-Kousaros v. Banco Di*

---

[4] Plaintiff alleges that she managed approximately 400 more people than Weinreb (Am. Compl., ¶ 58), 1,000 more people than Brown. (*Id.* ¶ 62), 1,485 more people than Hodes (*Id.* ¶ 66), 1,500 more people than Spehar (*Id.* ¶ 70), 1,355 more people than Dineen (*Id*. ¶ 74), 1,495 more people than Hall (*Id.* ¶ 78), 1,480 more people than Rayvid. (*Id.* ¶ 82). Plaintiff failed to allege any facts related to Baxter's responsibilities but does allege that the CDO role was "part of" the GDHS role that she had previously held. The Amended Complaint also alleges that Plaintiff's job was "clearly more substantial and complex" than Smith's job. (*Id.* ¶ 55).

*Napoli S.P.A.*, No. 97 Civ. 1673, 1997 WL 790748, at *6 n.3 (S.D.N.Y. Dec. 23, 1997) (*citing Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995); *Koster*, 609 F.Supp. 1191 at 1193–94) (recognizing a plaintiff cannot use a comparator with fewer responsibilities: "the hallmark of the prima facie case under the EPA is a showing of 'substantially equal' work.").[5]

### III. The Court Should Dismiss Plaintiff's Claims Of Discrimination Under The NYSHRL (Second Claim For Relief) And NYCHRL (Fourth Claim For Relief).

Plaintiff asserts claims of gender discrimination under the NYSHRL and NYCHRL, including claims that she was subjected to a hostile work environment, disparate treatment in pay (in 2017), discriminatory failure to promote (in 2017), and termination (in 2019) because of her gender. (Am. Compl., ¶¶ 160, 169). Plaintiff has not pled viable claims.

### A. Governing Legal Standards for Plaintiff's Discrimination Claims Asserted Under NYSHRL and NYCHRL.

#### 1. Hostile Work Environment.

To state a claim for hostile work environment under the NYSHRL,[6] a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The conduct complained of "must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Olaechea v. City of*

---

[5] Plaintiff has also not supplied sufficient information regarding her alleged comparators for this Court to determine if whether any of them worked they are in the "same establishment as required by both Federal and New York of Law." Under 29 C.F.R. § 1620.9(a), the term "establishment" is defined as "a distinct physical place of business rather than an entire business or 'enterprise' which may include several separate places of business." As is apparent from the some of the titles themselves (Head of Asia IT and Head of Japan Operations), they are geographically separate.

[6] Discrimination claims under Title VII and the NYSHRL (including hostile environment claims), as well as retaliation claims, are governed by the same standard. *Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019); *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016).

*New York*, No. 17-cv-4797 (RA), 2019 WL 4805846, at *6 (S.D.N.Y. Sept. 30, 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015)) (citation omitted).

"As a general rule, incidents must be more than 'episodic'; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). The conduct alleged must be extreme enough that it "permeated the workplace and altered the conditions of [] employment." *Grovesteen v. New York State Pub. Emps. Fed'n, AFL-CIO*, 83 A.D.3d 1332, 1334 (N.Y. App. Div. 2011); *see also Lioi v. New York City Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 590 (S.D.N.Y. 2012) (citing cases dismissing hostile work environment claims alleging severe conduct including multiple requests for dates, sexual comments, and instances of unwanted touching).

Under the NYCHRL, a plaintiff must show "unwanted gender-based conduct" to establish a hostile work environment claim. *Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (citation omitted). Even under the NYCHRL, a defendant is not liable for conduct that amounts to nothing more than "petty slights or trivial inconveniences." *Williams v. New York City Hous. Auth.,* 61 A.D.3d 62, 79-80 (N.Y. App. Div. 2009). If the conduct that is alleged to rise to the level of a hostile work environment is "'far from a borderline' of the NYSHRL, the plaintiff has failed to state a claim under NYCHRL as well." *Erasmus*, 2015 WL 7736554, at *7 (citing *Woodard v. TWC Media Sols., Inc.*, No. 09 Civ. 3000 (BSJ) (AJP), 2011 WL 70386, at *9 (S.D.N.Y. Jan. 4, 2011)).

Courts have repeatedly recognized that neither the NYSHRL nor the NYCHRL are "intended to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citing *Bermudez v. City of New York*, 783 F. Supp. 2d

560, 579 (S.D.N.Y. 2011)); *see also Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d

569, 576 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (citation omitted); *Sosa v. Local

Staff, LLC*, 618 F. App'x 19, 20 (2d Cir. 2015) (summary order); *Williams*, 61 A.D.3d at 79-80

(citing *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998)).

### 2.     Claims of Disparate Treatment.

Under the NYSHRL, it is unlawful "[f]or an employer or licensing agency, because of an

individual's . . . sex . . . to discriminate against such individual in compensation or in terms,

conditions or privileges of employment." Under the NYSHRL, a plaintiff must allege that she: (1)

was a member of a protected class; (2) was qualified for her position; (3) suffered an adverse

employment action; and (4) the adverse employment action occurred under circumstances that

give rise to an inference of discriminatory intent. *Harris v. NYU Langone Medical Center*, No. 12

Civ. 0454(RA)(JLC), 2013 WL 3487032, at *14 (S.D.N.Y. July 9, 2013) (citing *Estate of Hamilton

v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010) (claims under NYSHRL are construed under

the same standards as their federal counterparts).

"[C]ourts . . . have recognized that '[u]nder the NYCHRL, there are not separate standards

for "discrimination" and "harassment" claims.'" *Grimes-Jenkins v. Consol. Edison Co. of N.Y.,

Inc.*, No. 16 Civ. 4897, 2017 WL 2258374, at *8 n.12 (S.D.N.Y. May 22, 2017) (quoting *Johnson

v. Strive E. Harlem Emp't Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)). Rather, to successfully

plead a claim under the NYCHRL, a plaintiff must establish that she was treated "less well" as a

result of the protected characteristic. *Simon v. City of New York*, No. 17 Civ. 9575 (DAB), 2019

WL 916767, at *4 (S.D.N.Y. Feb. 14, 2019) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am.,

Inc.* 715 F.3d 102, 108-110 (2d Cir. 2013)).

### 3.     The NYSHRL And NYCHRL Statutes Of Limitations.

Claims asserted under the NYSHRL and the NYCHRL are subject to a three-year statute

of limitations calculated from the date the action is commenced as compared to the date of the discriminatory act. N.Y. C.P.L.R. § 214(2); N.Y.C. Admin Code § 8-502(d); *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004); *Delaney v. Farley*, 623 F. App'x 14, 16 (2d Cir. 2015).

### B.     Plaintiff Has Not Pled A Claim Of Hostile Work Environment.

Plaintiff's allegations that Hediger called her a "bitch" in 2014 (Am. Compl. ¶ 86), that Hijkoop stated that women were "too emotional" in 2014 (*Id.* ¶ 118),[7] and that Hijkoop told her to be "nicer" in 2015 (*Id.* ¶ 92) fall outside the statute of limitations and cannot support her claims.[8]

The remaining comments and interactions that Plaintiff describes are, at most, the types of "petty slights" and "trivial inconveniences" courts find insufficient to withstand a motion to dismiss. *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 181-82 (E.D.N.Y. 2017). As summarized above (at pp. 2-3, *supra*), Plaintiff alleges the following comments and interactions: Hijkoop and Christopher Townsend (former Head of Asia) described Plaintiff as having "sharp elbows" in 2017 (Am. Compl. ¶ 94); Podlogar said that Plaintiff was "too mean, condescending, and shouts" (*Id.* ¶ 98); Hediger allegedly called Plaintiff "little one" in 2018 (*Id.* ¶ 113); Elizabeth Nieto (the Global Head of Diversity) criticized Plaintiff's mural design in 2018 (*Id.* ¶¶ 130-134); Kandarian would not speak to Plaintiff or acknowledge her when they passed each other in the office (*Id.* ¶ 143); and Khalaf reached out to speak directly to Plaintiff's subordinates and did not invite her to a meeting in February 2019. (*Id.* ¶¶ 146-147).

These allegations fall far short of satisfying the minimum pleading requirements for a hostile work environment claim under the NYSHRL. *See Lebowitz,* 2017 WL 1232472, at *15

---

[7] Notably, Hijkoop's comments are not related to any employment action affecting Plaintiff.

[8] Even if they were timely, these alleged comments would fall well short of the standard for a hostile work environment, under either the NYSHRL or the NYCHRL, as they involved trivial and isolated comments. *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017) (affirming dismissal of hostile work environment claims under because three isolated comments over the course of the year were too trivial to state a claim).

(dismissing hostile work environment claim because claims were nothing more than petty slights and trivial inconveniences); *Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *12 (S.D.N.Y. Jan. 20, 2015) (mere frustrations and annoyances with workplace and with supervisors with whom plaintiff did not get along were not sufficient to state a claim for hostile work environment, and only Plaintiff's "barely sufficient" allegation that a female supervisor pressed her breasts into his back was enough to state a claim at the pleading stage.)

Even under the more lenient NYCHRL standard, Plaintiff's claim fails because she alleges nothing more than a handful of comments and encounters, with no link to her gender, spanning a three-year period. Under NYCHRL, a plaintiff still must assert sufficient factual allegations to suggest that "the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110; *see also Llanos v. City of New York*, 129 A.D.3d 620 (N.Y. App. Div. 2015) (a "plaintiff's failure to adequately plead discriminatory animus is fatal to her claim of [discrimination]"). Absent a link to discriminatory animus, none of the conduct Plaintiff alleged is unlawful.

Plaintiff's allegations that she was the subject of certain investigations (Am. Compl. ¶¶ 100-110; 119-127) are similarly deficient. Plaintiff does not plead any specific facts concerning what prompted Podlogar to engage in the first investigation, noting only that Podlogar initiated it after saying that Plaintiff was "mean, condescending, and shouts," and that Podlogar subsequently had her performance rating and bonus reduced and arranged for additional training.[9] (*Id.* ¶¶ 100-101). The comment that Plaintiff is "mean, condescending, and shouts," even if taken as true for the purposes of this motion, has no relationship whatsoever to Plaintiff's sex or gender, and does not raise an inference of unlawful discrimination. *Carter*, 2015 WL 247344, at *10 ("'[Im]proper office

---

[9] Plaintiff has not pled any facts to show that MetLife encouraged or endorsed the allegedly inappropriate comments made by the third-party trainer during her leadership training, and therefore those assertions are irrelevant to her claims.

decorum,' without more, is simply not actionable under [federal, state or city] discrimination laws, however uncomfortable it may make someone. Plaintiff's conclusory allegation that a comment devoid of any reference to his sex or apparent discriminatory animus was 'emasculating' is simply not enough to give rise to any reasonable inference of a hostile work environment based on sex."); *see also Czerwinski v. New York State Dep't of Corr. & Cmty. Supervision*, 394 F. Supp. 3d 210, 220 (N.D.N.Y. 2019) (dismissing Title VII claims on grounds that the complaint lacked sufficient factual allegations to show a link between conduct and a protected characteristic).

As to the second investigation, Plaintiff alleges that a subordinate submitted a complaint, which was investigated by Employee Relations. (*Id.* ¶¶ 119-127). Plaintiff has made absolutely no allegation that any Defendant engaged in sex-based discrimination in connection with this investigation. Absent any allegation—beyond conclusory statements—"that the conduct is caused at least in part by discriminatory motive," Plaintiff's claims arising out of the second investigation also fail. *Shein v. New York City Dep't of Educ.*, No. 15 cv 4236 (DLC), 2016 WL 676458, at *9 (S.D.N.Y. Feb. 18, 2016) (dismissing plaintiff's Title VII and NYCHRL discrimination claims, which lacked allegations to support discriminatory motive).

## C.   Plaintiff Has Not Pled A Plausible Claim Of Pay Discrimination.

Unlike the Equal Pay Act (which imposes strict liability where the plaintiff receives unequal pay for equal work), a plaintiff suing under Title VII and the NYSHRL (as well as the NYCHRL) must prove discriminatory animus. *Lenzi*, 944 F.3d at 109.

Plaintiff's disparate pay claims are deficient under the NYSHRL and NYCHRL because her claims rest on the same allegations as her EPA claims – *i.e.*, that she was paid less than nine (9) men in entirely different jobs. It is axiomatic that an essential element of a disparate treatment claim is that the plaintiff was similarly situated to the alleged comparators. *Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d 419, 428 (S.D.N.Y. 2010) ("While it is true that the responsibilities and duties of

similarly situated employees need not be identical, they must be similar in all material respects");

*Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 499 (E.D.N.Y. 2019); *Pena v. Bd. of Elections*, No. 16-CV-427 (VEC) (BCM), 2017 WL 722505, at *10 (S.D.N.Y. Feb. 6, 2017), *report and recommendation adopted*, 2017 WL 713561 (S.D.N.Y. Feb. 22, 2017). Because Plaintiff failed to allege sufficient facts that she was similarly situated to her identified comparators (who, as noted, had different responsibilities in different departments from Plaintiff as well as one another), she has failed to plead a plausible claim of pay discrimination under the NYSHRL or NYCHRL. *See Mauze,* 340 F. Supp. at 205-207, 209 (dismissing NYSHRL and NYCHRL claims because the plaintiff with greater responsibilities than her comparators failed to establish that her job was similarly situated to her comparators); *see also Eng*, 715 F. App'x at 52 (denying pay discrimination claims brought under the NYSHRL and NYCHRL because plaintiff merely alleged "that she is a 58-year old woman who is paid less than a 57-year old man, a 54-year old man, and a 41-year old woman" and did not supply any allegations suggesting discriminatory animus, noting "we cannot infer discrimination from thin air"); *see also Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 645 (W.D.N.Y. 2014) (dismissing NYSHRL claim, holding that "to withstand a motion to dismiss, the plaintiff must allege how her position and the comparison positions were substantially similar"); *see also Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 244 (S.D.N.Y. 2001).

### D.    Plaintiff Has Not Alleged Facts To Show That She Was Terminated Because Of Her Gender.

Plaintiff has alleged no facts to link her May 2019 termination to unlawful discriminatory animus. Plaintiff simply alleges that eight business days after Khalaf was promoted to CEO, she was "unceremoniously terminated without notice." (Am. Compl., ¶ 148). Because she does not allege any fact from which could give rise to a reasonable inference of discriminatory animus, her

claims of unlawful termination should be dismissed. *Shein,* 2016 WL 676458, at *5.[10] (In order

for disparate treatment claim to survive pleading stage, plaintiff must "give plausible support to a

minimal inference of discriminatory motivation.")

> **E.      Plaintiff Has Not Pled a Plausible Claim Of Discriminatory Failure To Promote.**

In order to state a "failure to promote" claim asserted under NYSHRL, Plaintiff must

plausibly allege facts to show that she was qualified for the position she sought, but was denied

due to her gender. *Taylor v. City of New York*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016). Under

the NYCHRL, Plaintiff must show that she was treated "less well than other employees because

of her gender." *Id.* at 306.

For the same reasons discussed at length above, Plaintiff has pled no facts to show an

inference of discrimination on the basis of her gender. Plaintiff alleges that in February 2018, she

learned that her request for promotion was denied by Podlogar because Plaintiff was "too mean,

condescending, and shouts." (Am. Compl., ¶¶ 96-98). As discussed above, these comments do not

imply unlawful discrimination on the basis of Plaintiff's gender. At best, they describe the type of

"personality conflicts and disagreements with the management's style" that courts do not find

actionable. *Grovesteen*, 83 A.D.3d at 1334. Further, she has not shown that she was treated "less

well" than other employees because of her gender to properly assert a claim under NYCHRL.

*Taylor*, 207 F. Supp. 3d at 303 (dismissing NYCHRL claim because the plaintiff failed to raise a

plausible claim that she was treated less well on account of her sex). Plaintiff's assertions, without

---

[10] Plaintiff asserts that Kandarian's Chief of Staff, Michael Zarcone, lost his Chief of Staff role when Kandarian left and that a portion of her former job responsibilities—her "real estate responsibilities" were delegated to Zarcone to "ensure that Zarcone had enough work to do." (Am. Compl., ¶ 152). She does not allege that these were his only duties or that she was terminated so that he could replace her. This allegation, without more, cannot give rise to any inference of discriminatory animus. *Shein*, 2016 WL 676458, at *3 (Jewish plaintiff's allegations that Christian colleagues were treated more favorably than her during investigations into their job performance was insufficient to state a claim for disparate treatment, as the plaintiff failed to allege sufficient facts to show that they were similarly situated.)

more, are insufficient to state a claim for failure to promote.

**IV.    The Court Should Dismiss The Third Claim (NYSHRL Retaliation) And Fifth Claim (NYCHRL Retaliation) Because The Complaint Does Not Allege Facts Sufficient To Establish A Causal Link Between Protected Activity And Adverse Action.**

    **A.    Standard of Law.**

A *prima facie* claim for retaliation under the NYSHRL requires a showing that: (i) the plaintiff engaged in protected activity; (ii) the defendants knew of that protected activity; (iii) the defendant took adverse employment action against the plaintiff; and (iv) there is a causal connection between the protected activity and the adverse action. *Gordon v. City of New York*, No. 14-cv-6115 (JPO), 2015 WL 3473500, at *11 (S.D.N.Y. June 2, 2015). Thus, to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (describing protected activity in the context of a Title VII case); *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1011-12 (N.Y. 2004).

An employee engages in "[p]rotected activity" when she "oppos[es] or complain[s] about unlawful discrimination." *Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013) (citing to *Forrest*, 819 N.E.2d at 1012). An adverse employment action under the NYSHRL in the retaliation context constitutes a "materially adverse change in the terms and conditions of employment" that would dissuade the plaintiff from making or supporting a charge of discrimination. *Erasmus*, 2015 WL 7736554, at *11 (citations omitted) (Title VII claim).

The elements of a *prima facie* case of retaliation under the NYCHRL are identical to the NYSHRL, "except that the plaintiff need not prove any 'adverse' employment action; instead, [s]he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51,

70 (S.D.N.Y. 2016) (citation omitted).

To survive a motion to dismiss under the NYSHRL, Plaintiff must "plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Avery v. DiFiore*, No. 18-cv-9150, 2019 WL 3564570, at *3, 5 (S.D.N.Y. Aug. 6, 2019). A "causal connection" is sufficiently alleged if plaintiff asserts "(1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *McNair v. NYC Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. Apr. 9, 2001) (citing *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.1987)). Under the NYCHRL Plaintiff must plead a causal link between a discriminatory practice and an adverse action. *Romanello v. Intesa Sanpaola S.p.A.*, 97 A.D.3d 449, 454 (1st Dep't 2012) (modified on other grounds).

### B.   The Amended Complaint Fails To Plead A Plausible Claim Of Retaliation.

For the reasons discussed above, Plaintiff's allegations directed at Khalaf (*i.e.*, that he "bypassed" her by speaking directly to members of her team and did not invite her to a meeting) and Kandarian (that he "would not speak to" or "acknowledge" her in meetings or when passing her in the office) are not sufficient to state a claim for retaliation. *Whipple v. Reed Eye Assocs.*, 213 F. Supp. 3d 492, 496 (W.D.N.Y. 2016) (rejecting NYSHRL retaliation claim based on plaintiff's assertion that supervisor refused to work with her, as it did not constitute an "adverse employment action"); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 847, 851 n.25 (S.D.N.Y. 2013) (holding that the assertion that plaintiff "was completely ostracized by senior management" and ignored in hallways in retaliation for filing a charge of discrimination amounted to nothing more than "petty slights, minor annoyances, and simple lack of good manners," and was not actionable). Therefore, even if Plaintiff sufficiently alleged a link between these alleged actions and any protected activity (which she cannot), she could not state a plausible claim for relief.

Plaintiff's other retaliation claims also fail. Assuming, *arguendo*, that Moazzaz engaged in protected activity in her November 19, 2017 email complaint to Lippert about not having been promoted (Am. Compl., ¶ 96), her discussion with Tate-Gowins on June 19, 2018 (*id.* ¶¶ 120-127), and/or her complaints to Hediger in 2018 related to diversity (*id.* ¶ 121), she has not alleged any facts, which plausibly suggest that such complaints are linked to actionable retaliation.

First, the Amended Complaint is devoid of any facts which plausibly suggest direct proof of retaliatory animus. *See Shah v. N.Y. State Office of Mental Health,* 523 Fed. App'x 828, 831 (2d Cir.2013) (dismissing retaliation claim under Title VII because the complaint "plead [ed] no facts from which [the court] could plausibly infer that [the defendant's] refusal to rehire [the plaintiff] result[ed] from any ... retaliatory motive); *see also Wang v. Palmisano*, 51 F.Supp.3d 521, 539 (S.D.N.Y. Sep. 30, 2014) (dismissing FLSA retaliation claim that states no more than "the-defendant-unlawfully-harmed-me accusation" without any facts related to retaliatory motive).

Moreover, there is no temporal proximity between Plaintiff's alleged protected activity and her termination in May 2019. Plaintiff was terminated eighteen months after her November 2017 email to Lippert, and nearly one year after her alleged comments to Tate-Gowins and Hediger in 2018. This length of time between complaint and action precludes any finding of a causal connection. *See Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 450 (S.D.N.Y. 2013) ("in this circuit, '[c]laims of retaliation are routinely dismissed when as few as three months elapse between the protected [ ] activity and the alleged act of retaliation.'") (citing *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y.1999)); *Parada v. Banco Indus. de Venezuela, C.A.*, No. 10-cv-883 (SHS), 2011 WL 519295, at *8 (S.D.N.Y. Feb. 15, 2011) (vacated in part on other grounds). These events are far too remote in time from the termination decision to establish a causal connection.

Although Moazzaz complains that she was told that she would not be promoted three

months after her November 2017 email to Lippert, this aspect of her claim also fails because the facts pled do not give rise to an inference of a causal connection between her protected activity and the alleged retaliation. In fact, the causal connection is just the opposite. According to the Amended Complaint, Moazzaz's email to Lippert was written to complain that the failure to promote her in the prior four months (despite the additional responsibilities that had been assigned to her four months earlier) was on account of her gender. (Am. Compl., ¶ 96). In these circumstances, the fact that MetLife subsequently informed her that she was still not promoted (*id.* ¶ 97) creates no inference that the decision was motivated by retaliatory animus.

Moazzaz also contends that she was terminated in retaliation for her alleged authorship of a September 2018 "CEO candidate strategy" memo on behalf of Lippert. (Am. Compl., ¶¶ 1, 12-13, 138-142). That claim fails because the memo was not protected activity. The text quoted at paragraph 139 of the Amended Complaint did not assert that MetLife had engaged in unlawful discrimination. Rather, in the context of Lippert's campaign to become the next CEO of MetLife, the memo asserted that the Company should improve the diversity of its work force. Suggesting that an employer should work to improve diversity is not the same as opposing unlawful discrimination—and such criticism is not protected activity. In *Hood v. Pfizer, Inc.*, 322 F. App'x 124 (3d Cir. 2009), the Third Circuit affirmed the dismissal of a state law retaliation claim that had been premised on an allegation that the plaintiff had been retaliated against for having asked at a meeting "why more wasn't being done to promote diversity within [his department]." *Id.* at 131. The court concluded that "a reasonable factfinder could not conclude that [plaintiff] accused [the supervisor] of discrimination in violation of [state law]," reasoning that the statement "is worlds apart from the kinds of particularized statement targeting discrete past events that this Court has held allows an employment discrimination plaintiff's retaliation claim to survive summary

judgment." *Id.* at 131; *see also Fenner v. News Corp.*, 2013 WL 6244156, at *25 (S.D.N.Y. Dec. 2, 2013) (finding that an article that referenced a lack of diversity in the defendant's office was not protected activity—"lack of diversity alone is not actionable").

Moazzaz's claim would fail (even if the "candidate strategy" memo were considered protected activity) for two additional reasons. First, Moazzaz does not allege that Kandarian or Khalaf knew that she was the author of the document, rather she merely guesses that Kandarian "would have known," because she had previously "prepared many strategies" (Am. Compl., ¶ 140). Her allegation with respect to Khalaf is even more thin. She does not allege that Khalaf knew or would have known that she was the author of the memo, or even that he saw the memo at all. Rather she speculates only that Khalaf knew about the memo (and not its author) because of his alleged attempt to sell a business months later, which she suggests was among the recommendations in the memo. (*Id*. ¶¶ 140, 141) Finally, the memo (which was authored in September 2018) was, as discussed above, too remote in time from the termination decision to establish a causal connection.

## V.      The Claims Against The Individual Defendants Should Be Dismissed.

Plaintiff's claims against the Individual Defendants—who are alleged to have been her "employer" or to have "aided and abetted" MetLife's unlawful actions—should also be dismissed.

### A.      Governing Standard of Law for Individual Liability.

The NYSHRL "only imposes liability on an employer for an employee's discriminatory acts if the employer encouraged, condoned or approved the discriminatory conduct." *Doe v. Bloomberg, L.P.*, 178 A.D.3d 44, 47 n.2 (N.Y. App. Div. 2019). Individual liability extends to those who actually participated in the conduct giving rise to the claim. *Johnson v. Cty. of Nassau*, 82 F. Supp. 3d 533, 537 (E.D.N.Y. 2015). "[T]he Court of Appeals has clearly held that in order for an individual to be held liable as an employer pursuant to the [NYSHRL], it is not enough to

show that the individual has an ownership interest in the company or the power to do more than carry out personnel decisions made by others . . . . To the contrary, to hold an individual liable as an employer under the [NYSHRL], a plaintiff must also show that the individual encouraged, condoned or approved the alleged discriminatory conduct." *Doe*, 178 A.D.3d at 48 n.3 (citing *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*, 480 N.E.2d 1075 (1985)).

The NYCHRL imposes strict liability on an "employer" for the discriminatory acts of the employer's managers and supervisors. *See* Administrative Code of City of NY § 8-107(13)(b)(1). However, "in order to hold an individual owner or officer of a corporate employer, in addition to the separately charged corporate employer, strictly liable under section 8-107(13)(b)(1) of the Administrative Code, a plaintiff must allege that the individual has an ownership interest or has the power to do more than carry out personnel decisions made by others and must allege that the individual encouraged, condoned or approved the specific conduct which gave rise to the claim." *Doe*, 178 A.D.3d at 48, *see also Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 309 (S.D.N.Y. 2015) (a plaintiff must establish "at least some minimal culpability on the part of [the company's individual shareholders]" in order to hold them liable as employers).

The NYSHRL and NYCHRL both make it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." (Exec Law § 296(6); NYC Admin. Code § 8–107(6)). In order to be liable as an aider and abettor, the individual must have "actually participate[d]" in the alleged discriminatory acts. *Forrest*, 819 N.E.2d at 1023. "It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting." *Colon v. City of New York*, No. 16-cv-4540 (VSB), 2019 WL 1315877, at *2 (S.D.N.Y. Mar. 22, 2019) (citing *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999)).

An individual cannot be liable for aiding and abetting discrimination or retaliation where plaintiff has failed to establish that the corporate employer discriminated or retaliated against him in the first instance. *See Benjamin v. Metro. Transp. Auth.*, No. 07 Civ. 3561 (DAB), 2012 WL 3188764, at \*20 (S.D.N.Y. Aug. 2, 2012); *Boonmalert*, 721 F. App'x at 34.

    **B.**    **The Amended Complaint Fails To State Claims Against The Individual Defendants.**

The Amended Complaint alleges that MetLife announced on January 8, 2019 that Khalaf would become CEO effective May 1, 2019. (Am. Compl., ¶ 14). Plaintiff alleges that Khalaf "regularly bypassed" Plaintiff by reaching out directly to members of her team and that he hosted a corporate strategy session in February 2019 without inviting her. (*Id*. ¶¶ 16, 146, 147). Plaintiff also alleges that Khalaf "impacted" her compensation by participating in talent review meetings that affected her compensation and that he was aware (before he was named CEO) of the negative comments about her and the failure to promote her. (*Id*. ¶¶ 49, 102).

For the reasons discussed above, Plaintiff's allegations cannot support any claim against Khalaf individually. The Amended Complaint does not allege that he encouraged, condoned or approved anyone else's discriminatory or retaliatory conduct. Khalaf's mere presence at certain meetings and his supposed general awareness that Moazzaz hoped to (but did not) receive a promotion) is not sufficient to impose individual liability. *Drew v. Plaza Const. Corp.*, 688 F. Supp. 2d 270, 280 (S.D.N.Y. 2010). Plaintiff has thus failed to plead a plausible claim against Khalaf as either an "employer" or "aider and abettor." *Forrest*, 819 N.E.2d at 1023-24.

The same is true with respect to the claims against Kandarian. Moazzaz alleges only that Kandarian was told that she could bring a lawsuit and took no remedial action, and that Kandarian later would not speak to or acknowledge her because of what was contained in Lippert's CEO strategy memo. As there are no allegations that Kandarian himself engaged in any actionable

conduct, or that he encouraged, condoned or approved such conduct, the claims against him must be dismissed. Plaintiff's summary assertion that Khalaf and Kandarian may have had some unspecified role setting her compensation does not, absent more, suggest that either encouraged, condoned or approved the specific discriminatory conduct which gave rise to the claim. *Johnson*, 82 F. Supp. 3d at 537.

Plaintiff's' "aider and abettor" claims against the remaining individual defendants should also be dismissed. The allegations concerning comments supposedly made by Hediger and Hijkoop in 2014 and 2015, respectively (Am. Compl., ¶¶ 6, 86, 91-93, 117-118, 125) are time-barred. The remaining allegations (that Hediger began referring to Moazzaz in 2018 as "the little one" (*id*. ¶¶ 6, 113) and that Hijkoop stated (at some uncertain point in time) that she had "sharp elbows" (*id*. ¶¶ 6, 94) are insufficient to state a claim of relief. Again, there are no allegations that either Hijkoop or Hediger encouraged, condoned or approved anyone else's unlawful conduct.

Finally, the aider and abettor claim asserted against Podlogar must also be dismissed. Assuming, *arguendo*, that the Amended Complaint asserts that Podlogar discriminated against Moazzaz by denying her request for a promotion, the claim fails for the simple reason that it fails to plead facts that would create a reasonable inference that Podlogar's actions were motivated by discriminatory or retaliatory animus.

<u>**CONCLUSION**</u>

Defendants respectfully request that the Amended Complaint be dismissed in its entirety.

Respectfully submitted,

PROSKAUER ROSE LLP

*/s/  Joseph Baumgarten*
Joseph Baumgarten
Joseph C. O'Keefe