UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MONA MOAZZAZ, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| - against - | : | |
| | : | No. 19-cv-10531 (JPO)(OTW) |
| METLIF, INC.; MICHEL KHALAF, in his | : | |
| individual and professional capacities; STEVEN | : | **ECF CASE** |
| KANDARIAN, in his individual and professional | : | |
| capacities; FRANS HIJKOOP, in his individual | : | |
| and professional capacities; SUSAN | : | |
| PODLOGAR, in her individual and professional | : | |
| capacities; and GARY HEDIGER, in his | : | |
| individual and professional capacities; | | |
| | | |
| Defendants. | | |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

PROSKAUER ROSE LLP

Joseph Baumgarten
Joseph C. O'Keefe
Eleven Times Square
New York, NY 10036-8299
(T) 212-969-3000
(F) 212-969-2900
jbaumgarten@proskauer.com
jokeefe@proskauer.com
*Attorneys for Defendants*

Dated:  May 8, 2020
New York, New York

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................1

I.      Plaintiff's Pay Claims Fail Because She Has Not Alleged A Comparator With A "Substantially Equal" Job. ........................................................................................1

II.     Plaintiff Has Not Pled A Hostile Work Environment Claim. ...............................................3

III.    Plaintiff's Failure To Promote And Termination Claims Should Be Dismissed.................5

        A.      The AC Does Not Plead Facts To Support A Claim Of Discrimination. ...............5

        B.      The AC Does Not Plead A Plausible Claim Of Retaliation....................................7

IV.     The Claims Against The Individual Defendants Should Be Dismissed. .............................8

CONCLUSION.........................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Ardigo v. J. Christopher Capital, LLC*,
   No. 12-civ-3627 (JMF), 2013 WL 1195117 (S.D.N.Y. Mar. 25, 2013)...................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................2

*Baez v. State of New York*,
   56 F. Supp. 3d 456 (S.D.N.Y 2014), aff'd, 629 Fed. App'x 116 (2d Cir. 2015).......................7

*Chiaramonte v. Center*,
   No. 13 Civ. 5117, 2016 WL 299026 (S.D.N.Y. Jan. 22, 2016)...............................3

*DeVito v. Valley Stream Central High School Dist.*,
   No. 09–CV–0287 (JS) (ARL), 2011 WL 3471552 (E.D.N.Y. Aug. 3, 2011) ..........................5

*Edwards v Khalil*,
   No. 12 Civ. 8442 (JCM), 2016 WL 1312149 (S.D.N.Y. 2016)...............................8

*EEOC v. Port Auth. of New York and New Jersey*,
   768 F.3d 247 (2d Cir. 2014)...............................................................................................2

*EEOC v. Suffolk Laundry Servs., Inc.*,
   48 F. Supp. 3d 497 (E.D.N.Y. 2014) ......................................................................8

*Fatturuso v. Hilton Grand Vacations Co., LLC*,
   873 F. Supp. 2d 569 (S.D.N.Y. 2012).................................................................................2

*Fitzgerald v. Henderson*,
   251 F.3d 345 (2d Cir. 2001).................................................................................4

*Hagan v. City of New York*,
   39 F. Supp. 3d 481 (S.D.N.Y. 2014).................................................................................8

*Hogan v. Hayden*,
   406 F. Supp. 3d 32 (D.D.C. 2019) .......................................................................5

*Husser v. New York City Dep't of Educ.*,
   137 F. Supp. 3d 253 (E.D.N.Y. 2015) ................................................................................2

*Jamilik v. Yale Univ.*,
   362 F. App'x 148 (2d Cir. 2009) .........................................................................3

*Johnson v. Long Island Univ.*,
 58 F. Supp. 3d 211 (E.D.N.Y. 2014) ...........................................................................4

*Kairam v. W. Side GI, LLC*,
 793 F. App'x 23 (2d Cir. 2019) ...................................................................................2

*Kob v. Cty of Marin*,
 No. C 07-2211 JL, 2009 WL 10680775 (N.D. Cal. Nov. 25, 2009), aff'd 425
 Fed. App'x 634 (9th Cir. 2011) ...................................................................................5

*Kunik v. New York City Dep't of Educ.*,
 No. 15 Civ. 9512 (VSB), 2017 WL 4358764 (S.D.N.Y. Sept. 29, 2017)...................1

*Lawtone-Bowles v. City of New York*,
 No. 17cv8024, 2019 WL 652593 (S.D.N.Y. Feb. 15, 2019) ....................................10

*Leibovitz v. N.Y.C. Transit Auth.*,
 252 F.3d 179 (2d Cir. 2001) ........................................................................................4

*Lenart v. Coach Inc.*,
 131 F. Supp. 3d 61 (S.D.N.Y. 2015) (JMF)..................................................................5

*Lenzi v. Systemax, Inc.*,
 944 F.3d 97 (2d Cir. 2019)............................................................................................3

*Lewis v. Triborough Bridge and Tunnel Auth.*,
 77 F. Supp.2d 376 (S.D.N.Y. 1999).............................................................................8

*Magnotti v. Crossroads Healthcare Mgt.*,
 No. 14-CV-6679 (ILG) (RML), 2016 WL 3080801 (E.D.N.Y. 2016)........................8

*Price Waterhouse v. Hopkins*,
 490 U.S. 228 (1989)......................................................................................................4

*Servello v. New York Office of Children & Family Servs.*,
 No. 118CV0777LEKDJS, 2019 WL 974972, at *5 (N.D.N.Y. (Feb. 27, 2018).......3

*Weinstock v. Columbia Univ.*,
 224 F.3d 33 (2d Cir. 2000)............................................................................................5

*Yeger v. Inst. of Culinary Educ., Inc.*,
 No. 14cv8202-LTS, 2017 WL 377936 (S.D.N.Y. Jan. 25, 2017) ...........................10

## STATE CASES

*Doe v. Bloomberg, L.P.*,
 178 A.D.3d 44 (1st Dept. 2019)....................................................................................8

## PRELIMINARY STATEMENT

Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp."; Dkt. 29) is a second failed attempt to state claims for relief.  The Opposition embellishes the Amended Complaint ("AC") in attempting to mask its deficiencies and doubles down on the facially nonsensical assertion that she and eight comparators referred to in her equal pay claims "all performed similar functions" (Opp. at p. 8) -- when the AC itself makes clear they all performed vastly different functions.  The Opposition continues to rely on time-barred alleged statements to support her hostile environment claim (because there is little else to support it) and spends little time discussing her failure to promote and termination claims – because the AC itself says little to support those claims.  Moazzaz's self-congratulatory AC simply fails to allege facts that support her discrimination and retaliation claims and should be dismissed with prejudice.[1]

## ARGUMENT

### I.    Plaintiff's Pay Claims Fail Because She Has Not Alleged A Comparator With A "Substantially Equal" Job.

Of necessity, Moazzaz's Opposition says very little about Greg Baxter's job -- because the AC itself says almost nothing about it.  She asserts only that she served as an *interim* Global Head of Digital Strategy from 2014 to 2017 and that Baxter was hired as the Global Head of Digital Strategy in 2017. (AC, ¶¶ 39, 52). There are no allegations related to Baxter's skill set or experience, or his duties and responsibilities, and thus no basis to assert that Moazzaz (in her interim role before Baxter's hire) and Baxter performed jobs that were substantially equal.[2]

---

[1] The Opposition relies heavily on the liberal pleading rules applicable to a motion to dismiss.  However, the latitude provided by notice pleading has limits.  "'In the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted.'"  *Kunik v. New York City Dep't of Educ.*, No. 15 Civ. 9512 (VSB), 2017 WL 4358764, at *4 (S.D.N.Y. Sept. 29, 2017) (citation omitted).

[2] As discussed in Defendants' Motion to Dismiss the Amended Complaint ("Motion"; Dkt. 26) (at pp. 7-8), allegations that the plaintiff and a comparator share the same job title are insufficient under the federal and state EPA statutes.

Moazzaz's Opposition mischaracterizes the allegations regarding the other eight comparators.  The AC alleges that Moazzaz interacted with those individuals, provided them with information and data, and reported on the progress of certain projects.  Because that is not enough, Moazzaz's Opposition transforms those allegations into repeated assertions that she and the comparators were "both responsible" for these functions (Opp. at p. 8) – and then sums up with the absurd claim that she and they "all performed similar functions," (*id.*), when in fact the functions were vastly different, as the AC itself makes clear.[3]

Moazzaz's EPA claim fails not simply because she has failed to allege sufficient facts; it fails because of the facts that she <u>has</u> pled.[4]  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Moazzaz asks the Court to proceed with a claim whose essential premise is that she simultaneously shared equal responsibility with eight other employees – *each of whom had his own full-time job* – managing disparate functions on different continents.  There is nothing about this claim that is consistent with common sense.  To the contrary, Moazzaz has cast her net so wide that her overly ambitious claim falls of its own weight.  The Court need not wait until summary judgment (and allow wasteful discovery in the meantime concerning the duties and responsibilities of multiple alleged comparators) in the face of a complaint that is manifestly implausible.

Plaintiff's reliance on *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253 (E.D.N.Y. 2015), is curious.  The court there acknowledged that jobs that are "merely comparable"

---

*See Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 26 (2d Cir. 2019); *see also EEOC v. Port Auth. of New York and New Jersey*, 768 F.3d 247, 256 (2d Cir. 2014).

[3] The AC alleges that the comparators all had substantially *different* responsibilities from Moazzaz and from each other for the obvious reason that they dealt with vastly different functions:  information technology; operations; mergers and acquisitions; marketing; investor relations and compliance.

[4] *See Fatturuso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012) (dismissing claim undercut by the plaintiff's own allegations).

do not meet the standard and that "some overlap in the requirements of the two jobs" is not sufficient. *Id*. at 267.[5]   The court noted that the plaintiff could "point to the fact that she and the other directors all have the same title; they all work for the same division; they all shared common supervision for much of the time at issue . . .; they all have specialized skills and experience; they all handle regulatory compliance for their respective components; and they all make decisions that affect [the defendant] as a whole." *Id*. at 269.[6]   By contrast, although the comparators here had (vastly different) skills[7], the AC does not contain any other similar allegations.[8]

Moazzaz's pay discrimination claims under the NYSHRL and NYCHRL also fail. A plaintiff asserting such a claim is not confined to proving discrimination by evidence of disparate treatment vis-à-vis a comparator; however, the plaintiff must allege facts that would permit an inference of discriminatory animus. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 111-12 (2d Cir. 2019). Moazzaz seizes on this distinction, but then provides no basis for an inference that her pay was infected by discriminatory animus other than the same assertion that animates her EPA claim, *i.e.*, that she was paid less than the comparators.   As those individuals were not similarly situated to her, her state and city claims fail for the same reason as her EPA and NYEPA claims.

## II.   Plaintiff Has Not Pled A Hostile Work Environment Claim.

Moazzaz concedes (if only indirectly) that allegations of statements and conduct that occurred outside the limitations period are not actionable.   She nevertheless asserts that untimely

---

[5] *See also Servello v. New York Office of Children & Family Servs.*, No. 118CV0777LEKDJS, 2019 WL 974972, at *5 (N.D.N.Y. (Feb. 27, 2018) (citing *Chepak v. N.Y.C. Health & Hosps. Corp.*, No. 11-cv-9698, 2015 WL 509279, at *11 (S.D.N.Y. Feb. 5, 2015); *Chiaramonte v. Center*, No. 13 Civ. 5117, 2016 WL 299026, at *14 (S.D.N.Y. Jan. 22, 2016).
[6] Plaintiff's reliance on *Jamilik v. Yale Univ.*, 362 F. App'x 148 (2d Cir. 2009), is also misplaced.   The plaintiff there alleged that she and a male comparator "held the same grade, rank, and title at the time he was promoted" and that "the two positions shared similar budgeting and payment responsibilities."   *Id*. at 150.
[7] Moazzaz, on the other hand, does not allege that she had any specialized skills or experience.
[8] Plaintiff's Opposition asserts (at p. 9) that the AC alleges that Moazzaz and her comparators had "similar (or identical)" reporting lines.   However, there is no such allegation in the AC.

3

allegations are admissible as background evidence  (Opp. at p. 11) and goes on (at pp. 12-13) to list a variety of alleged actions that occurred more than three years before this action was filed that created a hostile environment, including Hediger's supposed reference to her as a "bitch" in 2014 (AC, ¶ 86); Hijkoop's supposed comment in 2015 that she should be "nicer" and "more like the woman he had researched on the internet" (*id.,* ¶¶ 92, 93); and Hijkoop's alleged comment at a diversity conference in 2014 that women "are too emotional" (*id.*, ¶ 118).  Assuming, *arguendo*, that these time-barred allegations may be admissible at a trial of timely claims, the Court should nevertheless dismiss the claims premised on these allegations.  *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001); *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 219 (E.D.N.Y. 2014).

Plaintiff's remaining allegations do not state a plausible claim.  Even assuming that Moazzaz's failure to promote and termination claims were viable, those claims relate to discrete acts and have nothing to do with an alleged hostile environment.  The fact that Moazzaz was criticized for having sharp elbows in a meeting that she herself did not attend, and that other women were also allegedly criticized outside her presence, also does not establish that she was subjected to a hostile work environment.  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001). Nor does the fact that MetLife investigated multiple complaints about Moazzaz made by subordinates suggest either discriminatory animus or establish a hostile environment.

Moazzaz's persistent invocation of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), for the proposition that the criticisms of her for being "too tough" and having "sharp elbows" reflect "gender stereotypes" misses the mark.  The plaintiff in *Hopkins* had been told to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry" and male employees had said they would not be comfortable with her as a partner because she did not act the way they believed a woman should.  *Id*. at 236.  "These statements

4

were a clear indication that Hopkins' superiors had discriminated against her on the basis of sex, because she did not fit the sexual stereotype of what a woman should be." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 44 (2d Cir. 2000). As the court recognized in *Weinstock*, in the absence of evidence of sexual stereotyping, the use of adjectives to describe someone as "nice" or "nurturing" (as in *Weinstock*) do not evince gender discrimination. *Id*. Likewise, criticisms of an employee because she is "too mean, condescending and shouts" (AC, ¶ 98) are also gender neutral.[9]

A claim of hostile environment under the NYSHRL requires "behavior so extraordinarily severe [that it] altered the conditions of [her] working environment." *See Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (JMF) (citation omitted). Although the "less well" standard under the NYCHRL is more lenient, both statutes require a showing of a hostile environment based on discriminatory animus and exclude behavior that "'could only be reasonably interpreted by a trier of fact as representing no more than petty slights and trivial inconveniences.'" *Ardigo v. J. Christopher Capital, LLC*, No. 12-civ-3627 (JMF), 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (*citing to Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 80 (2009)). These requirements mandate dismissal of Moazzaz's claims.

## III.    Plaintiff's Failure To Promote And Termination Claims Should Be Dismissed.

### A.    The AC Does Not Plead Facts To Support A Claim Of Discrimination.

Moazzaz's Opposition gives scant attention to her claim that MetLife failed to promote her because of her gender. Again, this is not surprising because the AC itself provides virtually no support for the claim that she was not promoted in 2017 due to discriminatory animus. The

---

[9] *See Kob v. Cty of Marin*, No. C 07-2211 JL, 2009 WL 10680775, at *8 (N.D. Cal. Nov. 25, 2009), aff'd 425 Fed. App'x 634 (9th Cir. 2011) (adjectives "emotional," "irrational," "abrasive," "difficult," "confrontational" and "divisive" are "not particular to women and can just as easily describe a man"); *see also Hogan v. Hayden*, 406 F. Supp. 3d 32, 49-51 (D.D.C. 2019); *DeVito v. Valley Stream Central High School Dist.*, No. 09–CV–0287(JS) (ARL).2011 WL 3471552, at *3 (E.D.N.Y. Aug. 3, 2011).

Opposition relies principally on comments attributed to Susan Podlogar[10] that Moazzaz "would not be promoted because she was 'too mean, condescending and shouts,' and needed to be 'nicer.'" (Opp. at p. 18, citing ¶¶ 96-99).   However, there are no allegations to suggest that Podlogar's alleged use of those terms reflected gender stereotyping.   Moreover, there are no allegations to indicate that the conduct for which Moazzaz was criticized was tolerated in men.

Moazzaz's Opposition also asserts "that comparator Michael Zarcone was promoted to the Executive Vice President position that Ms. Moazzaz was denied."  (Opp. at p. 18, citing ¶ 152) That, however, is <u>not</u> what the AC alleges.  Rather, the AC alleges that Zarcone held a different position – Chief of Staff to CEO – which carried with it the title of Executive Vice President. (AC, ¶ 152). There is no allegation that Zarcone was promoted, and certainly no allegation that he was promoted to a position that was denied to Moazzaz.

Moazzaz's Opposition also touches lightly on the claim that she was terminated on account of her gender.  Again, this is a function of the paucity of allegations concerning her termination in the AC, which says little other than that she was terminated shortly after Khalaf became the CEO. Presumably, this allegation is intended to imply that Khalaf was responsible for the termination. However, there are no allegations that would tend to show discriminatory animus on his part.

The contention that "ample facts" support Moazzaz's claim (Opp. at p. 17) is empty rhetoric.  Moazzaz's EPA allegations are not supported by any showing of intent to discriminate (which is irrelevant to an EPA claim), but reflect only her (deficient) claim that she was paid less than men performing equal work; Hediger's alleged 2014 remark is unconnected to any adverse action; Hijkoop had already left MetLife long before Moazzaz was terminated; and there are no

---

[10] As noted in the AC, Hijkoop is MetLife's former Chief Human Resources Officer and Podlogar is the current CHRO.  (AC, ¶¶ 28, 29)  Although the AC does not state when Hijkoop left MetLife, it is apparent from the allegations that he had been replaced by Podlogar by 2017.  Hijkoop's alleged discriminatory comments in 2014 and 2015 are thus irrelevant to Moazzaz's failure to promote (in 2017 and 2018) and termination (in 2019) claims.

material allegations regarding the conduct of Podlogar, Kandarian or Khalaf that would support an inference of discrimination.  As there are no allegations that Moazzaz was terminated under circumstances giving rise to an inference of discriminatory intent, her termination claim must be dismissed.  *Baez v. State of New York*, 56 F. Supp. 3d 456 (S.D.N.Y. 2014), aff'd, 629 Fed. App'x 116 (2d Cir. 2015).

  **B.**  **The AC Does Not Plead A Plausible Claim Of Retaliation.**

  Plaintiff's Opposition asserts that Moazzaz "was denied a promotion" in early 2018, three months after she complained to her manager about discrimination.  (Opp. at p. 20)  However, her attempt to establish a causal connection misconstrues the sequence of events as they were laid out in her own pleading.  The complaint (in November 2017) that Moazzaz claims resulted in her not being promoted was <u>itself</u> a complaint that she had not been promoted from Senior Vice President ("SVP") after having received additional responsibilities (in July 2017).  (AC, ¶¶ 95, 96)  In these circumstances, the fact that Moazzaz was "still" not promoted, and remained an SVP, three months later is insufficient to establish an inference of retaliation.

  The AC also fails to draw a causal connection between protected activity by Moazzaz and her termination in May 2019.  The AC does not plausibly allege that either Kandarian or Khalaf knew about her complaints made directly to Tracey Tate-Gowins or Hediger a year earlier or, for that matter, any facts to connect those complaints with her termination a year later.  As for the references to diversity in the "candidate strategy" document she drafted for Lippert, there is no basis for an inference that either Kandarian or Khalaf knew that she had written it (or that Khalaf, who was the other candidate for the CEO job, ever even saw the document). The document itself

contained no complaint about discrimination or any particular employment practice, but rather made general references to the desire to increase diversity.  As such, it was not protected activity.[11]

## IV.    The Claims Against The Individual Defendants Should Be Dismissed.

Plaintiff's Opposition acknowledges that an individual must have actually participated in the discriminatory conduct (or aided and abetted it) to be held liable.  (Opp. at p. 24).  However, the cases relied upon are inapposite and the facts alleged in the AC do not state a claim.

In *Magnotti v. Crossroads Healthcare Mgt.*, No. 14-CV-6679 (ILG) (RML), 2016 WL 3080801 (E.D.N.Y. 2016), a disability discrimination case, the defendant "was [plaintiff's] direct supervisor, knew about [plaintiff's] condition, received updates about his recovery, and was included in various correspondence regarding his employment.  Significantly, he participated in the conversation notifying [plaintiff] about the decision to reduce his hours." *Id*. at *3.  There are no such allegations here about the individual defendants – none of whom were her direct supervisor.  In *Lewis v. Triborough Bridge and Tunnel Auth.*, 77 F. Supp. 2d 376 (S.D.N.Y. 1999), the plaintiffs alleged "that their supervisor intentionally or recklessly disregarded their repeated complaints and *have pleaded facts that give rise to an inference of discriminatory intent*." *Id*. at 384 (emphasis added).  Unlike here, the complaint alleged that the plaintiffs had complained directly to the supervisor, who had belittled and insulted them.[12]  In *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497 (E.D.N.Y. 2014), the court held that the individuals were subject to potential liability because they were the owners of the employer.  There is no such allegation

---

[11] *See* Motion at pp. 21-22 (citing *Hood v. Pfizer, Inc.*, 322 F. App'x 124, 131 (3d Cir. 2009); *Fenner v. News Corp.*, No. 09 Civ. 09832 LGS, 2013 WL 6244156, at *25 (S.D.N.Y. Dec. 2, 2013)).

[12] While a failure to take action to correct unlawful conduct may give rise to individual liability, there must be allegations that the individual was motivated by discriminatory animus.  *See Hagan v. City of New York*, 39 F. Supp. 3d 481, 515 (S.D.N.Y. 2014) (dismissing discrimination claim against an individual [Handy] who was alleged to have failed to take action); *see also Edwards v Khalil*, No. 12 Civ. 8442 (JCM), 2016 WL 1312149, at *24 (S.D.N.Y. 2016) ("[a] plaintiff must also show that the aider and abettor acted with discriminatory intent") (citations omitted).

here and the premise of the court's decision (that an owner can be held liable without participating in unlawful conduct) is not the law.  *See Doe v. Bloomberg, L.P.*, 178 A.D.3d 44 (1st Dept. 2019).

Moazzaz's Opposition asserts that an inference should be drawn that Khalaf participated in the decision to terminate her (based on the fact that she was terminated shortly after he assumed the role of CEO).[13]  Even if that were true, there are no allegations that support an inference of discriminatory animus on his part.  The fact that Khalaf (as CEO) communicated directly with her subordinates and did not invite her to a particular meeting is too thin a reed to infer discriminatory animus.  Moreover, there is no allegation that Khalaf "receiv[ed] her protected complaints." (Opp. at p. 24).  The AC speculates that Khalaf saw the candidate strategy document that she had prepared for Lippert -- which did not contain her name and in any event was not a complaint of discrimination.  There is no allegation whatever that he received her prior alleged complaints.

The allegations are equally thin with respect to MetLife's former CEO, Steven Kandarian. Although the AC asserts (in ¶ 49) that Kandarian (as well as Podlogar, Hijkoop and Hediger) determined Moazzaz's compensation, there is no allegation that he took any action regarding her (much less an allegation that he was influenced by discriminatory animus), or that he played any role at all with respect to decisions regarding her promotion or termination.  The only allegations of any kind regarding his involvement with Moazzaz is the assertion that Kandarian was supposedly "advised" in 2017 that MetLife "would be asking for a lawsuit" if "the situation" was not resolved" (AC, ¶ 103) and that Kandarian would not talk to Moazzaz after seeing the candidate strategy document she authored for Lippert (a document that did not bear her name and did not

---

[13]  The AC does not allege that Khalaf was involved in promotion decisions involving Moazzaz; that he created a hostile environment; or that he participated in setting her pay.  Contrary to the Opposition, the AC does not allege that Khalaf "influenced Ms. Moazzaz's discriminatory compensation."  (Opp. at p. 24).  Paragraph 49 merely asserts that Khalaf "participat[ed] in annual talent review meetings." (AC, ¶ 49). Likewise, paragraph 102 does not allege that Khalaf "put his head in the sand," as the Opposition asserts. (*Id*, ¶ 102; Opp. at p. 24).

complain about discrimination).  (*Id*., ¶ 143).  Plaintiff cites no authority holding that an individual executive can be held liable based on such flimsy allegations.

The allegations against the remaining individual defendants also fail.  Although the AC alleges that Hijkoop did not investigate Hediger's alleged comment in 2014, and that Hijkoop himself made allegedly discriminatory comments in 2014 and 2015 (*Id*., ¶¶ 91-93, 118), Moazzaz concedes that she cannot maintain a claim on the basis of their conduct outside the statute of limitations and there are no specific allegations that either of them did anything to negatively affect her compensation.   Moreover, assuming, *arguendo*, that comments outside the statute of limitations may be used as background evidence, the alleged use of the word "bitch" attributed to Hediger (alleged to have been made in 2014, three years before Moazzaz was not promoted and five years before she was terminated) is the paradigm "stray comment,"[14] and there are no other comments attributed to Hediger that evince discriminatory or retaliatory animus.

The claims concerning Podlogar are different.  The AC alleges that Podlogar was involved in the decision not to promote Moazzaz and that she lowered Moazzaz's performance rating, resulting in a reduced bonus.  (*Id.*, ¶¶ 98, 101).  However, the AC does not plead facts to show that Podlogar was motivated by unlawful animus.  Thus, the claims against her must be dismissed.

## <u>CONCLUSION</u>

Defendants respectfully request that the AC be dismissed with prejudice.

Respectfully submitted,

PROSKAUER ROSE LLP

*/s/  Joseph Baumgarten*
Joseph Baumgarten
Joseph C. O'Keefe

---

[14] *See Lawtone-Bowles v. City of New York*, No. 17cv8024, 2019 WL 652593, at *4 (S.D.N.Y. Feb. 15, 2019) (stray remark such as "black bitch" is a "mere offensive utterance[]" and insufficient to state a hostile work environment claim under NYSHRL and NYCHRL); *see also Yeger v. Inst. of Culinary Educ., Inc.*,  No. 14cv8202-LTS, 2017 WL 377936, at *12 (S.D.N.Y. Jan. 25, 2017) (use of the word "bitch" was a stray remark).