**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Michael J. Willemin**
mwillemin@wigdorlaw.com

December 2, 2021

**VIA ECF**

The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square, Room 2101
New York, New York 10007

       Re:    <u>Moazzaz v. MetLife, Inc., *et al.*</u>; Civil Case No. 19-cv-10531 (JPO)(OTW)

Dear Judge Oetken:

We represent Plaintiff Mona Moazzaz ("Plaintiff") in connection with the above-referenced matter against Defendants MetLife, Inc. ("MetLife" or the "Company"), Michel Khalaf, Steven Kandarian, Frans Hijkoop, Susan Podlogar and Gary Hediger (collectively, "Defendants"). We write pursuant to Your Honor's Individual Rules of Practice 4(B) to request an informal conference with the Court to resolve certain issues concerning the parties' ESI protocol.[1]

**I.    FACTUAL BACKGROUND**

The crux of the parties' dispute involves the application of search terms that do not contain Ms. Moazzaz's name, or variations thereof, as a modifier (the "Non-Moazzaz Terms"). <u>See</u> Ex. A. On August 4, 2021, Defendants sent Plaintiff a letter correctly identifying the Non-Moazzaz Terms as "appear[ing] targeted to capture ESI related to internal complaints of harassment or discrimination." <u>See</u> Ex. B at p. 1. Defendants objected to the use of these terms on the grounds that, to the extent that any resultant e-mails did not mention Ms. Moazzaz directly, they would not be relevant to her claims and were, therefore, purportedly not subject to discovery. Based on their objections, Defendants refused to even run a search using the Non-Moazzaz Terms.

---

[1] As discussed in Plaintiff's October 28, 2021 motion to compel, the parties been negotiating the terms of the ESI protocol. However, because they have been unable to reach an agreement, we are forced to seek the Court's intervention. <u>See</u> Dkt. No. 57 at p. 1, n.1.



The Honorable J. Paul Oetken
December 2, 2021
Page 2

Plaintiff responded on August 12, 2021, explaining that:

> We are not going to agree to delete this, especially without a hit report demonstrating burden. Evidence of bias/animus towards others in the same protected group is clearly relevant, even in an individual disparate treatment case. Particularly in this case, which alleges EPA claims, evidence that MetLife and the individual defendants treated women worse than men and/or received complaints about their mistreatment is unquestionably relevant.

See Ex. C at p. 15.

Thereafter, on August 31, 2021, Defendants sent Plaintiff a hit report including the Non-Moazzaz Terms and stated that these terms, contained 328,128 terms.[2] See Exs. D at p. 2, E. During the parties' meet and confer discussions, Plaintiff asked Defendants if they would agree to search the e-mails using the Non-Moazzaz Terms if Plaintiff could reduce them to a manageable number. Defendants indicated that they would consider doing so. In the process of the parties' meet and confer efforts, Plaintiff agreed to entirely eliminate and/or modify terms to limit the number of potential hits and bring them down to a more manageable number in light of the needs of the case. As a direct result of the compromises offered by Plaintiff, she was able to reduce the number of hits generated by the Non-Moazzaz Terms by **almost 300,000** total hits. See Ex. F (indicating that the total number of documents were approximately 36,000, including families). Defendants claimed that the total number of hits unique to the Non-Moazzaz Terms represented too great a burden in the context of the other search terms. See Ex. G. As a threshold matter, it is no surprise that search terms that are limited to those that include Plaintiff's name would result in fewer hits than those that were not modified in such a fashion. Notably, however, Defendants have not offered any suggestions as to how to modify these terms so as to make them acceptable. Instead, Plaintiff reviewed the hit report and noticed that almost half of the hits resulted from a single term "EEO." See Ex. F. Two other terms, "girl" and "commander" also resulted in thousands of hits. See id. In an effort to reach a compromise, Plaintiff offered to remove these three terms, with the expectation that doing so would reduce the total number of hits for the Non-Moazzaz Terms by more than half. See Ex. G. Despite this fact, Defendants have refused to run the Non-Moazzaz Terms or produce responsive documents. Defendants' position is legally untenable.

---

[2] Because Defendants refused to conduct a complete deduplication in their hit reports across the different search terms and custodians until the November 15, 2021 hit report, it is impossible to determine the exact number of documents that were actually originally implicated by the Non-Moazzaz Terms. See Ex. H. The 328,128 is itself therefore a substantial overestimation of the actual number of hits generated by the Non-Moazzaz Terms.



## II.   DEFENDANTS SHOULD BE COMPELLED TO RUN THE NON-MOAZZAZ TERMS AND PRODUCE RESPONSIVE DOCUMENTS

As Defendants' August 12, 2021 letter *admitted*, the Non-Moazzaz Terms are specifically designed to implicate other complaints of gender based discrimination, harassment and retaliation. Defendants' claim that such documents are not relevant unless they specifically mention Plaintiff personally finds no support under the law.

Countless cases have held that acts of discrimination committed against individuals other than the plaintiff are probative as to whether the plaintiff was discriminated against.  See, e.g., Vuona v. Merrill Lynch & Co., Inc., No. 10 Civ. 6529 (PAE), 2011 WL 5553709, at *7 (S.D.N.Y. Nov. 15, 2011) (ordering production of documents concerning other acts of discrimination); Zubulake v. UBS Warburg LLC, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005) (other acts of discrimination probative of intent); Rifkinson v. CBS, Inc., No. 94 Civ. 7985 (KTD) (JCF), 1997 WL 634514 (S.D.N.Y. Oct. 14, 1997) (same); Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 141 (2d Cir. 1993) (referring to evidence of another act of retaliation as a "smoking gun"); Worthington v. Cnty. of Suffolk, No. 02 Civ. 723 (DLI)(ARL), 2007 WL 2115038, at *4 (E.D.N.Y. July 20, 2007) (other acts of retaliation probative of intent).

The U.S. Supreme Court has also held that evidence of other acts of discrimination can be used to prove discrimination against a plaintiff even when those acts are engaged in by individuals who did not supervise the plaintiff.  See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379 (2008).  In Mendelsohn, an age discrimination plaintiff sought to introduce evidence where five witnesses observed company mangers make remarks that denigrated older workers and instituted policies that discriminated against older workers.  Id. at 381.  None of the five witnesses worked in the same group as the plaintiff, nor did they work under the same supervisors as the plaintiff.  Id. at 382. Moreover, none of the supervisors alleged to have made these remarks or instituted these policies played any role in the adverse employment decision challenged by the plaintiff.  Id. at 380. Nevertheless, the Court held that a *per se* ban on the introduction of such evidence at trial was a reversible error.  Id. at 387.  The Court further stated that whether evidence of discrimination by other supervisors is relevant "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Id. at 388.  Critically, Mendelsohn was a decision regarding the admissibility of certain evidence at *trial*.  In contrast, we are at the discovery phase, during which a plaintiff is entitled to a broader array of documents and information than what would be admissible at a trial.

This other evidence is particularly relevant in the instant case where Plaintiff has alleged that the gender discrimination that she experienced was not an isolated incident, but, instead, part of a larger pattern of discriminatory behavior that pervaded the highest levels of management at MetLife.  See Dkt. No. 20 at ¶¶ 15-16, 51, 84, 117-118, 124-126, 130-135, 145-147.  Such conduct, even to the extent that Ms. Moazzaz did not witness it personally, is clearly relevant in a discrimination case.  See Guzman v. News Corp., No. 09 Civ. 09323 (LGS), 2013 WL 5807058, at



*16 (S.D.N.Y. Oct. 28, 2013) (plaintiff submitted evidence of racial harassment observed only by others as part of her hostile work environment claim: "[t]aken together, the first-hand and second-hand experiences and observations, as well as [p]laintiffs' complaints, are sufficient to raise an issue of fact for the jury as to whether [p]laintiff's work environment was altered because of her race and national origin."); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) ("'[T]he mere fact that the plaintiff was not present when a racially derogatory comment was made will not render that comment irrelevant to his hostile work environment claim' because 'the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment.'") (quoting Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997)).

Thus, there is no question that terms such as retaliat*, bitch* and other gender-based comments are relevant, and e-mails containing those terms should be disclosed in discovery.  Similarly, given that Ms. Moazzaz is asserting equal pay claims, Defendants have no basis to argue that they will not search for emails containing terms such as equal /5 pay and unequal /5 pay.  Defendants should therefore be ordered to review these documents forthwith.

We thank Your Honor for the Court's time and consideration of this matter.

Respectfully submitted,

Michael J. Willemin

cc:     All Counsel of Record (*via* ECF)