# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Renan F. Varghese**
rvarghese@wigdorlaw.com

April 20, 2022

<u>VIA ECF</u>

The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square, Room 2101
New York, New York 10007

   Re: <u>Moazzaz v. MetLife, Inc., et al.</u>; Civil Action No. 19-cv-10531 (JPO)

Dear Judge Oetken:

We represent Plaintiff Mona Moazzaz ("Plaintiff") in connection with the above-referenced matter against Defendants MetLife, Inc. ("MetLife"), Michel Khalaf, Steven Kandarian, Frans Hijkoop, Susan Podlogar and Gary Hediger ("Defendants"). Plaintiff writes in opposition to Defendants' April 18, 2022 letter (the "Letter") seeking to lift the "Attorneys' Eyes Only" designation on the manuscript that she has produced for this case (the "Manuscript"). <u>See</u> Dkt. No. 74.

## I. BACKGROUND

Ms. Moazzaz is the former Chief Administrative Officer for MetLife, where she worked for over seven years when she was summarily and unlawfully terminated in May 2019. After the termination of her employment, Ms. Moazzaz began working on an exposé of the unlawful practices she witnessed during her professional career. She ultimately settled on a narrative called "Sharp Elbows," for which she completed her latest draft last year and intends to market to publishers. Ms. Moazzaz's goal in writing this book is to provide a behind-the-scenes look at the corruption and discriminatory conduct that employees, particularly women, face in some of the largest and most powerful companies in the world. She hopes that, by doing so, it will allow concerned citizens, and especially young people who are tempted to join such large companies, to understand the truth of their operations and the moral tradeoff that such employment can require.

Plaintiff produced the Manuscript in this case on February 8, 2022 with a "Confidential – Attorneys' Eyes Only" designation. Importantly, the Manuscript contains a 17-page appendix, which in turn contains 341 footnotes painstakingly detailing the source of the factual statements made in the Manuscript itself. Plaintiff has produced all of the material, including documents and tape recordings, referenced in this appendix during the course of discovery in this case.



Pursuant to the Parties' Stipulation and Order of Confidentiality (the "Confidentiality Order"), either party can label a document "Confidential – Attorneys' Eyes Only" in the event that it contains:

> (i) highly sensitive confidential personal information or (ii) highly sensitive confidential or proprietary business information, a trade secret or other commercial or financial information that the Producing Party, in good faith, believes would result in competitive or commercial harm in the marketplace if the information were disseminated to persons other than Parties' internal counsel and/or counsel retained specifically for this action.

Dkt. No. 54, ¶ 2.

## II. THE MANUSCRIPT IS ENTITLED TO THE "CONFIDENTIAL – ATTORNEYS' EYES ONLY" DESIGNATION

As a threshold matter, it is important to note to what Plaintiff is applying the "Confidential – Attorneys' Eyes Only" designation insofar as Defendants attempt to conflate two separate issues. Specifically, Defendants claim that the Manuscript "does not contain material" that fits within the Confidentiality Order's definition of "Confidential – Attorneys' Eyes Only" material. Dkt. No. 74 at p. 3. Defendants' statement is accurate, as far as it goes. Plaintiff is not claiming that any particular fact or statement in the Manuscript is sensitive and should not be disclosed to Defendants themselves. Rather, Plaintiff has asserted the "Confidential – Attorneys' Eyes Only" designation on the Manuscript *as a whole*. Plaintiff has refrained from having the Manuscript published, or even sharing it with any publishing agencies, during the pendency of this litigation. However, as an in-progress work of art, the eventual value of the Manuscript is entirely dependent on its scarcity – to the extent that it leaks, or otherwise becomes available to a larger audience separate from the publication process, the chances of it being ultimately published diminish substantially. In that respect, the facts that Ms. Moazzaz chose to include in the Manuscript, the manner in which Ms. Moazzaz relays her story and the emphasis she places on certain events are all worthy of the highest possible confidentiality protection. In other words, Plaintiff seeks to apply strict confidentiality to her artistic expression as reflected in the Manuscript in its entirety rather than to the specific factual contentions contained therein.

Indeed, Defendants concede as much in their Letter when they admit:

> In fact, the only "sensitive" information in the manuscript comes from confidential documents and recordings improperly retained following or made during Plaintiff's employment. ***Plaintiff has since produced all of this source material, which is more detailed than***



The Honorable J. Paul Oetken
April 20, 2022
Page 3

> *anything contained in the manuscript, yet Plaintiff did not designate any of that information as Attorneys' Eyes Only*.

Id. (emphasis added).

Here, Defendants have not provided any basis for removing the "Confidential – Attorneys' Eyes Only" designation from the Manuscript. They claim that they need to discuss the allegations in the Manuscript to defend against Plaintiff's allegations, but, as they admit, Plaintiff has already produced all of the underlying evidence upon which the statements contained in the Manuscript are based, and has refrained from marking any of that material as being Attorneys' Eyes Only. Thus, Defendants can question their witnesses about the material contained in the Manuscript without having to show their witnesses the actual Manuscript itself. See Ex. A at p. 1 (explaining to Defendants that "we have no objection to you speaking to MetLife employees about the contents of the manuscript"). Moreover, although Defendants claim that the Manuscript contains a recitation of facts different than what is contained in the Amended Complaint (despite, notably, not identifying a single such discrepancy), there is nothing in the Confidentiality Order preventing Defendants from questioning Plaintiff about any such supposed differences during her deposition.

Beyond providing all of the source material upon which the Manuscript is based, Plaintiff has also offered to consider lifting the "Confidential – Attorneys' Eyes Only" designation to the extent that there are specific pages or sections that Defendants believe are absolutely necessary to show certain MetLife employees. Defendants rejected this proposal out of hand. Although Defendants claim that this proposal is supposedly "unworkable," it plainly is not. Defendants are able to use the information contained in the Manuscript in defending this case. There is no reason that they need to be allowed to show their witnesses the literal language used in the Manuscript rather than, for example, simply asking them about events recited in the Manuscript or providing them with the underlying evidence upon which the statements in the Manuscript are based. In the unlikely event that Defendants believe that some specific language used by Plaintiff cannot be communicated in any other way than through the use of Plaintiff's own words, Plaintiff has invited Defendants to meet and confer about such specific language. However, there is simply no reason to lift the "Confidential – Attorneys' Eyes Only" designation from the entire Manuscript in this case.

### III.     THERE IS NO BASIS FOR LIFTING THE REDACTIONS

Defendants also request that the redactions contained in the Manuscript be lifted. By way of explanation, Plaintiff has only redacted select portions of the Manuscript that dealt with, *inter alia*, her family experience growing up in Iran, her education and employment prior to her employment with MetLife and personal information about friends and family members. Contrary to what Defendants claim, none of the redacted material has anything to do with the claims and defenses in this case.



Moreover, as Defendants again concede, after Defendants objected to Plaintiff's redactions, Plaintiff subsequently produced a completely unredacted version of the Manuscript and told Defendants that, to the extent that there were specific redactions that they wanted removed, we would be willing to meet and confer about those sections.  See Ex. A.  Again, Defendants declined Plaintiff's offer of compromise.  Instead, after reviewing the unredacted portions of the Manuscript, Defendants informed us that they would agree not to challenge the redactions as long as Plaintiff lifted the "Confidential – Attorneys Eyes Only" designation from the Manuscript itself.  When Plaintiff refused to remove the designation from the Manuscript for the reasons cited above, Defendants never revisited the topic of the redactions, nor did they identify any specific sections of the Manuscript that they believed to be improperly redacted.  Accordingly, we are confused as to why they felt the need to raise this issue with the Court without attempting to determine whether the parties could reach a compromise amongst themselves.  Again, as we explained to Defendants, to the extent that they want to discuss specific redactions that they seek to have removed, we are more than happy to meet and confer with them about this issue.  However, failing that, there is no reason that all of the redactions need to be lifted from the Manuscript, nor have Defendants provided any reason why such a wholesale removal of the redactions is necessary in this case.

We thank Your Honor for the Court's time and consideration of this matter.

Respectfully submitted,

Renan F. Varghese

cc:   All Counsel of Record (*via* ECF)

Enc.