**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

MONA MOAZZAZ,                                              :
                                                          :
                              Plaintiff,                  :
           v.                                             :        Case No.: 1:19-cv-10531 (JPO)
                                                          :
METLIFE, INC.; MICHEL KHALAF, in his                      :
individual and professional capacities; STEVEN            :
KANDARIAN, in his individual and professional             :
capacities; FRANS HIJKOOP, in his individual              :
and professional capacities; SUSAN PODLOGAR,              :
in her individual and professional capacities; and        :
GARY HEDIGER, in his individual and                       :
professional capacities,                                  :
                              Defendants.                 :
-----------------------------------------------------------------X

## PLAINTIFF'S OMNIBUS MOTION IN LIMINE

**WIGDOR LLP**

Michael J. Willemin
Meredith A. Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*

**RELEVANT BACKGROUND**

As the Court knows, the claims to be tried in this case are (1) for violations of the federal Equal Pay Act. 29 U.S.C. §§ 206, *et seq*. ("EPA") and New York Equal Pay Law, New York Labor Law § 194(1) ("NYEPL" and, together with the EPA, the "Equal Pay Laws"); (2) for pay discrimination under the New York State Humans Rights Law, N.Y. Exec. § 296 ("NYSHRL") and under the New York City Human Rights Law, N.Y.C. Code § 8-107 ("NYCHRL"); and (3) for promotion discrimination under the NYSHRL and NYCHRL.  See Opinion and Order, Dkt. 122 ("Order") at 26.  In their Defense, Defendants will argue to the jury that Plaintiff cannot establish the requisite comparability between her work and the work of a man who made more, as required (with differing standards) to prevail under the Equal Pay Laws.  Defs.' Mem. in Supp. of Mot. for Summ. J., Dkt. 93 ("Defs.' Mem.") at 29-31 (ECF Pagination[1]).  As to the Equal Pay Claims and the pay and promotion claims under the NYSHRL and NYCHRL, they will also argue that they rested their pay and promotion decision as to Moazzaz solely on a purportedly objective and impartial "Global Grading System" ("GGS").  See Defs.' Mem. at 31-34.  This has been the narrative advanced by all of their witnesses.  Defs.' 56.1 Statement, Dkt. 94 ("Defs.' 56.1") at ¶¶ 6-27 (citing the declarations of Kathryn Kessel, John Bonnet, and Susan Podlogar).  Elsewhere, these witnesses have also testified that the GGS's purportedly objective input factors exhausted the reasons for the pay and promotion decisions made as to Moazzaz. See Podlogar Dep. at 145:25-146:7 (testifying Moazzaz was missing "the factors" of "technical expertise" and "scale of leadership" to be graded at a level 19, i.e. an Executive Vice President ("EVP")); id. at 150:14-18 ("Q. And besides the technical expertise and the scale of leadership, was there any other reason that Ms. Moazzaz's job was not graded at level 19, to your

---

[1]    All page numbers refer to ECF pagination unless otherwise indicated.

knowledge. A: To my knowledge, those are the reasons."). It was also the fulcrum of the Court's analysis in its Order. See Order at 3 ("According to MetLife, the company's compensation team used a detailed description of Moazzaz's expanded role to grade the position on a series of factors as part of the GGS process.")

The dragnet of discovery has also caught some pieces of evidence that wrongly disparage Moazzaz's character or her performance. None of this evidence has anything to do with the issues remaining in the case. For instance, Defendants' Human Resources ("HR") officials extracted complaints about Moazzaz from MetLife, Inc.'s employees. Defs.' 56.1 at ¶ 34. Many hundreds of pages of related investigation notes, interview notes, and emails were produced in discovery, and Defendants' witnesses testified about this evidence during their depositions. But Defendants have never argued that this investigation or its findings influenced any of its employment decisions, including the pay or promotion decisions.

Other pieces of evidence that have arisen likewise lack any conceivable relation to the arguments the jury will hear about Moazzaz's claims under the Equal Pay Laws, NYSHRL and NYCHRL. For instance, Defendants' counsel questioned Moazzaz about whether she violated the terms of a Confidentiality Agreement she signed with the company. Moazzaz Dep. at 192:5-193:17. Once again, however, Moazzaz's performance or non-performance under this agreement played no part in any of Defendants' employment decisions. Finally, Defendants' counsel also questioned Moazzaz about recordings she made of certain conversations, some of which Plaintiff may seek to move into evidence. E.g. Moazzaz Dep. at 181:8-18. And, once more, Moazzaz's methods for taking these recordings bear no relation to any of Defendants' arguments about the EPA, NYSHRL or NYCHRL claims, nor any other issue. In any case, the recordings were made legally.

The evidence described here—about investigations, the confidentiality agreement, and the recordings—is provided by way of example, as there may be other similar, analogous, or related items of evidence that fail to meet the admissibility requirements for the same reasons. The examples given, and all like evidence, are hereinafter referred to collectively as "Unrelated Disparagement Evidence."

**<u>STANDARD OF REVIEW</u>**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial." <u>Hart v. RCI Hosp. Holdings, Inc.</u>, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (citing <u>Highland Capital Mgmt., L.P. v. Schneider</u>, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008)). Evidence should be excluded when it is "clearly inadmissible on all potential grounds." <u>Id.</u> quoting <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.</u>, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Irrelevant evidence is inadmissible. Fed. R. Evid. 402. "Evidence is relevant when 'it has any tendency to make a [material] fact more or less probable than it would be without the evidence.'" <u>United States v. White</u>, 692 F.3d 235, 246 (2d Cir.2012), <u>as amended</u> (Sept. 28, 2012) (quoting Fed. R. Evid. 401). "A material fact is one that would affect the outcome of the suit under the governing law." <u>Arlio v. Lively</u>, 474 F.3d 46, 52 (2d Cir.2007) (internal citations omitted).

Even if evidence is relevant, under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence is considered prejudicial if it "involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into

3

evidence." Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176-77

(S.D.N.Y.2008) (quoting United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir.1995)).

## ARGUMENT

### I.      The Unrelated Disparagement Evidence is Inadmissible

None of the Unrelated Disparagement Evidence has any tendency to "make a [material]

fact more or less probable," U.S. v. White, 692 F. 3d at 246, and must therefore be excluded.  As

stated above, this evidence has no bearing on Defendants' legitimate-business-reason defense,

according to both Defendants' own arguments at Summary Judgment and to the testimony of its

personally knowledgeable witnesses, such as Susan Podlogar.  See Hardy v. Town of Greenwich,

629 F. Supp. 2d 192, 197 (D. Conn. 2009) ("If Chief Walters did refer to disciplinary records and

performance and promotional evaluations, or portions of them, in making appointment decisions

for these Plaintiffs, then such records are clearly relevant. On the other hand, if Chief Walters did

not rely on such records in making his decisions, they are not relevant and therefore

inadmissible.")  As the Court's Summary Judgment Opinion noted, the dispute at the core of this

case is not whether the GGS system, as opposed to investigations findings, were used to make

the employment decisions impacting Moazzaz.  The only issue is the extent to which the GGS

was influenced by decision-makers with discriminatory motives.

Even if minimally relevant, the Unrelated Disparagement Evidence would be unduly

prejudicial and would confuse the issues in the case.  First, a jury is likely to treat such evidence

as "character evidence," which is otherwise inadmissible.  Redd v. New York State Div. of

Parole, 923 F. Supp. 2d 393, 400 (E.D.N.Y. 2013) (granting motion in limine to exclude

"disciplinary history or alleged problems [the plaintiff] may have had with colleagues" for a

similar reason.)  This is unfairly prejudicial, as it would serve as a backdoor to evidence the jury

would otherwise be barred from hearing.  Second, a juror is unlikely to be able to separate the Unrelated Disparagement Evidence from Defendants' purported legitimate business reasons for its pay and promotion decisions adverse to Moazzaz, even with a limiting instruction.  While that risk might be worthwhile for important evidence, it is not one worth venturing for marginal evidence that has never featured in any of Defendants' arguments or in its witness's testimony.

In the alternative, the Court should either exclude paper and testimony evidence regarding the Unrelated Disparagement Evidence or should issue a limiting instruction.  For instance, at least a dozen employees were questioned about Moazzaz.  Introducing all notes and memos about them and then cross-examining several witnesses about their contents would delay the proceedings for an issue of minimal (really, no) importance.  To the extent any of these notes or interviews are admissible, it will likely be for their influence upon a decision-maker, and that decision-maker, or those decision-makers, can testify about whether and how they considered such notes.  Finally, at a minimum, the Court should issue limiting instructions (1) that the investigation had no influence on any employment decisions (if that remains Defendants' argument); and (2) that no claim has been made that Moazzaz improperly breached a Confidentiality Agreement or broke the law in making the recordings.

Dated: November 1, 2024
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
      Michael J. Willemin
      Meredith A. Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*

6