**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MONA MOAZZAZ,

                      Plaintiff,

     v.

METLIFE, INC.; MICHEL KHALAF, in his
individual and professional capacities; STEVEN
KANDARIAN, in his individual and professional
capacities; FRANS HIJKOOP, in his individual
and professional capacities; SUSAN
PODLOGAR, in her individual and professional
capacities; and GARY HEDIGER, in his
individual and professional capacities,

                  Defendants.

No. 19-cv-10531 (JPO)(OTW)

**<u>ECF CASE</u>**

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE*</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

LEGAL STANDARD ............................................................................................1

ARGUMENT ......................................................................................................2

I.    Motion *in Limine* No. 1: Precluding Evidence Relevant to Plaintiff's Dismissed Claims and Reference to Plaintiff's Termination..........................................................................2

      A.    Plaintiff Should Be Precluded from Introducing Evidence Related to Plaintiff's Dismissed Claims.........................................................................................3

            i.    Purportedly Gendered, Stray Remarks ......................................................4

            ii.   Plaintiff's Complaints and Investigations into Plaintiff ...........................10

            iii.  References to Institutional Discrimination ...............................................11

      B.    The Court Should Preclude Evidence of Plaintiff's Termination.........................13

II.   Motion *in Limine* No. 2: Precluding Reference to Unrelated Allegations of Discrimination Against or Mistreatment of Other Employees ..........................................14

III.  Motion *in Limine* No. 3: Precluding Reference to Prior, Unrelated Litigation or Other Legal Matters ...................................................................................................19

IV.   Motion *in Limine* No. 4: Precluding Reference to MetLife's Finances, Individual Defendants' Wealth, Individual Defendants' Compensation, and Insurance Coverage ...21

V.    Motion *in Limine* No. 5: Precluding Evidence Regarding Plaintiff's Alleged Performance of CDO Functions on or After July 1, 2017, and Limiting Damages Thereby ................................................................................................................23

      A.    The Court Should Preclude Evidence About Plaintiff's Alleged Digital Role After July 2017. .......................................................................................................23

      B.    If Baxter Is an Appropriate Comparator, Plaintiff's Potential Damages Must Be Limited to the Period from September 15, 2014, to July 1, 2017.........................25

CONCLUSION.................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
    2019 WL 2330855 (E.D.N.Y. May 31, 2019) ......................................................................23

*Becker v. ARCO Chem. Co.*,
    207 F.3d 176 (3d Cir. 2000).................................................................................................15

*Benzinger v. Lukoil Pan Ams., LLC*,
    2021 WL 431169 (S.D.N.Y. Feb. 8, 2021).............................................................................4

*Blazina v. Port Auth. of N.Y. & N.J.*,
    2008 WL 4539484 (S.D.N.Y. Oct. 7, 2008) ..........................................................................1

*Castro v. City of New York*,
    2010 WL 11586591 (S.D.N.Y. Aug. 11, 2010) ...................................................................21

*CDX Liquidating Trust ex rel. CDX Liquidating Tr. v. Venrock Assocs.*,
    411 B.R. 591 (N.D. Ill. 2009) .............................................................................................20

*Chandler v. H.E. Yerkes & Assocs., Inc.*,
    784 F. Supp. 119 (S.D.N.Y. 1992) .....................................................................................13

*Desrosiers v. Summit Sec. Servs., Inc.*,
    2022 WL 13808524 (S.D.N.Y. Oct. 21, 2022) (Oetken, J.) ............................................4, 8, 9

*Emswiler v. Great E. Resort Corp.*,
    602 F. Supp. 2d 737 (W.D. Va. 2009).................................................................................25

*Gorbea v. Verizon New York, Inc.*,
    2014 WL 2916964 (E.D.N.Y. June 25, 2014) .......................................................................3

*Griffin v. Ambika Corp.*,
    103 F. Supp. 2d 297 (S.D.N.Y. 2000) ................................................................................18

*Hart v. RCI Hosp. Holdings, Inc.*,
    90 F. Supp. 3d 250 (S.D.N.Y. 2015) ..................................................................................23

*Haskell v. Kaman Corp.*,
    743 F.2d 113 (2d Cir. 1984)..................................................................................................5

*Henry v. Wyeth Pharms., Inc.*,
    2008 WL 294443 (S.D.N.Y. Jan. 29, 2008), *aff'd*, 616 F.3d 134 (2d Cir. 2010) ...................17

*Henry v. Wyeth Pharms., Inc.*,
    616 F.3d 134 (2d Cir. 2010).........................................................................................4, 6, 7

*In re Homestore.com*,
    2011 WL 291176 (C.D. Ca. 2011) .....................................................................................20

*Leopold v. Baccarat, Inc.*,
    174 F.3d 261 (2d Cir. 1999)...............................................................................................19

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ..................................................................................21

*Loussier v. Universal Music Grp., Inc.*,
    2005 WL 5644421 (S.D.N.Y. July 14, 2005) .........................................................22

*Lovell v. BBNT Sols., LLC*,
    299 F. Supp. 2d 612 (E.D. Va. 2004) ....................................................................25

*Martinelli v. Penn Millers Ins. Co.*,
    2007 WL 9759057 (M.D. Pa. Mar. 19, 2007) .................................................. 15, 18

*Morales v. New York State Dep't of Labor*,
    530 F. App'x 13 (2d Cir. 2013) ...............................................................................3

Mugavero v. Arms Acres, Inc.,
    2009 WL 1904548 (S.D.N.Y. July 1, 2009) ..........................................................15

*NES Fin. Corp. v. JPMorgan Chase Bank*,
    891 F. Supp. 2d 558 (S.D.N.Y. 2012) ....................................................................13

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996) .......................................................................................1

*Park W. Radiology v. CareCore Nat. LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009) ....................................................................21

*Perry v. Ethan Allen, Inc.*,
    115 F.3d 143 (2d Cir. 1997) .....................................................................................2

*Prowley v. Hemar Ins. Corp. of Am.*,
    2010 WL 1848222 (S.D.N.Y. May 7, 2010) ..........................................................21

*Richmond v. Gen. Nutrition Ctrs. Inc.*,
    2012 WL 762307 (S.D.N.Y. Mar. 9, 2012) ............................................................21

*Rivera v. Baccarat, Inc.*,
    1997 WL 777887 (S.D. N.Y. 1997) ........................................................................17

*Thompson v. Spota*,
    2022 WL 17253464 (E.D.N.Y. Nov. 28, 2022) ......................................................20

*Tomassi v. Insignia Fin. Grp., Inc.*,
    478 F.3d 111 (2d Cir. 2007) .....................................................................................4

*Vasbinder v. Ambach*,
    926 F.2d 1333 (2d Cir. 1991) .................................................................................22

**Statutes**

29 U.S.C. §§ 206 .............................................................................................................24

New York Labor Law § 194 ............................................................................................24

**Other Authorities**

Fed. R. Evid. 403 Advisory Committee Notes ..................................................................2

**Rules**

Fed. R. Civ. P. 37 ................................................................................................... 16

Fed. R. Evid. 401 ..................................................................................................... 1

Fed. R. Evid. 403 ..................................................................................................... 2

Fed. R. Evid. 404 ................................................................................................... 15

Fed. R. Evid. 801 ................................................................................................... 18

**Treatises**

2 Weinstein's Federal Evidence § 403.04 ................................................................ 5

## PRELIMINARY STATEMENT

Defendants MetLife Group, Inc.[1] ("MetLife"), Michel Khalaf, Steven Kandarian, Susan Podlogar, and Gary Hediger ("Individual Defendants," and with MetLife, "Defendants") respectfully submit this memorandum in support of their motions *in limine* to preclude Plaintiff Mona Moazzaz from introducing the following categories of evidence and argument at trial:

(1)    Evidence or argument regarding Plaintiff's dismissed hostile work environment and termination claims, including reference to the fact that Plaintiff was terminated, which is both irrelevant and prejudicial;

(2)    Evidence or argument regarding past, unrelated allegations of discrimination by or bad acts of MetLife, offered solely as impermissible propensity evidence;

(3)    Evidence or argument regarding irrelevant prior legal proceedings involving MetLife;

(4)    Evidence or argument regarding Defendants' compensation, insurance, finances, and general wealth; and

(5)    Evidence or argument regarding Plaintiff's alleged performance of Chief Digital Officer responsibilities on or after July 1, 2017.

## LEGAL STANDARD

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Blazina v. Port Auth. of N.Y. & N.J.*, 2008 WL 4539484, at *1 (S.D.N.Y. Oct. 7, 2008) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). Evidence is relevant only if it has a "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant under Rule 401, it may be excluded by

---

[1]    MetLife Group, Inc. is incorrectly identified in the Amended Complaint as "MetLife, Inc."

the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The primary purpose behind Rule 403 is to prevent a jury from hearing evidence that has "an undue tendency to suggest decision on an improper basis." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (quoting Fed. R. Evid. 403 Advisory Committee Notes).

## ARGUMENT

I.  **MOTION *IN LIMINE* NO. 1: PRECLUDING EVIDENCE RELEVANT TO PLAINTIFF'S DISMISSED CLAIMS AND REFERENCE TO PLAINTIFF'S TERMINATION**

Over the course of this action, the scope of Plaintiff's triable claims has shrunk significantly, making many of the allegations in her Amended Complaint irrelevant. The Court dismissed Plaintiff's retaliation claims at the motion to dismiss stage because she failed to allege any plausible connection between her complaints about purported discrimination and her termination. (Dkt. 36 at 25–28.) The Court then dismissed Plaintiff's hostile work environment and discriminatory termination claims at summary judgment because (1) Plaintiff failed to raise a genuine issue of fact as to anything more than "one instance of gender-based conduct" by a single employee in 2014 (Dkt. 122 at 15) and (2) MetLife established that it terminated her employment for a non-discriminatory reason and that "no rational jury could find that MetLife's offered justification was pretext." (*Id.* at 21.) Accordingly, Plaintiff's only remaining claims are (1) her failure-to-promote claims, in which she alleges she was denied a further[2] promotion in 2017 to

---

[2]    Plaintiff was promoted in 2017 from a Grade 17 to a Grade 18 and was paid over $300,000 in additional compensation in connection with that promotion. Plaintiff's claim, therefore, is that

Executive Vice President ("EVP") because of her gender; and (2) her disparate-pay claims, in which she alleges she was paid less than others at MetLife with similar jobs because of her gender.

Based on her submissions, Defendants expect Plaintiff to offer evidence putatively relevant to the dismissed claims and to the fact that MetLife terminated her to garner sympathy, prejudice Defendants, and confuse the issues. The Court should preclude evidence in any way potentially relevant to the dismissed claims and references to Plaintiff's termination.

### A. Plaintiff Should Be Precluded from Introducing Evidence Related to Plaintiff's Dismissed Claims.

Plaintiff should be precluded from introducing evidence or argument relevant to her dismissed claims of retaliation, hostile work environment, and discriminatory termination. The evidence purportedly supporting those claims has no bearing on Plaintiff's remaining claims for alleged unequal pay and failure to promote. In addition to being irrelevant, evidence relating to Plaintiff's dismissed claims would be highly prejudicial to Defendants and confusing to the jury.

Courts routinely exclude evidence related to dismissed claims on a motion *in limine*. *See, e.g.*, *Morales v. New York State Dep't of Labor*, 530 F. App'x 13, 15 (2d Cir. 2013) (affirming exclusion of evidence related to retaliation claim "dismissed at summary judgment"); *Gorbea v. Verizon New York, Inc.*, 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014) ("[C]laims that were dismissed . . . may not be tried, and evidence relating thereto may not be introduced at trial."). For example, in *Benzinger v. Lukoil Pan Ams., LLC*, the court excluded evidence involving the plaintiff's dismissed claims of discrimination at trial, which centered on her surviving claims under the Fair Labor Standards Act and New York Labor Law. 2021 WL 431169, at *6 (S.D.N.Y. Feb.

---

she was denied a promotion on the basis of gender because she was not further promoted in 2017 to a Grade 19 and an EVP title.

8, 2021). The court rejected the plaintiff's argument that "one type of discrimination exacerbated the other type," holding that the plaintiff could not "bootstrap" her dismissed claims to her surviving claims by offering evidence relevant to the dismissed claims at trial. *See id.*

Here, Defendants expect Plaintiff to offer evidence relevant to her dismissed claims falling into three categories: (1) purportedly gendered, stray remarks by a few individuals at MetLife (which the Court has already largely concluded were not gender-based); (2) MetLife's response to complaints about and by Plaintiff; and (3) allegations about purported general discriminatory conduct at MetLife having nothing to do with Plaintiff. Each of these categories of evidence should be precluded as irrelevant to Plaintiff's remaining claims. If the Court finds that they have any minimal probative value, they should be excluded as unfairly prejudicial. Plaintiff pointed to these scattered allegations to support only her failed hostile work environment claim, not the surviving claims about her promotion and pay. (Dkt. 111 at 9–15.)

### i.    *Purportedly Gendered, Stray Remarks*

To support her failed hostile work environment claim, Plaintiff cobbled together various unflattering remarks she alleges a handful of MetLife employees made in the past. Plaintiff will undoubtedly attempt to introduce these scattershot allegations at trial to confuse the issues. But purportedly offensive remarks only suggest discriminatory bias if they bear "a causal nexus" to the alleged adverse employment decision at issue. *See Desrosiers v. Summit Sec. Servs., Inc.*, 2022 WL 13808524, at *3 (S.D.N.Y. Oct. 21, 2022) (Oetken, J.). The Second Circuit has explained that as to "stray remarks," "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (quoting *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)).

Here, the remarks at issue bear no connection to the alleged adverse actions against Plaintiff still at issue—MetLife's decision not to promote her to EVP in 2017 and her compensation. Many of the comments have nothing to do with Plaintiff at all or were purportedly made by MetLife employees who were not in a position to influence Plaintiff's 2017 promotion or her compensation, and therefore could not have had any bearing on MetLife's actions as to Plaintiff. And many of the comments were *years* before Plaintiff claims she was denied a promotion in 2017.

Even if the remarks had some minimal probative value—they do not—their prejudicial effect would be immeasurable. Jurors may seek to punish Defendants for stray comments they perceive as unprofessional or even offensive, rather than determining whether MetLife discriminated against *Plaintiff* in declining to further promote her in 2017 or in setting her compensation. *See* 2 Weinstein's Federal Evidence § 403.04 (evidence with the capacity to "provoke[ ] a jury's instinct to punish" is unfairly prejudicial); *Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir. 1984) (concluding that age-based stray remarks were prejudicial and should not have been admitted). The Court should therefore preclude the below evidence:

**Gary Hediger's Alleged 2014 Comments.** Plaintiff alleges that she learned that Gary Hediger called her a "bitch" and a "commander" in 2014—*three years* before Plaintiff alleges she was denied a further promotion based on her gender. (Dkt. 20 ¶ 86.) Plaintiff heavily relied on these alleged comments in support of her hostile work environment claims, which the Court rejected. (Dkt. 111 at 9–10.) But these alleged comments are irrelevant to whether gender played a role in Plaintiff's promotion and pay at MetLife for purposes of her remaining claims. To the extent Plaintiff argues they are probative of discriminatory animus at MetLife, any probative value is minimal given they were made by a single employee *years before* MetLife did not promote Plaintiff to EVP. Indeed, *after* these 2014 comments were made, Plaintiff was promoted to Senior

Vice President and later from a Grade 17 SVP to a Grade 18 SVP—the comments therefore have no conceivable link to Plaintiff's claim that MetLife failed to promote her on the basis of gender. (Moghaddam Decl., Ex. A, Pl. Tr. at 224:10–225:2.)[3] Nor were these comments made in connection with any decision about Plaintiff's compensation.

On the other hand, testimony about these comments is extraordinarily prejudicial—the word "bitch"[4] will certainly offend members of the jury and motivate them to punish Defendants for the remark and potentially for continuing to employ Mr. Hediger. *See Henry*, 616 F.3d at 150 (district court appropriately excluded racial slur by plaintiff's indirect supervisor because "the remark was not related to the decision-making process" and had limited probative value, but "remark might have sufficiently offended members of the jury that they would feel inclined to rule against defendants, merely to punish [employer] for continuing to employ him"). At base, Plaintiff seeks to offer testimony about a stray, unprofessional remark to garner sympathy and to encourage the jury to punish MetLife for an isolated incident untethered to Plaintiff's actual claims, rather than deciding the merits of her claims. She should be precluded from doing so.

**Mr. Hediger's Reference to Plaintiff as "Little One."**  Plaintiff also alleges Mr. Hediger once referred to Plaintiff as "little one" in 2018.  (Dkt. 113 ¶ 271; Dkt. 95-5 at 221:9–13.)  The Court already recognized at summary judgment that Mr. Hediger referring to plaintiff as being small in stature is not "gender-based conduct."  (Dkt. 122 at 15.)  Further, this 2018 remark was *after* Plaintiff claims she was not further promoted in 2017. Accordingly, this remark is not

---

[3]     "Pl. Tr." refers to the transcript of Plaintiff's deposition, which was conducted over two days, on May 2, 2022 and July 11, 2022.

[4]     Defendants contest Plaintiff's characterization of this remark. (*See* Dkt. 113 ¶¶ 76–80.)

relevant to whether MetLife made any promotion or compensation decision relating to Plaintiff based on her gender, and it should be excluded.

**_Frans Hijkoop's Purported Comments at Conferences._** Plaintiff alleges that Frans Hijkoop, MetLife's former Chief Human Resources Officer, sponsored a conference at which women purportedly complained about MetLife's culture, and Mr. Hijkoop stated that women are "too emotional" while on a panel. (Dkt. 20 ¶ 118.) Plaintiff testified about this comment—which was taken entirely out of context—at her deposition and included a video of Mr. Hijkoop's remarks on her preliminary exhibit list.  (Moghaddam Decl. ¶ 14; Dkt. 115-1 at 111–12.)

Testimony about this conference and panel are divorced from Plaintiff's remaining claims in every way. Like Hediger's comments, this event occurred in 2014, _three years_ before the decision not to further promote Plaintiff to EVP. Further, Plaintiff cannot allege that those comments were directed at or about her in any way, shape, or form. Nor can she allege that these comments were made by any individual who could have had input into her job grading or compensation—as the Court recognized at summary judgment, Mr. Hijkoop retired from MetLife at the end of 2016, well before MetLife made any decision about further promoting Plaintiff in 2017. (Dkt. 113 ¶ 3; Dkt. 122 at 24.) _See Henry_, 616 F.3d at 150 (court did not abuse its discretion in excluding under Rule 403 discriminatory comments about different employee by individual who was not involved in decisions alleged to be discriminatory, where comments were made years before events at issue, and where comments were unrelated to decision-making process).

Plaintiff also alleges that at a Global Woman's Initiative, Mr. Hijkoop "told a group of MetLife's senior female employees . . . that the idea of an old boy's network was 'more in [their] mind than in reality.'" (Dkt. 113 ¶ 85.) Again, this comment has nothing to do with Plaintiff at all and was made by someone with no input into Plaintiff's job grade in 2017, after he retired and

therefore could not have possibly made any decisions about Plaintiff's compensation. Given that Mr. Hijkoop's purported comments at conferences have nothing to do with Plaintiff, they could only conceivably be relevant to Plaintiff's dismissed hostile work environment claim and should therefore be excluded. And if they have any minimal probative value at all, the risk that jurors unfairly punish MetLife for comments that they find objectionable by a former high-ranking officer outweighs that minimal probative value.

**Frans Hijkoop's Alleged Suggestion that Plaintiff "Be Nicer."** Plaintiff alleges Mr. Hijkoop told her to "be nicer" and to be "more like the woman that he had researched on the internet that participates in community service activities and supports not-for-profit organizations." (Dkt. 20 ¶¶ 92, 93.) Again, Mr. Hijkoop's alleged comments bear no nexus to Plaintiff's remaining claims because Mr. Hijkoop retired before MetLife made any decision about promoting Plaintiff. (Dkt. 113 ¶ 3.) Nor has Plaintiff alleged that this comment was made in connection with any compensation decision. (*Id*. ¶¶ 280–81.) And the Court explicitly found that Mr. Hijkoop's remarks **were not gender motivated**, meaning they cannot be probative of whether MetLife did not promote Plaintiff or pay her more because of her gender. (Dkt. 122 at 16.)

**Alleged Comments That Plaintiff Has "Sharp Elbows."** Plaintiff alleges that Mr. Hijkoop and Christopher Townsend, MetLife's former Head of Asia, said she had "sharp elbows." (Dkt. 20 ¶ 94.)  But the Court found that Plaintiff failed to adduce sufficient evidence that Mr. Hijkoop and Mr. Townsend's "sharp elbows" comments were "gender motivated." (Dkt. 122 at 16.) And, like Mr. Hijkoop's other alleged comments, this comment was not made in connection with any adverse employment action at issue. Mr. Townsend similarly had no involvement in Plaintiff's pay or role—he did not work in Plaintiff's department, he was not a human resources employee, and he worked on a *different continent. See Desrosiers*, 2022 WL 13808524, at *4 ("Desrosiers's

failure to allege that Hackett was the relevant decisionmaker in Desrosiers's termination strongly weighs against considering the alleged comments Hackett made as to Desrosiers's national origin to be evidence of discriminatory motivation in Desrosiers's termination."). Mr. Townsend's comment—which is not even gendered—would only be potentially relevant to Plaintiff's dismissed hostile work environment claim, and should be excluded.

   ***Alleged Comments by Plaintiff's Executive Coach.*** Plaintiff claims that a third-party leadership coach, Howard Bubb, told her to consider wearing less makeup and dressing more conservatively, and that "if you want to be promoted, you need to choose between being pretty and being smart because men can't put you in both boxes." (Dkt. 113 ¶ 360; Dkt. 112 ¶¶ 52–53.) These comments—which Mr. Bubb disputes he made—have no relevance to Plaintiff's remaining claims. Mr. Bubb was *not a MetLife employee*, and did not have any impact on MetLife's decisions about how to compensate Plaintiff or whether to promote her. Further, Mr. Bubb only began coaching Plaintiff *after* the 2017 promotion she claims she was denied. (Dkt. 113 ¶¶ 355, 359.) *Desrosiers*, 2022 WL 13808524, at *5 ("Even statements that are clearly racist, ageist, and religiously inappropriate are not discriminatory when they are stray remarks not connected to the adverse employment decision."). Given that this comment has no conceivable relevance to Plaintiff's remaining claims, she seeks to admit it only to enflame the jury and to garner sympathy for a comment purportedly made by a third party not employed by MetLife.

   ***Comments About Plaintiff's Mural***. Plaintiff alleges that MetLife's former Global Chief Diversity and Inclusion Officer, Elizabeth Nieto, directed Plaintiff to remove a mural she had installed, stating: "Humankind is a bird with two wings; One is women, the other is men. Only when both wings are equal can we soar." (Dkt. 20 ¶¶ 130–35.) Plaintiff's preliminary exhibit list includes no less than five documents about this mural. (Moghaddam Decl. Exs. B–F.) But this

incident has no relevance to Plaintiff's remaining claims: Ms. Nieto was a diversity officer with no role in determining Plaintiff's position or pay. Further, Plaintiff did not dispute at summary judgment that Ms. Nieto told Plaintiff "both women and men were uncomfortable with the mural" as well as MetLife "employees who were non-binary." (Dkt. 113 ¶ 83.) To the extent Plaintiff seeks to point to the mural incident as evidence "of the fact that men at MetLife are not welcoming of, nor do they want, equality for women" (Dkt. 20 ¶ 135), that position is not only inconsistent with the record, it has nothing to do with Plaintiff, her promotion, or pay at MetLife.

ii.    *Plaintiff's Complaints and Investigations into Plaintiff*

Defendants also expect Plaintiff to introduce evidence at trial about complaints she made to MetLife and MetLife's response to complaints about Plaintiff. None of this evidence has any bearing on Plaintiff's remaining claims. Defendants specifically seek to exclude the following categories of evidence:

***Plaintiff's Alleged Complaints to MetLife.*** In support of her failed hostile work environment claim, Plaintiff argued that Defendants ignored Plaintiff's purported "complaints about the discriminatory behavior [Plaintiff] experienced," and specifically about certain of the above stray remarks that should otherwise be excluded. (Dkt. 111 at 10.) Not only do these complaints and the responses thereto bear no relation to decisions about Plaintiff's promotion or pay, but the Court explicitly found that Plaintiff had "not adduced sufficient evidence to raise a genuine dispute over whether" "the company's action or inaction in response to her own complaints" was gender motivated. (Dkt. 122 at 16.) Accordingly, Plaintiff's alleged complaints and the responses have no probative value as to whether MetLife based the relevant decisions about Plaintiff's promotion or pay on her gender.

***Complaint of Inappropriate Relationship.*** Defendants expect Plaintiff to introduce

evidence that MetLife received a complaint about an inappropriate intimate relationship between Plaintiff and her superior. (Dkt. 113 ¶¶ 343–47; Dkt. 112 ¶ 49.) Plaintiff claims this complaint caused her rating to be lowered in 2017—a claim that is speculative at best—but not that this complaint had anything to do with why MetLife did not further promote her to EVP in 2017 or her compensation. (Dkt. 113 ¶ 348.) Nor does Plaintiff allege that the complaint (which was anonymous) was made by anyone with decision-making power as to her employment. (*Id.* ¶ 344.) Even if such evidence were somehow relevant, its limited probative value would be far outweighed by the danger of prejudicing Defendants, confusing the jury, and wasting time. If Plaintiff were permitted to rely on a complaint about whether she and her superior had an inappropriate relationship, it would open the door to evidence as to whether that complaint was well founded, whether MetLife had reason to believe the allegation, and whether Plaintiff and her superior did in fact engage in an intimate relationship. This mini trial about a peripheral and sensitive issue would prejudice Defendants, confuse the issues, and waste the Court and the jury's time.

iii.    *References to Institutional Discrimination*

Plaintiff also makes various references to alleged institutional discrimination at MetLife, which should be precluded. Not only do these claims have no bearing on why MetLife made any decision relating to Plaintiff, but they will be highly prejudicial because they will encourage jurors to act on emotion and punish MetLife for systemic issues of gender discrimination, rather than assessing the merits of Plaintiff's discrete claims.

***Alleged Discriminatory Comments About Other MetLife Employees.*** Plaintiff alleges—without producing any support other than her own say so—that other women at MetLife were "subjected to discriminatory conduct," including gendered remarks. (Dkt. 20 ¶ 116; *see also* Dkt. 113 ¶¶ 85, 370–374.) Again, any alleged comments made to or about any employee other than

11

*Plaintiff* have no bearing on why MetLife did not promote *Plaintiff* to EVP or pay her more. Indeed, Plaintiff conceded at summary judgment that any evidence of other women being discriminated against "are not being offered to prove that they were discriminated—e.g. for the truth of the matter asserted—but to show their effect on Moazzaz's subjective view of her work environment." (Dkt. 111 at 14.) Plaintiff's "subjective view of her work environment" could *only* be relevant to her dismissed hostile work environment claim, and thus should be excluded given the dismissal of that claim. (*See id.* at 9.) This evidence is separately inadmissible because it would be offered as propensity evidence and because it is unfairly prejudicial. *See infra* at 14–19.

**References to MetLife as an "Old Boys' Club."** Plaintiff has repeatedly referred to MetLife as an "old boys' club" or "old boys' network." (Dkt. 20 ¶¶ 117–18; Dkt. 113 ¶¶ 85, 292, 294, 296.) Plaintiff has done so to inaccurately paint MetLife as having a corporate culture where men help each other advance at the expense of women. Whether Plaintiff believed MetLife was an "old boys club" has nothing to do with why MetLife did not promote her to EVP in 2017 or paid her the compensation it paid her. Further, jurors will be familiar with these colloquial terms and how they are used in discussing systemic issues of pay disparity in the workforce. Permitting Plaintiff to refer to MetLife as an "old boys' club"—or testify that others did—unfairly prejudices MetLife because it will incline jurors to punish MetLife for systemic issues that persist in corporate America generally, rather than for any purported discrimination against *Plaintiff* specifically.

**Arjuna Capital Report.** Any testimony about or documents relating to Arjuna Capital rating MetLife an "F" for gender pay gap (the "Arjuna Report") should be precluded, as well. (Dkt. 20 ¶ 6.) That 2018 report says nothing about why MetLife did not promote Plaintiff to EVP in 2017 or why MetLife made any compensation decision relating to Plaintiff. Its introduction would also be prejudicial, especially because MetLife only received an "F" because it (along with many

other organizations) did not respond to the survey. (Dkt. 95-25.) Introduction of this evidence would result in a mini trial on the reasons for Arjuna's rating of MetLife.

The Arjuna Report is also hearsay. Plaintiff only learned of the Arjuna Report through a Google search, and she had no knowledge whatsoever of the methodologies Arjuna used. (Moghaddam Decl., Ex. A, Pl. Tr. at 114:14–119:22.) The report is an out of court statement offered for its truth and does not fall within any exception to the hearsay rule. Courts routinely exclude reports that were "commissioned by a non-party for another purpose independent of the current action and contain[] out-of-court statements by unidentified individuals." *NES Fin. Corp. v. JPMorgan Chase Bank*, 891 F. Supp. 2d 558, 559 (S.D.N.Y. 2012); *see also Chandler v. H.E. Yerkes & Assocs., Inc.*, 784 F. Supp. 119, 126 n.2 (S.D.N.Y. 1992) ("the Court believes that the [previously drafted report] is inadmissible hearsay that cannot be considered").[5]

## B.    The Court Should Preclude Evidence of Plaintiff's Termination.

In addition to precluding evidence relating only to Plaintiff's dismissed claims, the Court should specifically preclude Plaintiff from referencing the fact that MetLife ultimately terminated her employment or eliminated her position. Again, the Court has rejected Plaintiff's claims relating to her termination, and the jury will not be asked to decide any issue relating to Plaintiff's termination. Defendants nevertheless expect Plaintiff to reference the fact that she was terminated and, potentially, to provide details, including her description of being "walked out like a dog." (Dkt. 115-1 at 175:22–176:6.) Plaintiff's preliminary exhibit list includes numerous documents relating to her termination, including MetLife's announcement of her departure, a recording of the

---

[5]    Plaintiff also included on her preliminary exhibit list a "UK Gender Pay Gap Report," which should be excluded for similar reasons (and which is even less probative given that it purports to relate to MetLife UK). (Moghaddam Decl. Ex. G.)

meeting in which she was informed that her role was being eliminated, and a letter from MetLife formally terminating her. (Moghaddam Decl. ¶ 15 & Exs. H–I.)

But whether Plaintiff was terminated or voluntarily departed MetLife has no bearing on Plaintiff's remaining claims for failure to promote and disparate pay *during her employment*. Accordingly, any reference to Plaintiff's termination at all will only serve to confuse the jury and to garner sympathy for Plaintiff by painting MetLife in a negative light. The Court should therefore preclude any such reference to Plaintiff's termination or testimony about that termination.

## II.    MOTION *IN LIMINE* NO. 2: PRECLUDING REFERENCE TO UNRELATED ALLEGATIONS OF DISCRIMINATION AGAINST OR MISTREATMENT OF OTHER EMPLOYEES

Plaintiff plainly intends to introduce unsupported allegations that MetLife has discriminated against or mistreated other employees to demonstrate that Defendants have a propensity for discriminating against or otherwise mistreating employees. Plaintiff's submissions in this case and her deposition testimony are rife with such allegations. (Dkt. 20 ¶ 116; *see also* Dkt. 113 ¶¶ 370–74.) For example, Plaintiff testified that she witnessed another female employee get yelled at, that a male employee to whom Plaintiff did not report said another female employee "was not easy to get along with," and that male employees called female employees "aggressive." (*See* Dkt. 113 ¶ 85.) In addition, Plaintiff's preliminary witness and exhibit lists include information about a female employee who alleged discrimination under entirely different circumstances than Plaintiff, and years before Plaintiff claims she was denied a promotion. (Moghaddam Decl. ¶ 16). Plaintiff also remarkably made various unsupported statements at her deposition about purported discrimination against "black people," despite this not being a race discrimination case. (*See, e.g.*, Moghaddam Decl., Ex. A, Pl. Tr. at 194:5–7, 403:2–4.) Any such testimony should be precluded for several, independent reasons.

*First*, such testimony would be improper propensity evidence of other alleged "bad acts." Under Rule 404(b), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(1).[6] If Plaintiff were to testify about alleged discriminatory conduct towards other employees, that testimony's only conceivable relevance would be to demonstrate that Defendants had a propensity to discriminate and that in declining to promote Plaintiff or pay her more, Defendants acted consistent with that prior conduct. Such evidence is squarely impermissible propensity evidence. *See Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191–92 (3d Cir. 2000) (district court erred in admitting testimony relating to termination of another employee because testimony was "not relevant on the issue of whether [defendant] discriminated against [plaintiff] absent the inference that [defendant] had a propensity to act in a certain way, and that in firing [plaintiff], it acted in conformity with its prior conduct" and was therefore not admissible).

*Second*, even if such propensity evidence were proper—it is not—it would have minimal probative value here. Testimony that others may have been subject to different types of alleged mistreatment under different circumstances and by different alleged actors is not probative of whether Defendants did not promote *Plaintiff* or paid her less because of her gender. As just one

---

[6]    To the extent "other acts" evidence is ever admissible, it is only to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" (Fed. R. Evid. 404(b)(2)), and none of those exceptions apply here. Unsupported, second-hand allegations about another employee's experience would not speak to the motive or intent of Defendants' promotion or pay decisions as to Plaintiff. *See, e.g.*, *Mugavero v. Arms Acres, Inc.*, 2009 WL 1904548, at *9 (S.D.N.Y. July 1, 2009) (excluding evidence of "other allegedly retaliatory incidents" where there was no evidence that the same individuals were involved, because such incidents were, as a result, not "probative of retaliatory intent"); *Martinelli v. Penn Millers Ins. Co.*, 2007 WL 9759057, at *6 (M.D. Pa. Mar. 19, 2007) ("[T]he experiences of [plaintiff] and [another female former employee] could not easily be compared in order to discern a discriminatory intent on the part of [defendant].").

example, during her deposition, Plaintiff testified that she reported that "black people are getting terminated without cause" and that "Tim O'Brien was trying to fire black people without cause." (Moghaddam Decl., Ex. A, Pl. Tr. at 194:5–7, 403:2–4.) Such testimony has absolutely no probative value as to Plaintiff's disparate-pay and failure-to-promote claims: Plaintiff is not black, brought no claim of race discrimination, has no remaining termination claim, and was not subject to any adverse employment action by Tim O'Brien (her subordinate at MetLife).

As another example, Plaintiff testified that Kristine Poznanski, then MetLife's Head of Customer Service, was subject to discriminatory treatment at MetLife because a male employee "yelled" at her in a meeting. (*Id.* at 280:18–25.) Not only does Plaintiff make no allegation that anyone yelled at *her*, but such allegations about gender-neutral mistreatment of a different employee in a different function and at a different time have *no bearing* on whether Plaintiff was denied a promotion or equal pay due to her gender. Any testimony about Ms. Poznanski being yelled at would also result in a mini trial because, at her deposition, she unequivocally testified that she never felt she was treated differently at MetLife because of her gender. (Dkt. 95-26.)

Additionally, Plaintiff intends to call as a witness a former MetLife executive who claimed gender discrimination in 2014 purportedly based on MetLife's decision to reorganize portions of its business within its Global Brand and Marketing organization.[7] The business changes at issue were made following consultation with the executive and were not in any way related to her gender. The revised role, the compensation associated with that role, and the role's reporting line directly to MetLife's then Chairman, President, and Chief Executive Officer, all remained the

---

[7]    Defendants learned that Plaintiff intended to call this witness at trial for the first time on October 30, 2024—Plaintiff did not disclose this witness pursuant to Rule 26(a)(1), which is alone a basis to preclude the witness's testimony. Fed. R. Civ. P. 37(c)(1).  (Moghaddam Decl. ¶ 18.)

same. (Moghaddam Decl. ¶ 17.)  The executive simply and remarkably claimed that her job was getting smaller, and it must be because she is a woman. (*Id.* ¶ 16.)  Her baseless allegations—and the facts underlying them—are not in any way relevant to this matter. Not only did this individual claim discrimination several years before Plaintiff claims she was not further promoted to EVP, but her allegations are the opposite of what Plaintiff alleges here: Plaintiff alleges that she was given *additional* job responsibilities, and that her job grade and compensation were not commensurate with those responsibilities. Baseless and dated allegations relating to an unrelated female executive's claim that she was discriminated against because of her gender have no probative value and will only serve to unfairly prejudice the jury.

Courts routinely exclude such evidence of "other bad acts," like allegations of unrelated mistreatment of other employees, especially where, as here, there is no similarity between the other acts and the claims being tried. *See, e.g., Henry v. Wyeth Pharms., Inc.*, 2008 WL 294443, at *1 (S.D.N.Y. Jan. 29, 2008), *aff'd*, 616 F.3d 134 (2d Cir. 2010) (excluding "evidence of racial discrimination against other employees of defendant . . . by decision makers different from those responsible for . . . making recommendations or decisions relating to plaintiffs job assignments or promotions"); *Rivera v. Baccarat, Inc.*, 1997 WL 777887, at *2 (S.D. N.Y. 1997) (excluding evidence of gender discrimination in national origin discrimination case, rejecting plaintiff's argument that "she should be permitted to demonstrate that a general attitude of discrimination pervaded Baccarat"). The Court should likewise preclude Plaintiff's scattered claims of mistreatment of other employees that bear no relation to her allegations.

*Third*, permitting evidence of allegations of discrimination untethered from Plaintiff's claims will unfairly prejudice the jury, create jury confusion, and waste time under Rule 403. Allegations of other acts against other employees, or by other MetLife employees who played no

role in Plaintiff's promotion or pay, are unfairly prejudicial. If Plaintiff is permitted to make unsupported, inflammatory allegations about other employees' treatment at MetLife, Defendants will not get a fair trial. Again, jurors will be inclined to hold MetLife accountable for unproven allegations of systemic discrimination and for a corporate "boys' club" culture, rather than determining whether MetLife's employment actions as to Plaintiff were in fact due to her gender.

Admission of such evidence will also unnecessarily prolong trial and waste the jury's time. If Plaintiff is permitted to introduce allegations of wrongdoing against other employees, Defendants will have to introduce evidence—including witness testimony and documents—to rebut the notion that these other employees were mistreated, resulting in mini-trials as to each purportedly wronged employee. The Court should prohibit such a side show at trial. *See Martinelli*, 2007 WL 9759057, at *7 (explaining that, had other acts evidence been admitted, defendant would have had to respond with evidence to rebut notion that other employee was discriminated against and "[t]he proceeding would be unduly delayed by the resulting mini-trial, and the jury's attention would have been diverted from the real issues of this case").

*Finally*, to the extent Plaintiff intends to provide or elicit second-hand testimony about other employees' purported allegations of discriminatory conduct, such testimony would constitute inadmissible hearsay. For example, Plaintiff may not testify that others told her about purported prior acts of discrimination at MetLife. (*See, e.g.*, Dkt. 115-1 at 288.) Such testimony would be nothing other than out of court statements offered for the truth of the matter asserted— that MetLife did, in fact, discriminate against others—and thus hearsay. Fed. R. Evid. 801; *see also Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 304 n.11 (S.D.N.Y. 2000) (unsworn, out of court statements of alleged complaints made by other employees constitutes inadmissible hearsay). Plaintiff cannot testify as to allegations of mistreatment of other employees if she lacks personal

knowledge of the alleged mistreatment—and especially if her testimony is based on out of court statements, rumors, or gossip (as it is). *See, e.g., Leopold v. Baccarat, Inc.*, 174 F.3d 261, 271 (2d Cir. 1999) (affirming district court's exclusion of plaintiff's testimony regarding the termination of other employees because plaintiff did not have personal knowledge of the matter).

For the foregoing reasons, the Court should exclude evidence or argument about allegations of discrimination or wrongdoing against other employees because such evidence would be improper propensity evidence, hearsay, irrelevant, highly prejudicial, and confusing.

## III.   MOTION *IN LIMINE* NO. 3: PRECLUDING REFERENCE TO PRIOR, UNRELATED LITIGATION OR OTHER LEGAL MATTERS

The Court should also preclude evidence or argument about prior, unrelated legal matters involving MetLife, including but not limited to the consent decree in *Mitchell v. MetLife*, 03 Civ. 10294 (S.D.N.Y.) ("*Mitchell*"), which Plaintiff produced in this litigation, and the settlement of a race-based underwriting case, *Thompson v. MetLife*, 00 Civ. 5071 (S.D.N.Y.) ("*Thompson*"). Plaintiff also testified about certain of these legal matters at her deposition. (Moghaddam Decl., Ex. A, Pl. Tr. at 114:6–8.) Evidence relating to these legal matters should be precluded as improper propensity evidence—for all the same reasons as allegations relating to other employees should be precluded as improper propensity evidence—in addition to the following reasons.

First, evidence of prior litigations involving claims of discrimination, and particularly those allegedly occurring under different circumstances and many years before Plaintiff's employment at MetLife, is irrelevant. *Mitchell* was a class action by female sales representatives and managers of MetLife's Financial Services Division *in 2001*, alleging that MetLife maintained a "glass ceiling" by denying qualified female sales representatives and agency managers equal pay and opportunities. The case was settled and resulted in a consent decree. In *Thompson*—a case filed *in 2000*—non-Caucasian policyholders sued MetLife, alleging racial discrimination in formation,

performance, modification, and termination of insurance contracts, in violation of § 1981. The District Court ultimately approved a settlement. Plaintiff was not a party or class member in either case, did not participate in discovery, and was not employed by MetLife until *more than a decade* after the events described in the allegations in those cases.

These legal matters are irrelevant because they have no bearing on Plaintiff's claims. Both the *Mitchell* and *Thompson* cases, for example, predated Plaintiff's employment by more than a decade and involved entirely different parties allegedly involved in different activities. Plaintiff has never alleged, nor could she, that any of the events at issue in these litigations had any influence on her employment at MetLife. In fact, *Thompson* is not even an employment discrimination case and was a suit by MetLife's policyholders. Evidence relating to these litigations—and any others about which Plaintiff intends to offer evidence—should be excluded as irrelevant.

Second, even if unrelated legal matters were somehow relevant, such evidence should still be precluded due to unfair prejudice. "Courts in this circuit generally exclude evidence of related lawsuits, due to concerns of confusing the jury and unfairly prejudicing defendants." *See Thompson v. Spota*, 2022 WL 17253464, at *9 (E.D.N.Y. Nov. 28, 2022) (citing cases). Here, evidence of totally unrelated legal matters would be offered solely to prejudice MetLife, to convince the jury that MetLife is a bad actor involved in corporate scandal, and to appeal to emotion. *See In re Homestore.com*, 2011 WL 291176, at *12 (C.D. Ca. 2011) (excluding "evidence and reference to [] unrelated scandals [as] not relevant"); *CDX Liquidating Trust ex rel. CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 591, 606 (N.D. Ill. 2009) ("[I]ntroduction of evidence of other corporate scandals . . . is not relevant and, even if relevant, highly prejudicial.").

Third, the *Mitchell* and *Thompson* cases were resolved through settlement, without any findings of fact or liability. "Prior settlement agreements, no matter how similar the litigation, are

irrelevant." *Prowley v. Hemar Ins. Corp. of Am.*, 2010 WL 1848222, at *4 (S.D.N.Y. May 7, 2010); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (even government settlement agreements "cannot be used as evidence in subsequent litigation between that corporation and another party"). Providing settlement figures negotiated in prior cases to the jury risks improperly influencing their determination of an award of damages in this case, if any, especially where the settled matters bear no relation to this matter and resolved without any finding of liability. *Castro v. City of New York*, 2010 WL 11586591, at *5 (S.D.N.Y. Aug. 11, 2010) (excluding any evidence of prior settlement amounts because they were irrelevant, and "even assuming the relevance of such evidence, . . . any probative value is outweighed by the danger of unfair prejudice to Defendants, confusion of the issues, and misleading of the jury").

Fourth, allegations in a prior complaint are inadmissible hearsay that do not fall within any exception to the Rules. *See Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 329 (S.D.N.Y. 2009) (excluding prior complaint as hearsay). It would be unjust to allow Plaintiff to introduce out-of-court statements raising allegations of discrimination against MetLife, when those complaints were settled with no finding of liability and with no opportunity to cross-examine those who made the allegations at trial. *See Richmond v. Gen. Nutrition Ctrs. Inc.*, 2012 WL 762307, at *9 (S.D.N.Y. Mar. 9, 2012) (precluding introduction of allegations in court filings reflecting other employees' allegations of discrimination as hearsay, because of "the risk of unfair prejudice and confusion," and because the allegations were not "subject to cross examination"). Accordingly, evidence of unrelated legal matters involving MetLife should be precluded in full.

## IV.    MOTION *IN LIMINE* NO. 4: PRECLUDING REFERENCE TO METLIFE'S FINANCES, INDIVIDUAL DEFENDANTS' WEALTH, INDIVIDUAL DEFENDANTS' COMPENSATION, AND INSURANCE COVERAGE

The Court should preclude Plaintiff from offering evidence or argument of MetLife's

finances, the Individual Defendants' finances, the Individual Defendants' compensation at MetLife, and whether any Defendant has insurance. Such evidence is not probative of Plaintiff's claims, would be prejudicial to Defendants, and would expose irrelevant yet personal information.

Here, MetLife's companywide finances, the Individual Defendants' personal finances, and any Defendants' insurance coverage are not probative of any element of Plaintiff's failure-to-promote or disparate-pay claims, or of her alleged compensatory damages. *See, e.g.*, *Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2d Cir. 1991) (evidence of a defendant's wealth is a "class of evidence . . . not admitted or desirable during the liability and compensatory damages phase of the case"); *Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421, at *2 (S.D.N.Y. July 14, 2005) (excluding evidence of individual and corporate defendants' wealth as irrelevant to liability determinations). Those claims bear on Plaintiff's employment, her pay, and MetLife's reasons for not further promoting her. The same is true of the Individual Defendants' compensation while at MetLife—Plaintiff has never alleged that any of the Individual Defendants are comparators for purposes of her disparate-pay claims, and thus their compensation at MetLife is irrelevant.

Even if evidence of Defendants' finances, wealth, compensation, or insurance coverage had some modicum of relevance, evidence of Defendants' finances during the liability or compensatory damages phase of trial would unfairly prejudice Defendants and mislead the jury. Such evidence would unfairly suggest to the jury that it should award damages because Defendants have the means to pay, not because Plaintiff is entitled to damages, thereby depicting Plaintiff as a proverbial David and Defendants as Goliath. For these reasons, courts routinely exclude evidence of wealth under Rule 403. *See, e.g., id.* (excluding evidence of wealth because any purported relevance "is substantially outweighed by the danger of unfair prejudice that might result from jurors basing their conclusions on the relative wealth of the parties"); *Hart v. RCI Hosp. Holdings,*

*Inc.*, 90 F. Supp. 3d 250, 278–79 (S.D.N.Y. 2015) (evidence of funds available to pay judgment excluded because it "might impermissibly lead the jury to make a . . . decision not on the merits, but as a matter of result-orientation"); *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, at *6 (E.D.N.Y. May 31, 2019) (precluding each party from "refer[ring] to the parties' wealth, size, or finances to the extent it . . . characterizes the dispute as one of David versus Goliath"). Defendants' finances have no bearing on the liability or compensatory damages phase of trial, and the introduction of such evidence would be solely for its prejudicial effect.

For the foregoing reasons, the Court should exclude evidence of MetLife's finances, the Individual Defendants' personal finances, and the Individual Defendants' compensation.

## V.    MOTION *IN LIMINE* NO. 5: PRECLUDING EVIDENCE REGARDING PLAINTIFF'S ALLEGED PERFORMANCE OF CDO FUNCTIONS ON OR AFTER JULY 1, 2017, AND LIMITING DAMAGES THEREBY

For purposes of Plaintiff's pay-disparity claims, Plaintiff has argued that her role project managing the preparation for MetLife's Enterprise Digital Strategy from September 2014 until July 2017 was substantially similar to the Chief Digital Officer ("CDO") role first held by Greg Baxter in July 2017. In the event a jury agrees with this argument, because Plaintiff only performed this allegedly comparable role from September 2014 until July 2017, the Court should (1) preclude any evidence regarding Plaintiff's alleged performance of that function from after July 1, 2017, and (2) limit any potential recovery to that period.

### A.    The Court Should Preclude Evidence About Plaintiff's Alleged Digital Role After July 2017.

It is undisputed that Plaintiff became Chief Administrative Officer ("CAO") for Global Technology & Operations ("GTO") in September 2014 and that, as part of this role, she "on an interim basis until a lead is hired . . . [would] manage the preparation for MetLife Enterprise Digital Strategy." (Dkt. 115-23.) Plaintiff project managed the preparation for MetLife's Enterprise

Digital Strategy until July 1, 2017, when MetLife hired its first CDO, Greg Baxter. MetLife did not have a digital organization until Baxter was hired and Baxter was MetLife's first CDO. (Dkt. 113 ¶ 100.) During discovery, Plaintiff claimed, for the first time, that she continued to have responsibilities related to MetLife's digital strategy following Baxter's hiring. Specifically, she made vague assertions (unsupported by any evidence) that she "develop[ed] presentations" and, on two occasions, temporarily loaned one of her reports to Baxter's team. (Dkt. 95-6 at 441–45.)

The Court should preclude any such testimony at trial. Introduction of such evidence would be confusing, irrelevant, and inconsistent with the claims in this case. Here, Plaintiff's Amended Complaint (Dkt. 20), the job description she helped author in 2017 (Moghaddam Decl., Ex. J), the resume she circulated in 2019 (Moghaddam Decl., Ex. K), and her deposition testimony (Dkt. 95-6 at 441-45), all make clear that any responsibilities she may have had relating to MetLife's digital strategy ceased as of Baxter's July 1, 2017, hiring and that MetLife did not formally establish a digital operation until after Baxter's hire. (Dkt. 101 at 23-24.) Similarly, Plaintiff should be precluded from arguing at trial that her role was substantially similar to Baxter's CDO role from July 1, 2017, onward, because such arguments are inconsistent with her claims and are irrelevant to the evidentiary inquiry under the Equal Pay Act, 29 U.S.C. §§ 206, *et seq*. ("EPA") and New York Equal Pay Law, New York Labor Law § 194 ("NYEPL").

Accordingly, even if Plaintiff can convince a jury that her role managing the preparation for MetLife's Enterprise Digital Strategy from September 2014 until July 2017 was substantially similar to the CDO role Baxter performed beginning in 2017, the record is clear that Plaintiff's role *after* Baxter was hired did not include any responsibilities related to digital strategy, and thus none of Plaintiff's responsibilities from July 2017 onward are relevant to the pertinent inquiry (whether Baxter is a proper comparator) under the EPA and NYSEPL. *See Emswiler v. Great E.*

24

*Resort Corp.*, 602 F. Supp. 2d 737, 753 (W.D. Va. 2009) (new responsibilities given to plaintiff's replacement were core responsibilities in operational areas that were never responsibilities of plaintiff and so, as matter of law, job was not substantially equal).

**B.      If Baxter Is an Appropriate Comparator, Plaintiff's Potential Damages Must Be Limited to the Period from September 15, 2014, to July 1, 2017.**

In addition to precluding the above evidence, in the unlikely event that the jury determines that Baxter is a proper comparator, any recovery should be limited to the period where Plaintiff allegedly project managed the preparation for MetLife's Enterprise Digital Strategy, which is September 15, 2014, through July 1, 2017.

Relief for a violation of the EPA or NYSEPL is back pay in an amount equivalent to the difference between what the aggrieved employee actually received and what the aggrieved employee should have received but for the unlawful pay disparity. *See Lovell v. BBNT Sols., LLC*, 299 F. Supp. 2d 612, 617 (E.D. Va. 2004) (female employee could not recover back pay disparity between male colleague's salary and her own for entire statutory period under EPA because record only warranted damages during the period when she received lower compensation for equal work). And any back pay award should account for *only* the period in which the unlawful wage disparity existed prior to the filing of the lawsuit—here, September 15, 2014 to July 1, 2017, when Baxter assumed the role of CDO and Plaintiff ceased performing any digital role. Accordingly, the Court should limit Plaintiff's potential relief based on a determination that Baxter is an appropriate comparator to the period before he assumed the role of CDO.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court grant the foregoing motions *in limine* and exclude the evidence described above from the trial of this matter.

25

Dated: New York, New York
      November 1, 2024

BOIES SCHILLER FLEXNER LLP


/s/ Nili T. Moghaddam
Nili T. Moghaddam
Sabina Mariella
55 Hudson Yards
New York, New York 10001
(212) 754-4541
nmoghaddam@bsfllp.com
smariella@bsfllp.com


PROSKAUER ROSE LLP

Joseph Baumgarten
Allan S. Bloom
Patrick J. Lamparello
Jacob P. Tucker
Eleven Times Square
New York, New York 10036
(212) 969-3000
jbaumgarten@proskauer.com
abloom@proskauer.com
plamparello@proskauer.com
jtucker@proskauer.com

*Attorneys for Defendants*